UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS COSTA, AMANDA HOFFMAN, and OLIVIA MCILRAVY-ACKERT, individually and on behalf of others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>APPLE, INC.,<br><br>　　　　　　Defendant. | Case No. 23-cv-01353-WHO<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DISTRIBUTION OF JUDICIAL NOTICE**<br><br>Re: Dkt. No. 78 |

## INTRODUCTION

Plaintiffs Francis Costa, Amanda Hoffman, and Olivia McIlravy-Ackert are or were hourly paid, overtime eligible employees of defendant Apple, Inc., who contend that Apple should have included the value of vested restricted stock units ("RSUs") as compensation in its calculation of their overtime rate of pay. They move here for distribution of judicial notice, or conditional certification, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). The standard for ordering notice to others similarly situated at this stage is lenient, and the plaintiffs have met it. Modified as described in this Order, the plaintiffs' motion to distribute notice is GRANTED.[1]

## BACKGROUND

### I.    Factual Background

Apple is a California corporation that "designs, manufactures and markets smartphones,

---

[1] Oral argument on this motion is unnecessary; the hearing set for November 22, 2023, is VACATED.

1    personal computers, tablets, wearables and accessories, and sells a variety of related services."
2    Apple Inc. Form 10-K at p.1 (2022). Plaintiffs Costa, Hoffman, and McIlravy-Ackert worked
3    (and in the latter's case, still work) for Apple as hourly, non-exempt, eligible for overtime pay
4    employees. Third Amended Complaint ("TAC") [Dkt. No. 86] ¶¶s 9, 11, 13, and 25.

The plaintiffs allege that in addition to their hourly pay, Apple paid them compensation in the form of RSUs, which they understand to have a three-year vesting period. TAC ¶¶s 27, 32, 37, 39, 42, 44; Mot. 3:17-23. They allege that Apple did not include the value of what they refer to as their "vested RSU compensation" when calculating the regular rate for overtime hours that the plaintiffs work. *See generally* TAC; Motion for Distribution of Judicial Notice ("Mot.") [Dkt. No. 78] 3:17-23. The plaintiffs argue that this is a violation of FLSA and California and New York state laws.

## II.    Procedural History

On March 23, 2023, Francis Costa filed this lawsuit on behalf of himself and the putative Fair Labor Standard Act ("FLSA") Collective. Dkt. No. 1. After motion practice over the pleadings, Apple answered the TAC, denying liability and asserting affirmative defenses. Dkt. No. 92.

On September 28, 2023, the plaintiffs filed the instant motion for Distribution of Judicial Notice. *See generally* Mot. They sought an order directing issuance of Court-authorized notice and that Apple produce an Excel or similarly formatted list within 10 to 20 days of the order of all employees that Apple classifies as "non-exempt, overtime eligible" whom Apple paid "compensation in the form of RSUs," who worked for Apple "at any time within three years prior to this action's filing date through the date of the order." *Id*. The plaintiffs proposed that the list should include "each person's name, unique-employee identifier," and "address, cell-phone number, and personal-email address." *Id.* The plaintiffs seek permission to send notice of this action by mail, email, and text message. *Id.* They also want to send a reminder postcard and email. *Id.* During the briefing of this motion, plaintiffs have agreed to various modifications that will be discussed later in this Order.

On October 26, 2023, Apple filed a Motion to Compel Arbitration as to the four opt-in

plaintiffs who signed arbitration agreements.  Motion to Compel Arbitration ("Mot. to Compel") [Dkt. No. 83].  That hearing is set for January 10, 2024.

## LEGAL STANDARD

Workers may litigate jointly if they "(1) claim a violation of the FLSA, (2) are "similarly situated," and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018); 29 U.S.C. § 216(b).  The Ninth Circuit has adopted the "two-step approach" for "determining whether the [FLSA] collective mechanism is appropriate." *Campbell*, 903 F.3d 1090, 1108–10.  The first step is that plaintiffs will "move for preliminary certification," which "refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective … satisfies the 'similarly situated' requirement of section 216(b)." *Id.* at 1109.

The Ninth Circuit defines "similarly situated" as "alike with regard to some material aspect of their litigation," meaning alike "in ways that matter to the disposition of their FLSA claims." *Id*. at 1114.  "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id*. at 1115.

"Determining whether a suit properly may be maintained as a FLSA collective action is within the discretion of the court." *Litvinova v. City & Cnty. of San Francisco*, 2019 WL 1975438-RS, at *2 (N.D. Cal. Jan. 3, 2019).  The plaintiff bears the burden of providing "substantial allegations" that the collective class members "were together the victims of a single decision, policy, or plan." *Id*.

While the standard for conditional certification is lenient, it does "require[] at least *some* evidence to support the 'substantial allegations' in the complaint." *Id*. at *4 (emphasis added).  If the plaintiff's burden is met, the court will grant conditional certification and consider the form of notice proposed by the plaintiff. *Id*. at *5. "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Campbell*, 903 F.3d at 1101.

**DISCUSSION**

**A.     The Plaintiffs Have Shown That They Are Similarly Situated**

When moving for conditional certification under FLSA and seeking authorization to contact similarly situated employees using a judicially approved form of notice, the plaintiff bears the burden to show that she and the putative collective action members are "similarly situated." *See Campbell*, 903 F.3d 1090, 1100–01; *Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540, at *2 (N.D. Cal. Jul. 31, 2017). Here, the plaintiffs meet this standard.

Apple's first argument against judicial notice is that the plaintiffs have failed to meet "even the 'lenient' standard for conditional certification in the Ninth Circuit" because the evidence they have produced is insufficient. Oppo. 6:16-18. It contends that the 12 declarations that the plaintiffs submitted are entitled to "no evidentiary weight" because they are "virtually identical" and "repeat verbatim vague contentions." *Id.* 8:15-16. This argument is unpersuasive.

Courts in this district have declined to consider arguments that declarations submitted in support of conditional certification are "boilerplate" because at the conditional certification stage, the question is "simply whether plaintiffs have made an adequate threshold showing," not whether the evidence they produce regarding commonality is believable. *See Gonzales v. Charter Commc'ns, LLC*, 2020 WL 8028108, at *4 (C.D. Cal. Dec. 4, 2020). To require more would be contrary to the lenient level of consideration required by the Ninth Circuit in *Campbell*. *Id.*

The declarations that the plaintiffs have submitted alongside their motion are sufficient to support conditional certification. They show that the declarants all worked as hourly paid, non-exempt, overtime eligible employees during the three-year FLSA statutory period. They also show that they received RSUs that vested during that period, and that they were subject to Apple's policy and practice of not including the value of the vested RSU in its overtime pay calculations for such employees. *See generally* Dkt. No. 78-1 (combined declarations).

Apple's opposition relies heavily on out-of-circuit authority and decisions within this circuit that are both pre-*Campbell* and inapposite for resolution of the dispute on this motion. *See* Oppo. 7:1-17; 8:5-14. The in-circuit cases are not instructive because they differ significantly on the facts. *See Litvinova v. City and County of San Francisco*, 2019 WL 1975438, at *5 (N.D. Cal.

4

1  Jan. 3, 2019) (holding that the plaintiff had not met the lenient standard of showing "similarly
2  situated" where she only produced "averments in her complaint and her own declaration, the latter
3  of which does not even address whether other members of the collective action worked
4  overtime"); *Rivera v. Saul Chevrolet, Inc.* 2017 WL 3267540-LHK, at *5 (N.D. Cal. Jul. 31, 2017)
5  (holding the same, because plaintiff did not identify a "single decision, policy, or plan" that
6  affected all of the putative class members, which was fatal to conditional certification).

7  Here, the plaintiffs have produced declarations from numerous Apple employees, all of
8  which allege that they were victims of a "single decision, policy, or plan." *See generally* Dkt. No.
9  78-1 (combined declarations).  The veracity of these allegations will drive this litigation.  The
10 plaintiffs have met the lenient standard for conditional certification.

### B.  The Proposed FLSA Collective, With Modifications, Is Appropriate

In their motion, the plaintiffs proposed a collective that is defined as: "all employees Defendant classified as non-exempt, overtime eligible, who Defendant paid compensation in the form of RSUs, who worked for Defendant at any time within three years prior to this action's filing date through the date of the Order." Mot. at 1.  Apple argues that the plaintiffs cannot show that the entire nationwide collective they seek to certify "shares a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117.  It contends that the plaintiffs' proposed collective definition is overbroad for three reasons: (i) it is an improper "fail-safe" collective in defining RSUs as "compensation," when Apple argues that RSUs are not; (ii) the proposed collective seeks to send notice to employees that Apple argues would not have a claim even under the plaintiffs' theory; and (iii) the plaintiffs are not similarly situated to employees with arbitration agreements.

With the modifications to which the plaintiffs now agree, the proposed collective will not constitute a "fail-safe" collective, nor will it impermissibly include individuals who would not have a claim.  I address these two concerns before turning to Apple's third issue with the proposed collective—that it includes individuals who may be subject to binding arbitration agreements.

### 1. The Proposed Collective (After Modification) Is Neither a Fail-Safe Collective Nor Is It Overbroad.

A fail-safe collective is "a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 Fed. Appx. 735, 736 (9th Cir. 2010). In a class defined in this way, when a possible class member realizes that she cannot prevail against the defendant, she drops out of the class. *Id.* The Ninth Circuit has held that this is unfair to the defendant and unmanageable from a procedural standpoint, specifically with regard to issuing notice. *Id.*; Fed. R. Civ. P. 23(c)(2). But the court has also held that district courts are free to narrow a class so long as it does not actually distinguish between those who may and may not ultimately turn out to be entitled to relief if the case resolves in the plaintiffs' favor. *See Kamar*, 375 Fed. Appx. 734, 736.

Apple takes issue with the proposed language that presumes that RSUs are compensation—something that Apple denies. Oppo. 11:8-10; *see also* Defendant's Answer [Dkt. No. 76] ¶ 1. It contends that defining the collective to include employees to whom Apple paid compensation in the form of RSUs "improperly presupposes that the value of vested RSUs is in fact 'compensation' that must be included in the regular rate." Oppo. 11:19-12:2. Apple alleges that this language in the notice prematurely infuses the merits of the class action into the definition of the collective, creating an improper fail-safe class.

The plaintiffs stated in reply that they are willing to change the definition of the collective to avoid that problem. Repl. 6, n. 4 ("If using the term "RSU compensation" to define the group is problematic, plaintiffs are agreeable to using a different term such as "employees who received RSUs during their employment" or other language the Court deems appropriate). This is an appropriate response to Apple's concern and will mitigate against any risk that the collective constitutes a "fail-safe" collective. The parties shall make the change to the notice language.

Apple also argues that the collective, as proposed, could include individuals who did not work overtime, or employees who did work overtime but did not do so between the grant of an RSU and the vesting date. Oppo. 13:13-15. It argues that such employees would not be similarly situated to the plaintiffs. *Id.* In response to that concern, the plaintiffs offer to change the

definition of the proposed collective to "narrow[] the group" to those who "recorded more than forty hours in a workweek," so as to avoid this potentially overbroad definition. Repl. 6, n. 3. This is an appropriate modification. The plaintiffs shall also specify that the collective only includes those employees who recorded more than 40 hours in a workweek between the grant of an RSU and the time that particular RSU vested.

With the modifications discussed above, the plaintiffs' proposed collective will not be "fail-safe" or over-inclusive.

### 2. It Is Appropriate to Certify the Collective Now, Even Though Some Employees in the Collective May Be Subject to Binding Arbitration.

Apple also argues that the proposed collective is inappropriate because it includes employees who may be subject to valid arbitration agreements. It argues that this precludes conditional certification of a FLSA collective and that questions of arbitrability should be resolved before notice is distributed. Oppo. 14:2-8. Functionally, this means that Apple is asking that I rule on its pending Motion to Compel Arbitration prior to ruling on this motion. This is not legally necessary, nor would it be in the best interests of the collective.

So far, Apple has shown that four out of the 22 - 25 opt-in plaintiffs signed arbitration agreements; these four opt-in class members are the subject of Apple's pending motion to compel arbitration.[2] Dkt. No. 83. It posits that thousands more employees have signed the same because Apple has presented arbitration agreements to each new hire in the United States since 2016 and "all but a small handful" have agreed to arbitrate claims. *Id*. 13:23-26.

Apple concedes that the Ninth Circuit has not addressed whether arbitration agreements should be considered at the notice stage in FLSA actions. *Id.* 14:2-6. It asks me to follow out-of-circuit decisions holding that it is improper to send notice to potential opt-in plaintiffs when the defendants assert that "such recipients signed arbitration agreements that make them ineligible to

---

[2] In its Motion to Compel Arbitration, Apple states that "23 individuals including the Named Plaintiffs have opted-in to the collective . . . the Opt-In Plaintiffs are four of these 22 individuals." Mot. to Compel Arb. 4:14-16. The plaintiffs state that Apple has shown that four of the 25 opt-in plaintiffs signed arbitration agreements. While the parties differ slightly on how many individuals have opted-in to date, this difference does not affect my analysis. Somewhere between 22 and 25 individuals have opted-in to the collective so far.

join a proposed collective." *See Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020) (holding that the district court had abused its discretion in authorizing notice to individuals whom the court understood to have entered mutual arbitration agreements that waived their right to join such an action, and that courts must allow defendants to show that individuals entered such agreements before authorizing notice); *In re JP Morgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019) ("district courts may not send notice to an employee with a valid arbitration agreement" unless it is shown that "nothing in the agreement would prohibit that employee from participating in the collective action").

But courts in this circuit have consistently determined that the mere possibility of mandatory arbitration should not prevent the conditional certification of a collective action. *Pittmon v. CACI International, Inc*, 2021 WL4642022, at *4 (C.D. Cal. Aug. 27, 2021) (citing *Rosario v. 11343 Penrose Inc.*, 2020 WL881240, at *5 (C.D. Cal. 2020) (finding that "courts have overwhelmingly determined that the possibility of mandatory arbitration should not prevent the conditional certification of a collective action.")); *Hererra v. EOS IT Management Solutions, Inc.*, 2020 WL 7342709, at *9 (N.D. Cal. Dec. 14, 2020) (holding that although some employees may not ultimately be able to participate in the case because they were subject to arbitration agreements, it was not appropriate to exclude potential opt-in members from the conditionally certified class action at the notice stage because the focus of inquiry at that stage is whether there is a common policy or plan that connects the claims of the putative class members, not on the defendants' ultimate defenses); *Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017) (arbitration agreements do not preclude conditional certification, "especially given the lenient standard at step one" of conditional certification). I am inclined to follow my peers on this issue.

Some courts within this circuit have determined that notice should not be sent when the court has already ruled on the enforceability of the at-issue arbitration agreement and where the defendant has produced evidence that a significant portion of their employees were subject to valid arbitration agreements. *See Droesch v. Wells Fargo Bank, N.A.*, 2021 WL2805604-JSC, at *2 (N.D. Cal. Jul. 6, 2021). Neither of these circumstances is true here.

In *Droesch*, defendant Wells Fargo, moved to compel arbitration for certain opt-in plaintiffs' claims, and the plaintiffs simultaneously sought conditional certification under FLSA § 216(b). *Id.* at *1. The court granted both motions, which in effect granted the plaintiffs leave to send notice to the 27,000 Wells Fargo employees who appeared to have signed binding arbitration agreements. Wells Fargo moved for reconsideration of the portion of the court's conditional certification order that required notice of the FLSA action to those 27,000 individuals who signed the same arbitration agreement that the court had determined was binding. Upon reconsideration, the Hon. Jacqueline S. Corley decided that since she had already determined that the at-issue arbitration agreement was enforceable as to the opt-in plaintiffs, and nothing suggested that the agreements signed by the 27,000 other employees were different, she would follow the Fifth and Seventh Circuit's decisions that concluded that it is inappropriate to send notice to employees with valid arbitration agreements. *Id.* at *2. Apple asks that I follow her "pragmatic" approach to notice distribution. While Judge Corley's decision made sense in the context of *Droesch*, this is a different case.

Unlike in *Droesch*, where Wells Fargo had shown that 27,000 out of 34,000 current and former employees had signed the same arbitration agreement that the court had determined was binding, here Apple has shown no such thing. It has not demonstrated or approximated how many of its employees opted-out of arbitration after being presented with the arbitration agreements when they were hired. *See generally* Oppo.; Mot. to Compel Arbitration. Its contention that since June 2016, it has presented arbitration agreements to "every employee it has hired in the United States" and that "all but a small handful have agreed to arbitrate claims," Oppo. 13:23-14:2, is conclusory and provides no insight into how many Apple employees might be free to litigate FLSA claims regardless of whether I find the arbitration agreement to be enforceable. It is not apparent to me that allowing the plaintiffs to send notice to all relevant Apple employees, *see supra* B(1), would result in an inappropriate distribution of notice to non-similarly situated individuals.

Also unlike the situation in *Droesch*, where Judge Corley had already determined that the arbitration agreement at issue was enforceable, I have not ruled on whether Apple's arbitration

9

1   agreement is enforceable.  The plaintiffs argue that the arbitration agreement is unenforceable

2   because it is both substantively and procedurally unconscionable.  *See* Opposition to Def. Motion

3   to Compel Arbitration [Dkt. No. 89] 6-8.  There appear to be at least two versions of the

4   agreement (one in 2016 and the other in 2019) and it is unclear whether the same analysis will be

5   appropriate for each version.  *See* Mot. to Compel 2:16-3:9.  The hearing is set for January 10,

6   2023, and it will likely take me a little while thereafter to render an opinion.

7   Apple protests that because the four opt-in plaintiffs do not claim that there are individual

8   issues that would need to be addressed by the court pertaining to the enforceability of each

9   individual arbitration agreement, I should delay ruling on distribution of notice until I rule on its

10  motion to compel arbitration.  Oppo. 16:16-25.  It seems to propose that since the four opt-in

11  plaintiffs take issue with universal aspects of Apple's arbitration agreements, the resolution of

12  these issues will determine whether all other Apple employees who did not opt-out of arbitration

13  are bound by the terms of the agreement.  At the moment, I cannot say whether it is accurate.  It

14  cites *Bogle v. Wonolo Inc.*, for the theory that "[w]hether named and opt-in plaintiffs must

15  arbitrate their claims should be decided well before the nationwide notification issue is reached."

16  2022 WL 1124973, at *4 (C.D. Cal. Apr. 8, 2022).  But this case differs from *Bogle*, too.  There,

17  the plaintiff did not contest that there was a valid arbitration agreement or that the agreement

18  covered his dispute.  He instead alleged that he did not understand that he agreed to arbitrate

19  arbitrability and his substantive claims, and the court found his argument unpersuasive.  *Id.* at *3.

20  Here, plaintiffs are contesting the validity and enforceability of the arbitration agreements that

21  they signed.  The nature of their argument—which challenges the arbitration agreement on both

22  substantive and procedural unconscionability grounds—is such that if they prevail, thousands of

23  other Apple employees will be free to opt-in to the putative class and litigate FLSA claims.

24  I see no reason to delay notice to potential opt-in class members while the statute of

25  limitations clock is ticking until I decide Apple's motion to compel arbitration.  The parties shall

26  meet and confer about including language in the notice that informs potential opt-in plaintiffs that

27  their claims may be subject to binding arbitration agreements, pending my decision on Apple's

28  motion to compel arbitration.

### C. The Plaintiffs' Proposed Notice Strategy is Appropriate
#### 1. Method of Notifying Putative Members

The plaintiffs seek permission to send notice of this action by mail, email, and text message.[3] *Id.* They also wish to send a reminder postcard and email. *Id.* As a general rule, putative collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Apple first takes issue with the inclusion of a text message notice. Plaintiffs have offered a variety of cases indicating that distribution of notice by mail, email, and text is "routinely permitted by courts in this circuit." Repl. 9:1-13. Apple raises concerns about this method; it argues that text messages are unnecessary here for the same reasons they were unnecessary in *Bakhtiar v. Info. Res., Inc.*, 2018 WL 3585057-JST, at *4 (N.D. Cal. Jul. 26, 2018) (where the court determined that notification via text message was unnecessary where the court was ordering notice by first class mail and email because notification was going out via two other forms of notice, and the potential collective action members were not at risk of missing those forms of notice). Apple also argues that since the text message could be "harassing in nature," and because the plaintiffs have proposed other forms of notice, I should reject their proposal to send a text message. Oppo. 17:18-18:5.

Given that the proposed contents of the message do not include any personal or financial information about the potential collective action members, and given the ubiquity of text messaging (particularly in the lives of current and former Apple employees), plaintiffs may distribute notice via mail, email, and text message. They may also send a reminder postcard and reminder text 60 days after the notice is mailed to potential collective action members. *See Bakhtiar*, 2018 WL 3585057, at *5 (holding that a second notice or reminder can be appropriate in

---

[3] The plaintiffs also wish to include a QR code in their mail notification and reminder postcard to potential collective action members, which would allow individuals to fill out the Consent Form electronically. The parties discuss the permissibility of such an inclusion in their papers. *See* Oppo. 17:8-14; Repl. 9:1-13; Mot. Exs. 7, 10. The plaintiffs may include a QR code in the notice and reminder so long as it only links to an electronic version of the Consent Form and nothing else.

11

a FLSA action because individuals are not yet part of a class until they opt-in). Both the initial and reminder messages should incorporate the modifications discussed below.

### 2. Substance of the Notice

If a court facilitates notice of a collective action, it "must be scrupulous to respect judicial neutrality," trying to "avoid even the appearance of judicial endorsement of the merits." *Hoffman-La Roche*, 493 U.S. 165, 174. To this end, Apple takes issue with the proposed notice language that it is "important" that potential plaintiffs be notified of the collective. Oppo. 18:14-16; *id*. Ex. A, p. 2. Plaintiffs have agreed to, and shall, strike this language from the notice. Repl. 9, n. 8. Plaintiffs have also agreed to, and shall, include language that Apple denies the allegations, assuaging Apple's next most legitimate concern. *Id.*; *see* Oppo. 18:20-26; *see also* Oppo. Ex. A p. 2.[4] These two modifications will ensure that the notice does not appear to endorse either party's position in this suit.

Apple also opposes the plaintiffs' proposal regarding production of collective member information as impracticable and unduly burdensome. Oppo. 19:21-24. It specifically takes issue with the plaintiffs' request for "all known telephone numbers and email addresses, not limited to 'last known'" and that Apple produce this information within 10 days of my Order on the Motion. *Id.*

Plaintiffs have modified these requests, as well, in response to Apple's concerns. First, they concede that last-known addresses and telephone numbers are sufficient. Repl. 9, n. 8; *see supra* n. 2. As such, Apple is only obligated to produce last-known addresses and telephone

---

[4] Apple proposed other modifications to the notice that are unnecessary. As an example, it opposes the proposed notice insofar as it "fails to explain to employees what their rights, options, and obligations are." *Id*. 19:1-2. Specifically, Apple argues that the notice should explain that the individual may be required to appear for deposition, that they may have to testify in court, or share liability for payment of costs if Apple prevails. *Id.* 19:2-8. It contends that the absence of such information prevents potential opt-ins from "mak[ing] informed decisions about whether to participate." *Id.* (quoting *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 540 (N.D. Cal. 2007). However, Apple points to no Ninth Circuit or Supreme Court law requiring these disclosures be included in the notice, and the plaintiffs cite several district court cases from within this circuit holding that such inclusions are unnecessary and may chill participation. *See, e.g. Prentice v. Fund for Pub. Int. Rsch, Inc.*, 2007 WL 2729187-SC, at *5 (N.D. Cal. Sept. 18, 2007); *Williams v. U.S. Bank Nat'l Ass'n*, 290 F.R.D. 600, 613 (E.D. Cal. 2013). The proposed language is suitable, pending modifications discussed throughout this Order.

1  numbers. They do ask that if mail is returned, Apple provides the administrator with the last-four

2  digits of the non-contacted individual's social security number, so that the contact information

3  may be updated, and notice may be sent to the proper address. *Id.* I am not going to grant this

4  request at this time, largely because I am approving the plaintiff's text message notice proposal. If

5  mail is non-deliverable, the redundancy built in through the text message notification will serve as

6  sufficient back-up to ensure potential collective action members are notified.

7  Second, the plaintiffs have agreed to a "five to ten day[]" extension for Apple to produce

8  the requested contact information. Repl. 9, n. 8. I will allow Apple 20 days from the date of this

9  Order to produce the requested contact information.

## CONCLUSION

11  For the foregoing reasons, the plaintiff's Motion for Distribution of Judicial Notice is

12  GRANTED, pending the modifications discussed in this order. The modified collective class shall

13  be: All current and former employees of Apple Inc. classified as non-exempt/overtime eligible

14  who received restricted stock units ("RSUs") at any time from March 23, 2020, to the present, and

15  recorded more than forty hours of a work in a workweek after receiving an RSU but before the

16  RSU vested.[5]

17  **IT IS SO ORDERED.**

18  Dated: November 21, 2023



William H. Orrick
United States District Judge

---

[5] Plaintiffs shall provide Apple with the modified notice on or before November 30, 2023. If there is any further disagreement concerning the notice language, it shall be presented in a joint dispute letter of no more than five pages on or before December 4, 2023. Also, the parties may modify the definition of the collective by stipulation if desired.

13