Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235

Michele R. Fisher, MN State Bar No. 303069*
fisher@nka.com
Kayla M. Kienzle, MN State Bar No. 0399975*
kkienzle@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402

Loren B. Donnell, FL State Bar No. 013429*
ldonnell@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Rd. Suite 285
Boca Raton, FL 33431

*Attorneys for Plaintiffs and Others Similarly Situated*
**Admitted Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Francis Costa, Amanda Hoffman, and Olivia McIlravy-Ackert, individually and on behalf of others similarly situated,

Plaintiffs,

v.

Apple, Inc.,

Defendant.

Case No. 3:23-CV-01353-WHO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Date: January 10, 2024
Time: 2:00 p.m. PT
Place: Via Zoom
Judge: Honorable William H. Orrick

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

I. PROCEDURAL AND FACTUAL BACKGROUND............................................2

ARGUMENT ..........................................................................................................................4

I. LEGAL STANDARD FOR A STAY.......................................................................4

II. DEFENDANT HAS NOT DEMONSTRATED THAT THE REQUIREMENTS FOR A STAY ARE MET……………………………………………...…….5

CONCLUSION ...................................................................................................................... 12

**TABLE OF AUTHORITIES**

*Agerkop v. Sisyphian LLC*,
2021 WL 4348733 (C.D. Cal. Aug. 4, 2021) ……………………………………………...…5

*Ambrosia v. Cogent Commc'ns, Inc.*,
2016 WL 777775 (N.D. Cal. Feb. 29, 2016) …………………………………………...5

*Arizona v. Ash Grove Cement Co.*,
459 U.S. 1190 (1983) ……………………………………………….……………….…5

*Babbitt v. Target Corp.*,
2023 WL 2540450 (D. Minn. Mar. 16, 2023) …………………………………….………6

*Baldridge v. SBC Commc'ns., Inc.*,
404 F.3d 930 (5th Cir. 2005) ……………………………..….……………………...6, 10

*Bigger v. Facebook, Inc.*,
No. 1:17-CV-7753, Dkt. 75 (N.D. Ill. Apr. 9, 2019) ……………….…..………………..…..9

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020) ……….……………………….………………......….………11

*Brown v. Wal-Mart Stores, Inc.*,
2012 WL 5818300 (N.D. Cal. Nov. 15, 2012). ……………………………………………8

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ...……………...………………………….………….6, 10

*Clark v. A&L Homecare & Training Ctr., LLC*,
68 F.4th 1003 (6th Cir. 2023) ………………………………………………….……...9, 10

*Clark v. A&L Homecare & Training Ctr., LLC*,
No. 1:20-CV-00757, Dkt. 33 (S.D. Ohio. Aug. 13, 2021)…………………….……....9, 10

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ………………………………………………………………….……9

*Comer v. Wal-Mart Stores, Inc.*,
454 F.3d 544 (6th Cir. 2006) ……….……..………………………………….……….5

*Couch v. Telescope, Inc.*,

611 F.3d 629 (9th Cir. 2010) ……………………………………………………………5

*Craig v. Rite Aid Corp.*,
2010 WL 1994888 (M.D. Pa. Feb. 4, 2020) ……………………………………………....6

*Dealer Computer Services, Inc. v. Ford*,
2007 WL 9752793 (E.D. Mich. Oct. 19, 2017) …………………….………………..7

*Delara v. Diamond Resorts Int'l Mktg, Inc.*,
2020 WL 2085957 (D. Nev. Apr. 30, 2020) …………………………….….……………11

*Ellerd v. Cnty. of Los Angeles*,
2009 WL 3462179 (C.D. Cal. Oct. 22, 2009) ………………………….………………5

*Fidelity & Guaranty Ins. Co. v. Homes*,
2014 WL 12590116 (C.D. Cal. Mar. 26, 2014) ……..……………………...……5, 12

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) ……………………………………………...………………………6

*Grauberger v. St. Francis Hosp.*,
169 F. Supp. 2d 1172 (N.D. Cal. 2001) ……….……………………………….……………4

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) ……….…………………………………………….………6, 7, 10

*Hunter v. Legacy Health*,
2021 WL 4238991 (D. Or. Apr. 13, 2021) ……………………….……………………5

*In Re Apple & ATTM Antitrust Litig.*,
2010 WL 11489069 (N.D. Cal. Sept. 15, 2010) …………….…..……………………....12

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) ……………….………………………………………5

*In re JPMorgan Chase & Co.*,
No. 18-20825 (5th Cir. Dec. 21, 2018) ……………………………..………………. 9

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) ……………………………….…….….………9, 10, 11

*Isaacs v. Landmark Recovery of Louisville, LLC*,

2023 WL 7101869 (M.D. Tenn. Oct. 27, 2023) ……………………..………………………6

*Kelly v. Healthcare Servs. Grp. Inc.*,
2014 WL 3612681 (E.D. Tex. July 22, 2014) ……………………………………………….6

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ……….…………………………………………………………...5

*Lawson v. Grubhub, Inc.*,
13 F.4th 908 (9th Cir. 2021).……………………….…………………………………11

*LeFleur v. Dollar Tree Stores, Inc.*,
2013 WL 150722 (E.D. Va. Jan. 11, 2013) ………………………………………………6

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) …………………………………………………..………7

*Lillehagen v. Alorica, Inc.*,
2014 WL 2009031 (C.D. Cal. May 15, 2014).……………….…………….…………...……5

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ………...…………………………………….……………4

*Long v. CPI Sec. Sys., Inc.*,
2013 WL 3761078 (W.D.N.C. July 16, 2013) ……………………………….…………..…….6

*Lusardi v. Xerox Corp.*,
747 F.2d 174 (3d Cir. 1984) ………….……………………...……………………..6, 10

*McElmurry v. U.S. Bank Nat. Ass'n*,
495 F.3d 1136 (9th Cir. 2007) ………...…………………………….……………5, 10

*Monroe v. FTS USA, LLC*,
860 F.3d 389 (6th Cir. 2017) ……………………………..…………………………7

*Mowat Constr. Co. v. Dorena Hydro, LLC*,
2015 WL 5665302 (D. Or. Sept. 23, 2015) …………………….…………….....………..5

*Nken v. Holder*,
556 U.S. 418 (2009) ……….………………….…………………………………………..7

*Peck v. Mercy Health*,

2023 WL 1795421 (E.D. Mo. Feb. 7, 2023) …………………………………………...6

*Pereira v. Foot Locker, Inc.*,
2010 WL 300027(E.D. Pa. Jan. 25, 2010)…………………………………………………6

*Piazza v. New Albertsons, Inc.*,
2021 WL 3645526 (N.D. Ill. Aug. 16, 2021) ……………………………….……...6

*Plotkin v. Pacific Tel. & Tel. Co.*,
688 F.2d 1291 (9th Cir. 1982) ……….………………………………………………5

*Prescription Supply, Inc. v. Musa*,
2016 WL 5930529 (E.D. Mich. Oct. 12, 2016) …………………………………...……7

*Radio Music License Committee, Inc., v. American Soc. of Composers*,
--F. Supp. 3d --, 2023 WL 5048257 (S.D.N.Y July 27, 2023) ……………………………9

*Rivenbark v. JPMorgan Chase & Co.*,
No. 4:17-CV-03786 (S.D. Tex. Dec. 20, 2018) ……………………..…………………9

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
404 F. Supp. 3d 529 (D. Mass. Sept. 11, 2019) ……………………..………………6, 11

*O'Donnell v. Robert Half Int'l*,
534 F. Supp. 2d 173 (D. Mass. 2008)…………………..……………………………….6

*Sims v. QG Printing II LLC*,
2023 WL 4290402 (D.C. Cal. May 5, 2023) ……………………...……………………7

*Taylor v. Pilot Corp.*,
697 F. App'x 854 (6th Cir. 2017)…………….………………………….……….....1, 5, 8, 10

*U.S. ex rel. Integra Med. Analytics LLC v. Providence Health and Servs.*,
2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) …………………….…………………….12

*Villarreal v. Caremark LLC*,
85 F. Supp. 3d 1063 (D. Ariz. 2015)………………...……………………………………5

*Walsh v. Gilbert Enterprises, Inc.*,
2019 WL 2448670 (D. R.I. June 12, 2019)…………………….………………………….6

*Zyme Solutions, Inc. v. InfoNow Corp.*,

2013 WL 6699997 (N.D. Cal. Dec. 19, 2013)……………………………………………7

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case was filed early this year but was stalled for many months. With Defendant Apple, Inc.'s multiple motions to dismiss finally resolved and its arguments against notice to putative plaintiffs rejected by the Court, it now seeks a stay while it requests permission for interlocutory appeal of an issue that does not apply to everyone in the putative collective. It takes the position that the Court's Order permitting the distribution of judicial notice to workers who Defendant has not identified but claims agreed to arbitrate their claims "is a textbook candidate for interlocutory appellate review under 28 U.S.C. § 1292(b)." (Def.'s Mem. 1, ECF No. 103.) It seeks to stay the entire case, even though tens of thousands of its workforce undisputedly did not sign arbitration agreements and have a right to notice and to proceed with their claims. And it asks the Court to stop litigation so it can pursue an argument that it is unlikely to win based on the jurisprudence applicable here.

In reality, Defendant's motion is an attempt to prevent workers from learning about this case where it paid overtime at a lower rate than required by law. While "[n]o company wants its employees to receive a letter informing them that they might be eligible to join a lawsuit against it," as the Sixth Circuit observed when it disposed of a similar request for a stay and appeal, appellate courts "lack jurisdiction to resolve this issue in an interlocutory appeal." *Taylor v. Pilot Corp.*, 697 F. App'x 854, 854 (6th Cir. 2017).[1] Indeed, Defendant cannot meet the heavy burden of demonstrating that this is one of the exceptionally rare cases where the Court should certify an order for appeal, particularly since a provisional order allowing notice to potential FLSA collective members does not constitute a "controlling question of law" as required for interlocutory appeal under 28 U.S.C. § 1292(b). Copious case law in the Ninth Circuit is in accord on this issue, which makes a stay futile.

Furthermore, the resolution of the FLSA notice issue will not avoid litigation, nor will it materially affect the outcome of the litigation because there are many workers who have the right to learn about this case and pursue their claims in court regardless. Moreover, Plaintiffs' California

---

[1] The plaintiffs in *Taylor* were represented by the same counsel as Plaintiffs here.

and New York state law Rule 23 class claims that have nothing to do with the federal FLSA or FLSA notice should not be stalled. The Court correctly found no reason to delay FLSA notice while it renders a ruling on Defendant's motion to compel arbitration and it should similarly reject Defendant's demand for a stay that does not materially advance the litigation and only seeks to prevent and delay workers from learning about their rights.

**PROCEDURAL AND FACTUAL BACKGROUND**

On March 23, 2023, Plaintiff Francis Costa, on behalf of himself and others similarly situated, filed this lawsuit asserting that Defendant Apple, Inc. violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") by not including the value of vested restricted stock units ("RSUs") when calculating its employees' overtime rate of pay. (*See generally* Compl., ECF No. 1.) Rather than answer, Defendant moved to dismiss the Complaint. (Def.'s Mot. to Dismiss, ECF No. 39.) Plaintiff filed an Amended Complaint, as a matter of right, to remedy the purported defect and at the same time added another named Plaintiff, Amanda Hoffman, who in addition to FLSA claims, asserted putative Rule 23 class claims under California law. (Am. Compl., ECF No. 48.) Defendant withdrew its motion, but then moved to dismiss one of Plaintiff Hoffman's California claims. (Notice of Withdrawal, ECF No. 48; Def.'s Mot. to Dismiss, ECF No. 56.) The Court denied that motion and allowed Plaintiffs to amend a second time, adding a third named Plaintiff, Olivia McIlravy-Ackert and Rule 23 class claims under New York law. (*See generally* 2d Am. Compl., ECF No. 70.) Plaintiffs later agreed to dismiss one of Plaintiff McIlravy-Ackert's claims. (Stipulation, ECF No. 74.) On September 15, 2023, Defendant answered the Second Amended Complaint. (Ans., ECF No. 76.)

Plaintiffs later sought to add additional claims for civil penalties under the California Private Attorneys General Act ("PAGA"), to which Defendant stipulated. (Stip. on 3d Am. Compl. and Order, ECF Nos. 82, 85.) On October 27, 2023, Plaintiffs filed their Third Amended Complaint, adding a PAGA claim. (3d Am. Compl., ECF No. 86.) On November 10, 2023, Defendant filed its Answer to Plaintiffs' Third Amended Complaint. (Ans., ECF No. 92.)

On August 10, 2023, Defendant produced arbitration agreements for two of four Plaintiffs it claimed agreed to arbitrate. (Fisher Decl. ¶ 2.) Contrary to Defendant's assertion, Plaintiffs'

Counsel did not ignore Defendant's Counsel about arbitration. (*Id.*) Rather, they told them that they would need to see the two remaining agreements, which, for some reason Defendant stalled on producing. (*Id.*) On October 26, 2023, Defendant finally produced arbitration agreements for the two others when it filed its motion to compel arbitration. (*Id.*) Of the 43 individuals who have joined the case to date, Defendant has only produced arbitration agreements for four of eleven it claims signed them. (*Id.*; *see* Arbitration Agmts., ECF Nos. 83–2, 83–3, 83–4, 83–5; Robles Decl. ¶¶ 5–6, ECF No. 103–1.)

On September 28, 2023, Plaintiffs filed a motion for the distribution of judicial notice to the FLSA putative collective. (Mot. for Notice, ECF No. 78.) On November 21, 2023, the Court granted it, ordering that by November 30th Plaintiffs revise the notices consistent with the Court's Order, and by December 11th Defendant produce the list of putative plaintiffs. (Order, ECF No. 98.) In the Order, the Court rejected Defendant's argument that it should follow out-of-circuit case law and deny notice to those who Defendant asserts signed arbitration agreements; it ultimately followed in-circuit precedent holding that the mere possibility of mandatory arbitration should not prevent people from receiving notice. (*Id.* 7–8.) It explained that Defendant has not met its burden of showing how many were allegedly subject to arbitration and emphasized that Plaintiffs were challenging their validity and enforceability. (*Id.* 9.)[2] As the Court observed, Defendant only

---

[2] Defendant's statements that "the Court determined it would not exclude from this group employees who had *agreed to arbitrate* their claims" and that "the Court determined that it would not exclude employees with *binding* arbitration agreements from the collective" misrepresents what the Court said; the Court explained that Plaintiffs challenge the validity and enforceability of the agreements, thus distinguishing this case from others where courts found the agreements to be valid or the validity of which was not contested. (*See* Def.'s Mem. 2–3 (emphasis added), ECF No. 103; *see* Order 8–10, ECF No. 98.) Moreover, Defendant's statement that it previously submitted evidence that "every employee hired on or after June 1, 2016 signed arbitration agreements as part of their onboarding paperwork" misrepresents the declaration it had submitted, which did not say that every one of those workers actually signed an arbitration agreement. (*See* Def.'s Mem. 3, ECF No. 103; Robles Decl. ¶ 10, ECF No. 83.) Indeed, as of the filing of this opposition, Defendant has only produced arbitration agreements for 4 of the 43 people who joined, several of whom worked for Defendant after June 1, 2016. (Fisher Decl. ¶ 5; *see* Decls. (including dates of employment of several opt-in Plaintiffs for whom Defendant has not produced an agreement), ECF No. 078–2.) Defendant's statements are also misleading as they make it sound like Defendant likely has arbitration agreements for everyone, while at the same time disclosing that of the 63,700 non-exempt employees whose RSUs vested only approximately 39,000 (not all) purportedly agreed to arbitrate. (*See* Robles Decl. ¶¶ 3–4, ECF No. 103.)

produced arbitration agreements for four individuals, despite claiming that "all but a small handful have agreed to arbitrate claims." (*Id.* 7, 9.)

Consistent with the Court's Order, on November 29th, Plaintiffs sent Defendant revised notices and had a call with Defendant's Counsel to discuss the notice and how many individuals were in the putative collective so that Plaintiffs could obtain bids from claims administrators. (Fisher Decl. ¶ 3.) On that call, Defendant stated that it would request certification for interlocutory appeal of the Court's Order on the issue of whether workers who Defendant claimed agreed to arbitrate should be excluded from receiving FLSA notice and would seek a stay of the action. (*Id.*)

There is still discovery to be conducted that would be adversely impacted by a stay. (*Id.*) Aside from Defendant's production of just four arbitration agreements, Defendant has provided little information in discovery and no other documents. (*Id.* ¶ 4.) On November 3, 2023, Defendant responded to written discovery, but other than making objections, only answered one interrogatory, a few requests for production, and produced no documents. (*Id.*; Def.'s Ans. Irrogs, Ex. 1; Def.'s Ans. RFPs, Ex. 2.) On November 28, 2023, Plaintiffs served Defendant with a discovery deficiency letter and noticed a Rule 30(b)(6) deposition. (Fisher Decl. ¶ 4.)

## ARGUMENT

### I. Legal Standard for a Stay

"A district court has discretionary power to stay proceedings . . . ." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). "[W]here it is proposed that a proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Id.* at 1110. The Ninth Circuit explained:

> Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* However, "[a]n appeal from an interlocutory order does not . . . 'stay the proceedings, as it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." *Grauberger v. St. Francis Hosp.*, 169 F.

Supp. 2d 1172, 1175 n.2 (N.D. Cal. 2001) (quoting *Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982)); 28 U.S.C. § 1292(b) (explaining that for an interlocutory appeal, "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.").

"The party seeking a stay bears the burden of proving the stay is warranted." *Fidelity & Guaranty Ins. Co. v. Homes*, 2014 WL 12590116, at *6 (C.D. Cal. Mar. 26, 2014). It "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

**II. Defendant Has Not Demonstrated That the Requirements for a Stay Are Met**

Defendant requests a stay while it attempts to appeal a discrete FLSA notice issue—an appeal that is unlikely to be granted considering the weight of authority counsels against interlocutory appeal of FLSA notice.[3] *See McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1138 (9th Cir. 2007) (dismissing interlocutory appeal of FLSA notice issue for lack of appellate jurisdiction); *Agerkop v. Sisyphian LLC*, 2021 WL 4348733, at *4 (C.D. Cal. Aug. 4, 2021); *Hunter v. Legacy Health*, 2021 WL 4238991, at *9–12 (D. Or. Apr. 13, 2021); *Ambrosia v. Cogent Commc'ns, Inc.*, 2016 WL 777775, at *3 (N.D. Cal. Feb. 29, 2016); *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1073 (D. Ariz. 2015); *Lillehagen v. Alorica, Inc.*, 2014 WL 2009031, at *2–8 (C.D. Cal. May 15, 2014); *Ellerd v. Cnty. of Los Angeles*, 2009 WL 3462179, at *6 (C.D. Cal. Oct. 22, 2009); *see also Taylor*, 697 F. App'x at 854; *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d

[3] Pursuant to 28 U.S.C. § 1291, appellate review is available only after final judgment has been entered. However, Congress created a narrow exception if: (1) the "order involves a controlling question of law;" (2) there is "substantial ground for difference of opinion;" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub nom Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983). The requirements of 28 U.S.C. § 1292(b) are jurisdictional, so a court may not certify an order for interlocutory appeal all three are met. *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *see Mowat Constr. Co. v. Dorena Hydro, LLC*, 2015 WL 5665302, at *5 (D. Or. Sept. 23, 2015) (even when all three requirements are satisfied, the court retains unfettered discretion to deny the motion) (citation omitted).

544, 549 (6th Cir. 2006); *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 933 (5th Cir. 2005); *Lusardi v. Xerox Corp.*, 747 F.2d 174, 175, 177–78 (3d Cir. 1984)*; Isaacs v. Landmark Recovery of Louisville, LLC*, 2023 WL 7101869, at *3 (M.D. Tenn. Oct. 27, 2023); *Babbitt v. Target Corp.*, 2023 WL 2540450, at *2–5 (D. Minn. Mar. 16, 2023); *Peck v. Mercy Health*, 2023 WL 1795421, at *3 (E.D. Mo. Feb. 7, 2023); *Piazza v. New Albertsons, Inc.*, 2021 WL 3645526, at *5 (N.D. Ill. Aug. 16, 2021); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 534 (D. Mass. Sept. 11, 2019); *Walsh v. Gilbert Enters., Inc.*, 2019 WL 2448670, at *1–2 (D. R.I. June 12, 2019); *Kelly v. Healthcare Servs. Grp. Inc.*, 2014 WL 3612681, at *5–7 (E.D. Tex. July 22, 2014); *LeFleur v. Dollar Tree Stores, Inc.*, 2013 WL 150722, at *4 (E.D. Va. Jan. 11, 2013); *Long v. CPI Sec. Sys., Inc.*, 2013 WL 3761078, at *4 (W.D.N.C. July 16, 2013); *Craig v. Rite Aid Corp.*, 2010 WL 1994888, at *4 (M.D. Pa. Feb. 4, 2020); *Pereira v. Foot Locker, Inc.*, 2010 WL 300027, at *5 (E.D. Pa. Jan. 25, 2010); *O'Donnell v. Robert Half Int'l*, 534 F. Supp. 2d 173, 181 (D. Mass. 2008). This makes sense because district courts have the requisite procedural authority to manage the process of joining multiple parties, and a court's order allowing notice is not a final determination; the sole consequence of a successful motion for FLSA preliminary certification is the sending of court-approved notice to workers who may wish to join the litigation as individuals. *See Babbitt*, 2023 WL 2540450, at *3 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) and *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018).

In addition to being likely to lose its motion to certify the Order for interlocutory appeal, Defendant cannot meet its burden of showing a clear case of hardship or inequity if the Court denies a stay, particularly when weighed against the damage to Plaintiffs. For example, a stay would harm Plaintiffs by preventing discovery into the merits of their claims and the claims of thousands of others who do not have arbitration agreements. It would stop Plaintiffs from litigating core legal questions that are unaffected by the issue Defendant wants to appeal, such as whether Defendant improperly calculated the overtime rate of pay under federal and state law, whether the putative

California and New York Rule 23 classes should be certified,[4] and the appropriateness of liquidated damages and penalties. *See generally Dealer Computer Servs., Inc. v. Ford*, 2007 WL 9752793, at *2 (E.D. Mich. Oct. 19, 2017) (denying stay where the issue on appeal did not eliminate the other core issues to be decided); *Zyme Sols., Inc. v. InfoNow Corp.*, 2013 WL 6699997, at *5–6 (N.D. Cal. Dec. 19, 2013) (denying stay, explaining that a lot could be accomplished through litigation during the requested stay period and speculative harm was insufficient to justify stay). While Defendant complains that the scope of discovery will somehow be impacted by a decision on the issue it seeks to appeal, it neglects to recognize that the same discovery will occur anyway for those without arbitration agreements and that discovery will be on a representative basis. *See generally Prescription Supply, Inc. v. Musa*, 2016 WL 5930529, at *2 (E.D. Mich. Oct. 12, 2016) (denying stay where the defendant did not explain how discovery would be impacted by it where another co-defendant outside of the stay was participating in discovery); *see Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017) ("In FLSA cases, the use of representative testimony to establish class-wide liability has long been accepted."). Furthermore, the Court has discretion to limit discovery for anyone who joins who allegedly has an arbitration agreement, to discovery related to that agreement, which would allow non-arbitration Plaintiffs to proceed with discovery related to their claims. The need to engage in some discovery does not constitute sufficient harm to justify a stay. *See generally Sims v. QG Printing II LLC*, 2023 WL 4290402, at *1 (C.D. Cal. May 5, 2023).

Delaying notice by staying the case will adversely impact people joining, which contravenes the purpose of notice.[5] *See Hoffman-La Roche Inc.*, 493 U.S. at 172. As time passes,

---

[4] While Defendant is not appealing Rule 23 class certification, it is noteworthy that the filing of a petition for permission to appeal from an order granting or denying Rule 23 class certification "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). When deciding whether to stay proceedings in the Rule 23 class context, courts consider (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

[5] Curiously, Defendant complains that the distribution and cost of sending notice to more people is "harm faced by Apple." (Def.'s Mem. 8, ECF No. 103.) But the Court has not ordered Defendant to pay, only to identify putative collective members. If the Court later determines that certain people who joined cannot continue with their claims in court, they can easily be notified of such by

people relocate and become difficult to find, their memories fade, and their interest in making a claim wanes.  Further, the passage of time makes it harder for Plaintiffs to effectively prove their case, as relevant data and information may be lost or destroyed.  A stay also delays proper payment to Plaintiffs and the putative collective, as Plaintiffs contend that Defendant's policy of paying a deflated overtime rate denied and continues to deny them overtime wages.

Defendant's feigned concern over certain employees being confused or misled by receiving notice rings hollow;[6] its real concern is that it does not want employees, who *it* asserts entered valid agreements to arbitrate, to learn about their rights and make a claim against it, whether in court or arbitration.  *See Taylor*, 697 F. App'x at 858, 862 (rejecting interlocutory appeal over FLSA notice to those purportedly with arbitration agreements, noting that "[w]hether these employees have meritorious claims under Taylor's theory or no claims at all, Pilot would likely prefer that they not receive a letter informing them that they might.").  Defendant complains that litigating these claims would deprive it of the benefits of arbitration by "destroy[ing] the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure." (Def.'s Mem. 7, ECF No. 103.)  Sending notice and allowing employees to conditionally opt-in is not causing Defendant to "litigate" issues related to their claims that would only otherwise occur in arbitration, nor is it destroying the prospect of a speedy resolution in arbitration.[7]  The notice simply informs them of the lawsuit and instructs that if they submit a consent to join form, whether they are subject to a valid and enforceable agreement will ultimately need to be decided by the Court (which can be decided in one motion to compel arbitration after the opt-in period is closed, some discovery regarding the agreements has been conducted, and the challenges to the agreement are known).

---

mail, email, or text. *Cf. Brown v. Wal-Mart Stores, Inc.*, is distinguishable as it involved the class definition in a Rule 23 action and confusion that a corrective notice could cause if the class definition changed.  2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012).

[6] The Court's instruction to the parties to include language in the notice informing recipients that their claims may be subject to binding arbitration agreements addressed this issue.  (Order 10, ECF No. 98.).

[7] Defendant's position that sending notice somehow destroys the prospect of a speedy resolution in arbitration makes no sense (especially here where Defendant wants to stall the entire case).  The distribution of notice does not prevent anyone from later proceeding in arbitration, and those familiar with arbitrating claims *en masse* know that arbitration is not speedy—it is slow, expensive, time consuming, and complicated.

Last, Defendant contends that it may be harmed by the "potential for coercion" resulting from the false "possibility of colossal liability." (Def.'s Mem. 8, ECF No. 103.) The case it cites for this proposition though, *Coinbase, Inc. v. Bielski*, is distinguishable as it related to potential for coercion where a party sought to proceed with litigation during appeal, where the *entire* case was arguably subject to arbitration. 599 U.S. 736 (2023). Here, the case will proceed in court for thousands of employees, despite some people potentially being compelled to arbitration; the risk of coercion mentioned in *Bielski* is not present. *See Radio Music License Committee, Inc. v. American Soc. of Composers*, -- F. Supp. 3d--, 2023 WL 5048257, at *4 (S.D.N.Y. July 27, 2023) (denying stay and distinguishing *Bielski* where the entire case might be compelled to arbitration, with the instant case where some claims would continue in litigation).

To support its motion, Defendant proffers that "[i]n each instance where a federal court of appeals has addressed this issue [seeking interlocutory appeal of the distribution of notice to workers who might have arbitration agreements], the underlying proceedings have been stayed to await appellate guidance." (Def.'s Mem. 1, ECF No. 103.) The authority behind this argument is weak. Two of the matters cited had no analysis. *See In re JPMorgan Chase & Co.*, No. 18-20825 (5th Cir. Dec. 21, 2018) (Fifth Circuit granted stay with no analysis when granting writ of mandamus to hear appeal);[8] *Bigger v. Facebook, Inc.*, No. 1:17-CV-7753, Dkt. 75 (N.D. Ill. Apr. 9, 2019) (district court granted stay until interlocutory appeal complete, without analysis).[9] In the other case, *Clark v. A&L Home Care & Training Ctr.*, the district court granted a stay with no analysis of factors required for a stay, other than pointing out a risk of mooting the appeal if it was not granted). No. 1:20-CV-00757, Dkt. 33 (S.D. Ohio Aug. 13, 2021).[10]

---

[8] The district court actually denied the defendant's motion for certification for interlocutory appeal and a stay. *Rivenbark v. JPMorgan Chase & Co.*, No. 4:17-CV-03786, Minute Entry (S.D. Tex. Dec. 20, 2018); *see In re JPMorgan Chase & Co.*, 916 F.3d 494, 498 (5th Cir. 2019) (reflecting that the district court denied the motion to certify its order for interlocutory appeal and enter an emergency stay for appellate review, but that the Fifth Circuit granted the stay when it decided to permit a writ of mandamus to review the lower court's decision about FLSA notice).

[9] Similarly, there appears to be no order analyzing the factors for certifying an order for interlocutory appeal, just the minute entry granting it. *See Bigger*, No. 1:17-CV-7753, Dkt. 75 (N.D. Ill. Apr. 9, 2019).

[10] The Court should not be persuaded by the fact that the Sixth Circuit vacated and remanded an order authorizing FLSA notice to people who signed arbitration agreements. *See Clark v. A&L*

The Court should look to the Ninth Circuit for guidance as to the futility of the stay Defendant requests, as it counsels that permission for interlocutory appeal on the issue present in this case must be denied. In *McElmurry*, the Ninth Circuit concluded that it had no jurisdiction over a district court's decision to certify or not certify a FLSA collective action or a Rule 23 class action. 495 F.3d at 1139–42. While it did not analyze a request for certification for appeal under 28 U.S.C. § 1292 because the movant waived it, the analysis was similar, and the Ninth Circuit ultimately agreed with the rationale of other circuits that found no appellate jurisdiction over a FLSA notice order. *Id.* (citing *Comer*, 454 F.3d 544; *Baldridge*, 404 F.3d at 931; *Lusardi*, 747 F.2d at 177–78). The Sixth Circuit in *Taylor* reached the same conclusion and rejected a motion for interlocutory appeal and a stay. 697 F. App'x at 858–62. In *Taylor*, the district court had authorized FLSA notice to over 80,000 employees, including 50,000 of whom the defendant asserted agreed to arbitrate. *Id.* The district court declined to stay the case until all the arbitrations concluded and explained that it would determine whether the standard arbitration contracts were enforceable only after it collected and reviewed who opted into the litigation. *Id.* In denying the motion for interlocutory appeal, the Sixth Circuit reasoned that general appellate jurisdiction only allowed appeals from a district court's final decisions, and an order approving of FLSA notice was not a final judgment on the merits. *Id.* It noted that a motion for FLSA notice is "conditional" and "simply allows the sending of court-approved written notice to employees who must then affirmatively opt into the litigation." *Id.* at 860 (citing *Hoffman-La Roche*, 493 U.S. at 171–72. Like in *Taylor*, the Court can efficiently address whether certain people who join must arbitrate their claims once the parties and Court know who they are and what challenges they may or may not raise to arbitration—that issue is not one that can be resolved now for these unknown persons.[11]

---

*Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011–12 (6th Cir. 2023). The Sixth Circuit discarded the FLSA's lenient standard for conditional certification and created a new one requiring the employees to show a strong likelihood they are similarly situated to others, including those who allegedly signed arbitration agreements. *Id.* (admitting that its decision is even contrary to *Bigger* and *JPMorgan* that require the *employer* to show by a preponderance of the evidence that employees agreed to arbitrate, by placing the burden on the plaintiffs to prove otherwise instead). This new higher standard conflicts with the Ninth Circuit's lenient standard for FLSA notice. *See generally Campbell*, 903 F.3d at 1109–14, 1117.

[11] Staying notice until the Court's ruling on the motion to compel arbitration for the four opt-in Plaintiffs serves no purpose either. Even if the Court were to compel them to arbitration, Defendant

Finally, *Romero* is also instructive. 404 F. Supp. 3d at 534. In *Romero*, the defendant made the same request for a stay and interlocutory appeal that Defendant makes here, which the court denied. The defendant in *Romero* similarly tried to convince the district court to follow *JPMorgan & Chase & Co.* and deny notice to those who it claimed signed agreements to arbitrate. *Id.* at 533–34 (citing *JPMorgan*, 916 F.3d 494). The district court declined, explaining the problems with trying to address the enforceability of arbitration agreements prior to sending notice. *Id.* at 534. It concluded that the defendant did not establish by the preponderance of the evidence that it had valid arbitration agreements for everyone at issue, noting that the named plaintiff had no way of meaningfully contesting the validity of the arbitration agreements for those whose identities were not known as they had not yet opted into the action. *Id.*[12] It concluded that notice would be issued

---

has not proven by a preponderance of the evidence that others are subject to valid and enforceable agreements, despite being on notice that the Fifth and Seventh Circuit decisions upon which it relies, only preclude notice if the defendant makes that showing. *See In re JPMorgan*, 916 F.3d at 502 (making clear that if there is a genuine dispute as to the existence or validity of an arbitration agreement an employer must show by a preponderance of the evidence the existence of a valid arbitration agreement for that employee and if it cannot, that employee would receive the same notice as others; instructing district court to revisit its decision and pointing out that the plaintiffs did not dispute the validity of the agreements); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050–51 (7th Cir. 2020) (explaining employer seeking to exclude employees from receiving notice must show by a preponderance of the evidence the existence of a valid arbitration agreement for *each* employee it seeks to exclude, stating "[t]o be clear, if the employer does not prove that an employee entered a valid arbitration agreement, then the court may authorize notice to that employee."); *see also Delara v. Diamond Resorts Int'l Marketing, Inc.*, 2020 WL 2085957, at *5–6 (D. Nev. Apr. 30, 2020) (in declining to follow *JPMorgan* and *Bigger*, explaining that the Fifth and Seventh Circuit's approach raises potential standing and due process concerns, creates practical difficulties, and would cause significant delay to conduct discovery on agreements for individuals who are not even parties to the case yet and file new motions to determine their validity without the participation of those parties). Defendant cites *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021) for the proposition that the Ninth Circuit is likely to join other Circuits in directing courts to adjudicate the arbitration issue before deciding FLSA notice. (Def.'s Mem. 6, ECF No. 103.) That case is inapposite because it was not about FLSA notice; it involved whether someone without an arbitration agreement was adequate to challenge the agreement as a class representative. Similarly, *Mohamed v. Uber Technologies, Inc.*, was a Rule 23 class case and says nothing of a requirement that the court address a motion to compel arbitration prior to issuing class notice. 848 F.3d 1201, 1211–12 (9th Cir. 2016).

[12] In approving FLSA notice to all employees, including those who allegedly signed arbitration agreements, the court in *Hafley v. Amtel, LLC* reasoned that while its order meant that employees with arbitration agreements may receive notice and opt-in, the alternative is worse as it would allow the employer to omit employees based on its own documentation of an arbitration agreement and

to everyone and any challenges to the validity of the arbitration agreement could be determined later. *Id.* at 535. It then refused to stay the action and certify the notice order for interlocutory appeal because two of the three factors for appeal were not present. *Id.* at 535 (finding that the appeal did not involve a "controlling question of law" that would terminate the action, because regardless of whether notice was sent to those who purportedly agreed to arbitrate, they only make up a subset of the putative collective, and appeal would not materially advance the litigation, but only delay it).

Defendant simply cannot demonstrate the requisite hardship or inequity to justify a stay, particularly when weighed against the damage to Plaintiffs. *See generally Fidelity*, 2014 12590116, at *6 (explaining the movant for a stay must show how its prejudiced by having to continue litigation and cannot shift the burden to show hardship to the non-movant).[13] Moreover, a stay would be futile considering the abundance of authority that FLSA notice orders do not meet the requirements for interlocutory appeal.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny the motion.

Date: December 6, 2023

NICHOLS KASTER, PLLP

By: *Michele R. Fisher*
Attorney for Plaintiffs and the Putative FLSA Collective

---

allow it to act as its own judge and jury as to the validity of them. 2022 WL 20032814, at *7 (S.D. Ohio, Mar. 18, 2022).

[13] Cases Defendant cites for the proposition that a stay is the "fairest course" where an appeal raises a "serious legal issue" are distinguishable. *U.S. ex rel. Integra Med. Analytics LLC v. Providence Health and Servs.*, 2019 WL 6973547, at *4 (C.D. Cal. Oct. 8, 2019) (approving stay in class action where the issue certified for interlocutory appeal was a controlling question that would have a dispositive effect and was a "serious legal issue" because it could possibly result in dismissal of the claim entirely); *In Re Apple & ATTM Antitrust Litig.*, 2010 WL 11489069, at *3 (N.D. Cal. Sept. 15, 2010) (granting stay in class action because interlocutory appeal of whether certain types of aftermarket monopolization claims were appropriate for class treatment could result in a change in class definition and cause confusion with corrective notice to class).