1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA  94104

Michele R. Fisher, MN State Bar No. 303069*
fisher@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200

Loren B. Donnell, FL State Bar No. 013429*
ldonnell@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Rd. Suite 285
Boca Raton, FL 33431

Michael J. Palitz, NY State Bar No. 278915*
mpalitz@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
477 Madison Ave, 6th Floor
New York, NY 10022

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francis Costa, Amanda Hoffman, and Olivia McIlravy-Ackert, individually and on behalf of others similarly situated,<br><br>         Plaintiffs,<br><br> v.<br><br>Apple, Inc.,<br><br>         Defendant. | Case No. 3:23-CV-01353-WHO<br><br>**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION**<br><br>Date: November 6, 2024<br>Time: 2:00 p.m. Pacific<br>Place: Via Zoom<br>Judge: Honorable William H. Orrick |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Wednesday, November 6, 2024, at 2:00 p.m. Pacific via Zoom, before the Honorable William H. Orrick, Plaintiffs Francis Costa, Amanda Hoffman, and Olivia McIlravy-Ackert on behalf of themselves and the proposed classes, will move for an order granting class certification. This motion is made on the grounds that Plaintiffs establish that the requirements for class certification under Rule 23 are met.

Plaintiffs move for an order (1) granting their motion and certifying the Rule 23 California and New York classes; (2) approving the form of class notice to be distributed; and (3) directing that Defendant Apple, Inc. within 14 days, produce to Plaintiffs' Counsel and the administrator two separate lists (one for the California class and one for the New York class)  with class members' name, unique employee identifier used during their employment, address, phone number, and last known email address. This motion is supported by the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Counsel and exhibits, and other evidence and argument presented to the Court at the hearing.

**STATEMENT OF ISSUE TO BE DECIDED**

Pursuant to Local Rule 7–4, the issue to be decided is whether this case should be certified as a Rule 23 class action.

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................1

II.   RELEVANT PROCEDURAL HISTORY ............................1

III.  PROPOSED CLASS DEFINITIONS ..............................2

IV.  FACTUAL BACKGROUND

    A.    Plaintiffs and Putative Class Members Are All Employees Who Apple Classified as Non-Exempt/Overtime Eligible...................................2

    B.    Plaintiffs and Putative Class Members All Received Apple RSUs That Were Subject to the Same Stock Plans and RSU Agreements.............................3

    C.    Apple Did Not Include the Value of Vested RSUs in the Overtime Rate and Asserts the Same Reasons for its Omission for All Employees..............................6

    D.    Overtime Damages Will Be Calculated Using Apple's Data......................7

V.    LEGAL ARGUMENT.......................................................7

    A.    Plaintiffs Establish Numerosity........................................7

    B.    Plaintiffs Establish Commonality.....................................8

        1.    *Miscalculated Overtime Pay Under California and New York Law.*9

        2.    *Derivative Claims Under California Law*.......................13

    C.    Plaintiffs Are Typical and Adequate..........................................15

    D.    Rule 23(b)(3)'s Predominance and Superiority Requirements are Met.......17

        1.    *Common Issues Predominate Over Individualized Issues*................17

        2.    *A Class Action is Superior to Thousands of Individual Actions*.......19

    E.    The Proposed Notice is Fair, Accurate, and Informative.............................19

VI.  CONCLUSION.......................................................19

ii

# TABLE OF AUTHORITIES

<u>CASE LAW</u>

*Abdul-Ahad v. Associated Courier Inc.*
No. 0:20-cv-00607 (D. Minn. Mar. 26, 2021)...................................................16

*Alonzo v. Maximus, Inc.*
832 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................................9

*Allen v. All Temporaries, Inc.*
16-cv-04409 (D. Minn. Nov. 8. 2017)...............................................................16

*Amgen v. Conn. Ret. Plans & Trust Funds*
568 U.S. 455 (2013).....................................................................................7, 18

*Amchem Products, Inc. v. Windsor*
117 S. Ct. 2231 (1997)...............................................................................17, 18

*Bowlay-Williams v. Google LLC*
4:21-cv-09942-PJH (N.D. Cal. Aug. 8, 2023) ................................................16

*Borowske v. FirstService Residential Minnesota, Inc.*
0:20-cv-01564 (D. Minn. May 11, 2021) .........................................................16

*Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*
2023 WL 8458247 (S.D. Cal. Dec. 6, 2023)..............................................12, 14

*Carlino v. CHG Med. Staffing, Inc.*
460 F. Supp. 3d 959 (E.D. Cal 2020) ................................................................9

*Carlino v. CHG Med. Staffing, Inc.*
634 F. Supp. 3d 895 (E.D. Cal. 2022) .............................................................12

*Chacon v. Express Fashion Operations LLC*
2021 WL 4595772 (C.D. Cal. June 14, 2021)........................................9, 13, 15

*Chavez v. Lumber Liquidators, Inc.*
2012 WL 1004850 (N.D. Cal. Mar. 26, 2012)..................................................13

*Clarke v. AMN Servs., LLC*
2017 WL 6942755 (C.D. Cal. Oct. 12, 2017)...................................................13

*Clemens v. Hair Club for Men, LLC*
2016 WL 1461944 (N.D. Cal. Apr. 14, 2016) ..................................................14

*Comcast Corp. v. Behrend*
133 S. Ct. 1426 (2013).......................................................................................7

*Culley v. Lincare Inc.*
2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) ........................................................ 13, 18

*Cortez v. Purolator Air Filtration Prod. Co.*
23 Cal. 4th 163 (2000) ............................................................................................ 14, 15

*Dalchau v. Fastaff, LLC*
2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) .............................................. 13, 15, 17, 19

*Deluca v. Farmers Ins. Exchange*
2018 WL 1981393 (N.D. Cal. Feb. 27, 2018) ............................................................... 14

*Dietrick v. Securitas Security Servs. USA, Inc.*
50 F. Supp. 3d 1265 (N.D. Cal. 2014) ........................................................................... 9

*Escano v. Kindred Healthcare Operating Co., Inc.*
2013 WL 816146 (C.D. Cal. Mar. 5, 2013) .................................................................. 13

*Estrada v. Royalty Carpet Mills, Inc.*
541 P.3d 466, 474 (2024) ............................................................................................. 14

*Evans v. Wal-Mart Stores, Inc.*
2019 WL 7169791 (C.D. Cal. Nov. 5, 2019) ................................................................ 13

*Evon v. Law Offices of Sidney Mickell*
688 F.3d 1015 (9th Cir. 2012) ...................................................................................... 15

*Ferra v. Loews Hollywood Hotel*
11 Cal. 5th 858 (Cal. 2021) ............................................................................................ 9

*Gardner v. Lancer Food Holdings, LLC*
No. 20-cv-00493 (D. Minn. Sept. 18, 2020) ................................................................ 16

*Haro v. City of Los Angeles*
745 F.3d 1249 (9th Cir. 2014) ...................................................................................... 11

*Harlow v. Sprint Nextel Corp.*
254 F.R.D. 418 (D. Kan. 2008) ..................................................................................... 16

*Hanlon v. Chrysler Corp.*
150 F.3d 1011(9th Cir. 1998) ................................................................................. 15, 17

*Hernandez v. Merrill Lynch & Co.*
2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .............................................................. 17

*Hilario v. Allstate Ins. Co.*
2024 WL 615567 (9th Cir. Feb. 14, 2024) ..................................................................... 7

*Hilario v. Allstate Ins. Co.*
642 F. Supp. 3d 1048 (N.D. Cal. 2022) ............................................................7

*Horton v. NeoStrata Co.*
2017 WL 2721977 (S.D. Cal June 22, 2017) ..................................................12

*Howell v. Advantage RN, LLC*
2018 WL 3437123 (S.D. Cal. July 17, 2018) ..................................................13

*Hubbard v. RCM Techs. (USA), Inc.*
2020 WL 6149694 (N.D. Cal. Oct. 20, 2020).............................................13, 15

*Huntsman v. Southwest Airlines Co.*
2021 WL 391300 (N.D. Cal. Feb. 3, 2021) ....................................................18

*Huntington Mem'l Hosp. v. Superior Court*
131 Cal App. 4th 893 (Cal. Ct. App. 2005) ......................................................9

*Idaho Sheet Metal Workers, Inc. v. Wirtz*
86 S. Ct. 737 (1996)..........................................................................................9

*Johnson v. D.M. Rothman Co.*
861 F. Supp. 2d 326 (S.D.N.Y. 2012) ..............................................................9

*Jimenez v. Allstate Ins. Co.*
765 F.3d 1161 (9th Cir. 2014)........................................................................18

*Kellman v. Spokeo, Inc.*
2024 WL 2788418 (N.D. Cal. May 29, 2024) ....................................2, 11, 17

*Kincaid v. Educ. Credit Mgmt. Corp., Inc.*
2024 WL 1344595 (E.D. Cal. Mar. 29, 2024) ...............................................12

*Leyva v. Medline Indus. Inc.*
716 F.3d 510 (9th Cir. 2013)....................................................................11, 19

*Louis v. Newtek Business Service Corp.*
2022 WL 4596694 (C.D. Cal. July 29, 2022) ................................................15

*Lytle v. Nutramax Labs., Inc.*
2024 WL 1710663 (9th Cir. Apr. 22, 2024) ..................................................17

*Magadia v. Wal-Mart Associates, Inc.*
324 F.R.D. 213 (N.D. Cal. 2018) ...................................................................13

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*
2017 WL 2257130 (E.D. Cal. May 23, 2017)................................................16

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Mewawalla v. Middleman*
601 F. Supp. 3d 574 (N.D. Cal. May 2, 2022) ...............................................................15

*Moreno v. Pretium Packaging, L.L.C.*
2020 WL 4333353 (C.D. Cal. July 17, 2020) ...............................................................12

*Palacio v. E*TRADE Fin. Corp.*
2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ...............................................................17

*Provine v. Office Depot, Inc.*
2012 WL 2711085 (N.D. Cal. July 6, 2012)............................................................13, 19

*Puglisi v. TD Bank, N.A.*
2015 WL 574280 (E.D.N.Y. Feb. 9, 2015)....................................................................16

*Ray v. California Dept. of Social Services*
2020 WL 5498060 (C.D. Cal. July 10, 2020) ...............................................................11

*Rendon v. Infinity Fasteners, Inc.*
2022 WL 17634480 (E.D. Cal. Dec. 13, 2022)..............................................................12

*Rodman v. Safeway Inc.*
2015 WL 2265972 (N.D. Cal. May 14, 2015) ...............................................................18

*Ruiz v. JCP Logistics Inc.*
2015 WL 12696114 (C.D. Cal. June 16, 2015)..............................................................13

*Ruiz v. XPO Last Mile, Inc.*
2016 WL 4515859 (S.D. Cal. Feb. 1, 2016) ..................................................................18

*Santillan v. Verizon Connect, Inc.*
2022 WL 4596574 (S.D. Cal. June 13, 2022)...........................................................12, 15

*Schroeder v. Envoy Air, Inc.*
2017 WL 3835804 (C.D. Cal. Aug. 30, 2017)............................................................9, 13

*Sherald v. Embrace Techn., Inc.*
2013 WL 126355 (S.D.N.Y. Jan. 10, 2023).....................................................................9

*Sibley v. Sprint Nextel Corp.*
254 F.R.D. 662 (D. Kan. 2008) ....................................................................................16

*Snipes v. Dollar Tree Distrib., Inc.*
2017 WL 5754894 (E.D. Cal. Nov. 28, 2017) ...............................................................13

vi

*Sousa v. Walmart, Inc.*
2023 WL 1785960 (E.D. Cal. Feb. 6, 2023) ....................................................................14

*Sullivan v. Oracle Corp.*
51 Cal. 4th 1191 (2011) ....................................................................................................14

*Taylor v. Fedex Freight, Inc.*
2015 WL 2358248 (2015).....................................................................................................8

*Tackie v. Keff Enters. LLC*
2014 WL 4626229 (S.D.N.Y. Sept. 16, 2014) ..................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*
136 S. Ct. 1036 (2016).......................................................................................... 8, 17, 18

*Vasquez v. Leprino Foods Co.*
2021 WL 1737480 (E.D. Cal. May 3, 2021).....................................................................12

*Vongkhamchanh v. All Temps. Midwest, Inc.*
No. 17-cv-00976 (D. Minn. Jan. 26, 2018) ....................................................................16

*Wal-Mart Stores v. Dukes*
564 U.S. 338 (2011)..................................................................................................8, 12, 15

*Wang v. Chinese Daily News, Inc.*
737 F.3d 538 (9th Cir. 2013) ............................................................................................12

*Warsame v. Metro. Transp. Network, Inc.*
0:20-cv-01318 (D. Minn. Oct. 13, 2021) ........................................................................16

*Warfa v. Nationwide Express, LLC & Amazon Logistics, Inc.*
0:18-cv-03103 (D. Minn. Sept. 27, 2019) .......................................................................16

*Westfield v. Washington Mut. Bank*
2009 WL 6490084 (E.D.N.Y. Jun 26, 2009) ..................................................................16

*Woods v. Vector Mktg. Corp.*
2015 WL 5188682 (N.D. Cal. Sept. 4, 2015)............................................................7, 15

*Zeltser v. Merrill Lynch & Co.*
2014 WL 2111693 (S.D.N.Y. May 12, 2014) ..................................................................17

STATUTES

26 U.S.C. § 423 ...................................................................................................................11

29 U.S.C. § 216 ...................................................................................................................11

vii

29 U.S.C. § 207 ........................................................................................ 6, 9, 10, 11

29 U.S.C. § 255 .................................................................................................... 12

Cal. Business and Professional Code § 17200 .................................................... 14

Cal. Labor Code §§ 201–203 ......................................................................... 12, 13

Cal. Labor Code § 226 ........................................................................................ 12

Cal. Labor Code § 510 .......................................................................................... 9

Cal. Labor Code § 1194 ........................................................................................ 9

Cal. Labor Code § 1198 ........................................................................................ 9

Cal. Wage Order 4 ................................................................................................. 9

12 NYCRR § 142-2.2. ........................................................................................... 9

RULES

Fed. R. Civ. P. 23................................................................................ 7, 8, 15, 16, 19

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

This is a classic case for class action treatment—the commonality linking the class members is the dispositive question. The Rule 23 class claims hinge on a single legal issue common to Plaintiffs and all putative class members: whether Defendant Apple, Inc. (Apple) violated California and New York law by omitting the value of vested restricted stock units (RSUs) and the related dividends in the regular rate when calculating overtime pay. Apple's failure to do so resulted in overtime wages being paid at a lower rate than required by law. Apple admits that it maintains this common pay practice for all class members. The answer to this dispositive common question will drive the resolution of this case and will predominate over any individualized inquiries. Further, this legal question will be decided on common evidence, and damages calculated using objective data in Apple's possession. Courts routinely certify classes involving an employer's omission of remuneration from the overtime pay rate and Plaintiffs respectfully request that this Court do the same.

## II.     RELEVANT PROCEDURAL HISTORY

On March 23, 2023, Francis Costa (Costa) filed a putative Fair Labor Standards Act (FLSA) collective action because Apple did not include the value of vested restricted stock unit remuneration in the regular rate used to calculate overtime pay. (*See* Compl., Dkt. No. 1.) On June 14, 2023, Plaintiffs added California state law claims with Amanda Hoffman (Hoffman) as the California class representative. (1st Am. Compl., Dkt. 48.) On August 11, 2023, Plaintiffs amended to add Olivia McIlravy-Ackert (McIlravy-Ackert) as another California class representative and designated her as the New York class representative for added claims under New York state law. (2d Am. Compl., Dkt. 70.) On October 27, 2023, Plaintiffs amended to, in relevant part, add a claim under the California Private Attorneys General Act (PAGA) with Hoffman as that class representative.  (3d Am. Compl., Dkt. 86.)

On November 21, 2023, the Court authorized notice to the FLSA collective. (Order, Dkt. 98.) On December 8, 2023, it refined the FLSA collective definition as follows:

> All current and former employees of Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after March 23, 2020, and who recorded more than forty hours of work in a workweek after receiving an RSU but before the RSU vested.

(Order 4, Dkt. 112.) Apple provided the administrator with names and contact information for 47,333 putative FLSA plaintiffs who met the FLSA collective definition. (Fisher Decl. ¶ 2.) Including the three named Plaintiffs, over 8,000 FLSA Plaintiffs[1] are participating, including approximately 2,770 from California and 479 from New York. (*Id.* ¶ 3.) Apple represents that 4,499 FLSA Plaintiffs did not sign agreements. (Def.'s Discovery Ltr., Dkt. 277.)[2] Apple has not identified how many putative class members worked in California or New York. (Fisher Decl. ¶ 5.)

## III.    PROPOSED CLASS DEFINITIONS[3]

Plaintiffs seek certification of the California class as follows:

> All current and former California employees who Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after June 14, 2019, and recorded more than forty hours of work in a workweek or more than eight hours of work in a workday after receiving an RSU but before the RSU vested. This excludes those who signed an arbitration agreement.

Plaintiffs seek certification of the New York class as follows:

> All current and former New York employees who Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after August 11, 2017, and recorded more than forty hours of work in a workweek after receiving an RSU but before the RSU vested. This excludes those who signed an arbitration agreement.

## IV.    FACTUAL BACKGROUND

### A.    Plaintiffs and Putative Class Members Are All Employees Who Apple Classified as Non-Exempt/Overtime Eligible.

Like the classes they seek to certify, Costa and Hoffman worked, and McIlravy-Ackert

---

[1] The parties are conferring on the number of unique FLSA Plaintiffs. (Fisher Decl. ¶ 3.)

[2] Apple produced agreements for 3,435 persons, most of them during the past month. (*Id.* ¶ 4.)

[3] Plaintiffs made the proposed class definitions consistent with the definition approved by the Court for the FLSA collective and added language about excluding those with arbitration agreements. (*See* Order 4, Dkt. 112.) It is permissible to amend class definitions slightly. *See Kellman v. Spokeo, Inc.*, 2024 WL 2788418, at *10 (N.D. Cal. May 29, 2024).

currently works, as employees in jobs that Apple classified as non-exempt/overtime eligible. (*See* Def.'s Supp. Resp. Irrogs. (Set 2) 83, 118, 197, Ex. 4; Combined Decl. 4, 10, 12, Dkt. 78–2.) Apple employed Costa from approximately May/June 2015 to May 2022 in Orlando, Florida, and Newberry, Greenville, and Charleston, South Carolina. (Combined Decl. 4, Dkt. 78–2.) Costa held the position of At-Home AppleCare Advisor. (*Id.*) Apple employed Hoffman in Palm Desert, California from approximately September 2012 to October 2022. (*Id.* 10.) Hoffman held the positions of Genius and At-Home Senior Tech Advisor. (*Id.*) Apple employed McIlravy-Ackert as a Genius Administrator from approximately 2019 to present in various locations in New York and California, and as a Technical Expert from approximately 2013 to 2019 in various locations in New York and California. (*Id.* 12.)

> **B.    Plaintiffs and Putative Class Members All Received Apple RSUs That Were Subject to the Same Stock Plans and RSU Agreements.**

Since October 2015, all Apple employees are eligible to receive RSU awards. (Thomas Dep. 16:2-:6, 17:10–:13, 20:17–:20, Ex. 2; *see* Cook Email p. 1, Ex. 10.) RSU awards are a right to receive Apple stock for which employees pay nothing. (*See* What to Know p. 1, Ex. 8; Jenkinson Dep. 34:23–35:7; 55:20–56:23, 96:11–97:16, 99:2–:6, 113:10–114:1, Ex. 1; *see, e.g.*, Emails at 1223 ("An RSU is the right to receive a share of Apple common stock when the unit vests"), Ex. 11.) Apple explained, "every Apple employee is eligible for stock ownership though grants of Restricted Stock Units (RSUs) . . . . You don't buy these shares – they're awarded to you by Apple." (What to Know p. 1, Ex. 8.) As Apple's Chief Executive Officer, Tim Cook, described, Apple awards RSUs to employees "as an incentive to continue their important contributions to Apple." (Cook Email p. 1–2, Ex. 10; Jenkinson Dep. 11:10–:17, Ex. 1.) Since 2015, every October, Apple has granted RSUs to those it classifies as non-exempt/overtime eligible employees. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

Employees who receive a RSU share award do not own shares of Apple stock, rather they later receive Apple stock on the condition that they continue actively working for Apple after Apple awards the RSU and until the RSU vests (unless on an approved leave of absence). (*See* Thomas Dep. 28:20–30:20, 34:5–:12, 38:13–39:6, Ex. 2; Jenkinson Dep. 104:19–105:14, 145:6–146:18, Ex. 1; RSU Agmt. ¶ 4, Ex. 6.) The RSUs that Apple granted/awarded[4] its non-exempt/overtime eligible employees are subject to a three-year vesting period with one-third vesting each year. (Restricted Stock Units p. 2, Ex. 7; *see generally* Jenkinson Dep. 70:10–:23, 75:9–76:5, 144:17–145:22, Ex. 1.)[5] All RSU grants are a promise from Apple that the employee will own the shares of Apple stock after the employee fulfills the requirement of continued employment through the vesting dates. (*See* What to Know p. 1, Ex. 8; Jenkinson Dep. 46:8–:20, 66:9–:67:18, 98:20–:25, 145:6–146:18, Ex. 1.) As Apple explains, "RSU income is earned over the period from the grant date to the vest date . . . ." (Restricted Stock Units p. 3, Ex. 7.) Once RSUs vest, they become stock, and the employee owns them. (*See id.* p. 4; Jenkinson Dep. 104:2–:17, Ex. 1.) If an employee leaves employment before vesting, they lose the right to the unvested RSUs (except for death or long-term disability). (Jenkinson Dep. 94:15–:22, 99:8–:13, Ex. 1; What to Know p. 1, Ex. 8; RSU Agmt. ¶ 8, Ex. 6.) If an employee is on an unapproved leave of absence longer than 30 days, the vesting date extends from when the employee starts actively working hours again for Apple. (Restricted Stock Units p. 3, Ex. 7; Jenkinson Dep. 78:5–79:12, Ex. 1; RSU Agmt. ¶ 4, Ex. 6.)

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

1  ████████████████████████████████████████████████

2  ████████████████████████████████████    Once Apple approves the

3  suggested RSU grants, the Compensation Team sends employees an email congratulating them on

4  their "compensation" in the form of RSUs, and provides the grant date, current grant value, number

5  of RSUs awarded, and vesting commencement date. (*Id.* 23:21–24:15, 35:18–36:14; Jenkinson

6  Dep. 44:6–:16, 99:15–:19, 113:5–114:1, Ex. 1; What to Know p. 2, Ex. 8; *see, e.g.*, Emails, Ex.

7  11.)

8         Once Apple awards RSUs, those RSUs are subject to the terms and conditions of a common

9  Stock Plan and RSU Agreement. (Thomas Dep. 35:12–:17, Ex. 2; Jenkinson Dep. 30:14–34:6,

10 46:8–:15, 92:22–93:4, Ex. 1.) The same Stock Plan and RSU Agreement apply to all RSU awards,

11 subject to occasional revisions by Apple. (Thomas Dep. 35:12–:17; 45:9–:16, 46:4–:16, 54:12–

12 55:5, Ex. 2; Jenkinson Dep. 46:17–48:4, 58:21–60:5, Ex. 1; *see generally* Stock Plan, Ex. 5; RSU

13 Agmt., Ex. 6.) The RSU Agreement specifically states that it creates "a contractual obligation on

14 the part of the Company as to amounts payable . . . ." (*See, e.g.*, RSU Agmt. ¶ 18, Ex. 6.) Thus,

15 once Apple award the RSUs, employees have a contractual right to Apple stock if they continue

16 actively working for Apple until the RSUs vest and Apple has a contractual obligation to issue the

17 stock at vesting. (*See generally* RSU Agmt. ¶¶ 3–4, 7–8, 16–18, Ex. 6; Thomas Dep. 38:13–39:6,

18 Ex. 2; Jenkinson Dep. 82:8–:12, 109:17–110:3, Ex. 1.) The RSU Agreement provides that Apple

19 may only take back or recoup granted or vested RSUs under narrowly defined circumstances (e.g.,

20 a felony, breach of confidentiality, and theft/fraud/material breach of an agreement with Apple).

21 (*See* RSU Agmt. ¶ 9, Ex. 6; *see generally* Thomas Dep. 48:8–:18, Ex. 2.)

22         Apple calculates the value of RSUs at vesting based on the closing price of Apple stock on

23 the vesting date multiplied by the number of RSU shares it awarded (minus taxes). (RSUs and

24 Taxes p. 1, Ex. 9; *see* Jenkinson Dep. 37:5–:14, Ex. 1.) Dividends on the RSUs are also paid when

25 the RSUs vest. (What to Know p. 3, Ex. 8; Jenkinson Dep. 100:2–101:6, Ex. 1.)

26

27                                          5

28

1

### C.    Apple Did Not Include the Value of Vested RSUs in the Overtime Rate and Asserts the Same Reasons for its Omission for All Employees.

2

3    Apple concedes that it has a common policy for all employees of not including the value of

4    vested RSUs or their dividends in the regular rate for calculating overtime pay. (Jenkinson Dep.

5    20:19–:22, 122:2–:13, 124:7–:11, Ex. 1.) Apple asserts the same defense for all employees for

6    omitting it—that RSU remuneration is purportedly excludable from the regular rate under

7    potentially four of eight defined exclusions under the FLSA (which, as discussed *infra*, California

8    and New York law follow the FLSA). (*See* Def.'s 3d Supp. Resp. to Irrogs. (Set 1) p. 52, Ex. 3.)

9    Apple identifies sections 207(e)(1) (gifts, but amount cannot be measured or dependent on hours

10    worked), 207(e)(2) (payments for periods when no work is performed), 207(e)(3) (sums in

11    recognition of services performed during a period made at sole discretion of employer at or near

12    end of period and cannot be pursuant to any contract, agreement or promise), and 207(e)(8) (stock

13    options, stock appreciation rights, and bona fide employee stock purchase plan). (*See id.*; 29 U.S.C.

§§ 207(e)(1), (2), (3), (8).)

14    Apple's corporate representatives testified that Apple excluded RSUs from the regular rate

15    because they are granted at the discretion of the board. (Jenkinson Dep. 50:20–52:15, Ex. 1;

16    Thomas Dep. 42:2–43:16, Ex. 2.) However, Apple concedes that once it makes the decision to

17    award RSUs and then awards them, they are subject to the terms and conditions of the agreement.

18    (Thomas Dep. 42:2–43:16, Ex. 2; Jenkinson Dep. 58:11–:15, Ex. 1.) Apple also contends that

19    vested RSUs do not have to be included in the regular rate because they are not related to productive

20    work, however it does not dispute that employees have to actively work for Apple for a certain

21    length of time to actually receive the stock (unless on approved leave). (Jenkinson Dep. 52:16–

22    53:7, Ex. 1; Thomas Dep. 28:20–30:1, 42:23–43:16, Ex. 2.) Apple's corporate representative

23    testified that Apple is also relying on a stock option exclusion in the FLSA as well but was not

24    familiar with it to explain why. (Jenkinson Dep. 53:11–54:7, 57:22–58:7, Ex. 1.)

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

### D. Overtime Damages Will Be Calculated Using Apple's Data.

Overtime damages will be calculated using objective data Apple maintains for all employees, including payroll and time records, and RSU records reflecting number of shares, grant and vesting dates, and share value at vesting. (Fisher Decl. ¶ 6.)

## V.  LEGAL ARGUMENT

Rule 23(a) provides "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the class's interests." Fed. R. Civ. P. 23(a); *see Hilario v. Allstate Ins. Co*., 2024 WL 615567, at *2 (9th Cir. Feb. 14, 2024). In this case, the Rule 23 classes must also satisfy Rule 23(b)(3), which requires that common issues predominate over individualized issues and that a class action is the superior method for adjudicating the controversy. *See generally Hilario*, 2024 WL 615567, at *2. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citations omitted). However, "[t]he underlying merits of the case, while admittedly relevant at the class certification stage, should not overly cloud the Court's certification analysis—the only question presently before the Court is whether the requirements of Rule 23 are met." *Woods v. Vector Mktg. Corp*., 2015 WL 5188682, at *10 (N.D. Cal. Sept. 4, 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)).

### A. Plaintiffs Establish Numerosity.

Rule 23(a) requires that the class be "so numerous that joinder of all members individually is impracticable." "[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members." *See Hilario v. Allstate Ins. Co.*, 642 F. Supp. 3d 1048, 1059 (N.D. Cal. 2022), *aff'd*, 2024 WL 615567. Here, while Apple has not disclosed the precise

7

number of putative class members, the number of Plaintiffs who joined the FLSA collective, approximately 2,270 from California and 479 from New York, indicates that numerosity is met.

### B.    Plaintiffs Establish Commonality.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one where the same evidence will suffice for each member to make prima facie showing or the issue is susceptible to generalized, class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). This requirement looks not to the number of common questions, as even a single common question will do.  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 359 (2011). The thrust of the commonality requirement is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350 (citation and emphasis omitted). Plaintiffs' "claims must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Proof of an undisputed and uniform policy or practice is often sufficient to establish commonality and warrant class certification, particularly where the question is whether a pay formula adequately compensates employees. *See, e.g.*, *Taylor v. Fedex Freight, Inc.*, 2015 WL 2358248, at *6–7, 11 (E.D. Cal. May 15, 2015).

Plaintiffs challenge Apple's common and undisputed policy of not including the value of vested RSUs and related dividends in its employees' overtime pay rate. This issue is dispositive because if the Court finds that Apple meets its burden of showing that one of the regular rate exclusions applies, the case is over. If Apple cannot meet that burden, other common questions follow, such as whether Apple can prove that it acted in good faith to avoid liquidated damages for FLSA and New York class members, whether Apple's actions were willful or intentional under the FLSA and California law, the appropriate method of calculating damages under the law for all class members, and whether California class members prevail on their derivative claims. These common questions, and the common evidence that will be used for class wide proof, are discussed below.

8

### 1.     *Miscalculated Overtime Pay Under California and New York Law.*

As stated, the first common question is whether Apple's policy of miscalculating the regular rate violates California (Cal. Labor Code §§ 510, 1194, 1198, and Cal. Wage Order 4) and New York overtime law (12 NYCRR. §142–2.2 and NYLL, Art. 19, § 650). (*See* 3d Am. Compl. 17–18, 21–22, Dkt. 86.) California and New York require employers to pay overtime at a rate of no less than one and one-half times the regular rate of pay. Cal. Labor Code § 510; 12 NYCRR § 142-2.2. Both look to federal law, the FLSA, to determine what must be included in the regular rate. *See Chacon v. Express Fashion Operations LLC*, 2021 WL 4595772, at *10 (C.D. Cal. June 14, 2021); *Schroeder v. Envoy Air, Inc.*, 2017 WL 3835804, at *5 (C.D. Cal. Aug. 30, 2017); *see also Tackie v. Keff Enters. LLC*, 2014 WL 4626229, at *2 n.2 (S.D.N.Y. Sept. 16, 2014); *Sherald v. Embrace Techn., Inc.*, 2013 WL 126355, at *4 (S.D.N.Y. Jan. 10, 2023); N.Y.C.R.R. § 142-2.2. Like the FLSA, the "regular rate" under California and New York law includes "all remuneration for employment," subject to certain limited exclusions set forth in the FLSA. *See Ferra v. Loews Hollywood Hotel*, 11 Cal. 5th 858, 868 (Cal. 2021); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1129–30 (C.D. Cal. 2011); *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal App. 4th 893, 902–04 (Cal. Ct. App. 2005); *see also Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 331 (S.D.N.Y. 2012). Apple has the burden of proving that RSU remuneration qualifies under a permitted exclusion from the regular rate. *Dietrick v. Securitas Security Servs. USA, Inc.*, 50 F. Supp. 3d 1265, 1270 (N.D. Cal. 2014) (citing *Idaho Sheet Metal Workers, Inc. v. Wirtz*, 86 S. Ct. 737 (1996)); *see Carlino v. CHG Med. Staffing, Inc.*, 460 F. Supp. 3d 959, 964 (E.D. Cal 2020).

The Court is tasked with determining the dispositive issue of whether Apple can establish that RSU renumeration meets one or more of the eight permitted exclusions from the regular rate. Apple posits that RSU remuneration potentially meets up to four of them. (*See* Def.'s 3d Supp. Resp. to Irrogs. (Set 1) p. 52 (citing 29 U.S.C. §§ 207(e)(1), (2), (3), (8), Ex. 3.) This will be a legal question decided on common undisputed evidence about RSUs and Apple's RSU program.

1    More specifically, first Apple identifies section 207(e)(1), which provides exclusion from

2    the regular rate for certain *gifts*:

3
> Sums paid as gifts; payment in the nature of gifts made at Christmas time or on other
> special occasions, as a reward for service, the amount of which are not measured by
4    or dependent on hours worked, production, or efficiency.

5    Second, Apple identifies section 207(e)(2), which provides exclusion for payments when *no work*

6    *is performed, or for reimbursement*:

7
> payments made for occasional periods when no work is performed due to vacation,
8    holiday, illness, failure of the employer to provide sufficient work, or other similar
> cause; reasonable payments for traveling expenses, or other expenses, incurred by
9    an employee in the furtherance of his employer's interests and properly
> reimbursable by the employer; and other similar payments to an employee which
10    are not made as compensation for his hours of employment.

11    Third, Apple identifies section 207(e)(3) which excludes sums in *recognition of services*

12    *performed in a given period but only if the fact of payment and amount are determined at the sole*

13    *discretion of the employer at or near the end of the period and not pursuant to contract*:

14
> Sums[] paid in recognition of services performed during a given period if either,
15    (a) both the fact that payment is to be made and the amount of the payment are
> determined at the sole discretion of the employer at or near the end of the period
16    and not pursuant to any prior contract, agreement, or promise causing the employee
> to expect such payments regularly. . . .
17

18    For the first three asserted exclusions, the Court will decide the common question of whether RSUs

19    qualify, particularly considering the undisputed nature of RSUs—namely that once Apple awards

20    them, they are subject to a contract that requires, among other things, that the employee actively

21    continue working for Apple for one to three years until the shares vest (unless on an approved leave

22    of absence).

23    For Apple's fourth asserted exclusion, it points to section 207(e)(8), which allows exclusion

24    when certain requirements are met for three specific types of stock programs (not present here):

25    "*employer-provided grants or rights provided pursuant to a stock option, stock appreciation right,*

26    *and bona fide employee stock purchase program*. . . .", all of which share a common feature, that

27

28

10

they are not given to employees for free like Apple RSUs. Indeed, the statute provides that the stock's exercise price must be at least 85% of the fair market value at the time of grant. *See* 29 U.S.C. § 207(e)(8)(ii) (providing 85% requirement must be met for stock options and stock appreciation rights); 26 U.S.C. § 423 (b)(6) (tax code reflecting that employee stock purchase plans by nature have the 85% requirement). The Court will decide the common question of whether Apple can meet its burden of proving that RSUs, for which employees undisputedly pay nothing, qualify for this exclusion that says nothing about RSUs.

   If Plaintiffs prevail, damages will be calculated based on statute and systemically using objective payroll, time, and RSU data, all of which is in Apple's possession. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515–16 (9th Cir. 2013). While individualized damages calculations will not prevent certification, it is worth noting that there are several common questions that will be addressed related to how to calculate damages, that will be important to this case's resolution. *See generally id.* For example, the Court will determine how far back the calculations will go, as it is Plaintiffs' position that if a RSU vests in the statutory period, all overtime hours recorded between the RSU award and the date it vested are included in the calculation. *See generally Kellman*, 2024 WL 2788418, at *11 (explaining that what damages a statute provides is a common question of law); *Ray v. California Dept. of Social Services*, 2020 WL 5498060, at *4 (C.D. Cal. July 10, 2020) (holding that FLSA cause of action accrues when employer fails to pay required compensation for workweeks included on that paycheck). Another common question will be whether holiday premium pay, for which Apple is seeking an offset pursuant to section 207(h), can be used to reduce overall damages awarded, or just overtime damages within the same week as the holiday premium payment. *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1260 (9th Cir. 2014) (holding offset must be calculated week-by-week and not cumulatively); (*see* Def.'s 3d Supp. Resp. Irrogs. (Set 1) p. 50 (citing 29 U.S.C. § 207(h), Ex. 3). Further, whether the Court should award liquidated (double damages), which are mandated unless the employer demonstrates good faith, is a common damages question for New York class members and the FLSA collective. *See* NYLL § 663(1); 29 U.S.C. §

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

216(b). Plus, a Court determination on whether Apple acted willfully, or with knowing and international behavior, relates not only to the FLSA statute of limitations but also the California wage statement claims and waiting time penalties and will be based on common evidence of why Apple omitted RSUs from the regular rate for all employees. *See* 29 U.S.C. § 255; Cal. Labor Code § 203(a); Cal. Labor Code § 226(e)(1).

Additionally, Plaintiffs will seek to have the Court dispose of several of Appple's forty-one asserted defenses (*see* Ans., Dkt. 92), which are common legal questions that will streamline litigation. *See, e.g.*, *Vasquez v. Leprino Foods Co.*, 2021 WL 1737480, at *4–6 (E.D. Cal. May 3, 2021) (striking defenses of failure to state a claim, estoppel, waiver, and reservation of rights); *Moreno v. Pretium Packaging, L.L.C.*, 2020 WL 4333353, at *4–5 (C.D. Cal. July 17, 2020 (striking unclean hands, failure to mitigate, failure to provide adequate PAGA notice, excessive fines/penalties); *Rendon v. Infinity Fasteners, Inc.*, 2022 WL 17634480, at *4–7 (E.D. Cal. Dec. 13, 2022) (striking lack of PAGA standing, failure to satisfy PAGA prerequisites); *Horton v. NeoStrata Co.*, 2017 WL 2721977, at *11 (S.D. Cal June 22, 2017) (striking lack of PAGA standing and excessive penalties defense). While one common question may be sufficient if it is apt to drive the resolution of the litigation, here there are several questions of law and fact that are common to the class and susceptible to common proof, making class certification appropriate. *See generally Dukes*, 131 S. Ct. at 2551; *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (explaining that what matters is the capacity of a classwide proceeding to generate common answers apt to drive resolution).

California courts routinely find commonality and grant Rule 23 certification in regular rate cases. *See, e.g.*, *Kincaid v. Educ. Credit Mgmt. Corp., Inc.*, 2024 WL 1344595, at *4 (E.D. Cal. Mar. 29, 2024) (employer did not include bonuses); *Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*, 2023 WL 8458247, at *21 (S.D. Cal. Dec. 6, 2023) (employer calculated regular rate incorrectly); *Carlino v. CHG Med. Staffing, Inc.*, 634 F. Supp. 3d 895, 905–06 (E.D. Cal. 2022) (refusing to decertify where employer failed to include value of certain benefits); *Santillan v.*

*Verizon Connect, Inc.*, 2022 WL 4596574, at *14–16 (S.D. Cal. June 13, 2022) (employer omitted bonuses it claimed were discretionary); *Chacon*, 2021 WL 4595772, at *9–10 (employer excluded bonuses); *Hubbard v. RCM Techs. (USA), Inc.*, 2020 WL 6149694, at *2 (N.D. Cal. Oct. 20, 2020) (employer did not include per diems); *Evans v. Wal-Mart Stores, Inc.*, 2019 WL 7169791, at *6–8 (C.D. Cal. Nov. 5, 2019) (employer excluded bonus); *Howell v. Advantage RN, LLC*, 2018 WL 3437123, at *8–9 (S.D. Cal. July 17, 2018) (employer excluded per diems and bonuses guaranteed by contract); *Dalchau v. Fastaff, LLC*, 2018 WL 1709925, at *7 (N.D. Cal. Apr. 9, 2018) (employer omitted housing benefits); *Magadia v. Wal-Mart Associates, Inc.*, 324 F.R.D. 213, 220–27 (N.D. Cal. 2018) (employer excluded bonus and meal premiums); *Snipes v. Dollar Tree Distrib., Inc.*, 2017 WL 5754894, at *1–6 (E.D. Cal. Nov. 28, 2017) (employer excluded non-discretionary bonus); *Clarke v. AMN Servs., LLC*, 2017 WL 6942755, at *2–5 (C.D. Cal. Oct. 12, 2017) (employer excluded per diems); *Schroeder*, 2017 WL 3835804, at *5–6 (explaining bonuses contingent on continued employment must be included in regular rate and granting certification); *Culley v. Lincare Inc.*, 2016 WL 4208567, at *6–7 (E.D. Cal. Aug. 10, 2016) (employer excluded bonuses); *Escano v. Kindred Healthcare Operating Co., Inc.*, 2013 WL 816146, at *6–7 (C.D. Cal. Mar. 5, 2013) (employer excluded bonuses and missed meal periods); *Ruiz v. JCP Logistics Inc.*, 2015 WL 12696114, at *3–7 (C.D. Cal. June 16, 2015) (employer failed to include bonus properly); *Provine v. Office Depot, Inc.*, 2012 WL 2711085, at *3, 12 (N.D. Cal. July 6, 2012) (employer did not include bonus); *Chavez v. Lumber Liquidators, Inc.*, 2012 WL 1004850, at *6–7 (N.D. Cal. Mar. 26, 2012) (employer excluded bonuses).

### 2.    *Derivative Claims Under California Law.*

Apple's failure to include the value of vested RSUs (and related dividends) in the overtime rate also is the factual predicate for derivative claims under California law for waiting time penalties (Cal. Labor Code §§ 201–203), inaccurate itemized wage statements (Cal. Labor Code § 226), and

Unfair Competition (UCL) violations (Cal. Business and Professional Code § 17200).[6] (*See* 3d Am. Compl. 18–23, Dkt. 86.)

More specifically, with respect to waiting time penalties, an employer must pay all wages due at termination or within 72 hours of an employee's discharge or resignation. Cal. Lab. Code §§ 201, 203. Employers who willfully fail to do so are subject to penalties. Cal. Lab. Code § 203. To the extent that Apple is liable for not paying class members accurate overtime pay, it will also be liable for waiting time penalties, as that claim is derivative of the overtime claim. *See Deluca v. Farmers Ins. Exchange*, 2018 WL 1981393, at *11 (N.D. Cal. Feb. 27, 2018).

California law also requires employers to provide itemized wage statements including, among other things, the rate(s) of pay for work time. Cal. Lab. Code § 226(a)(9). An employee is deemed to suffer injury if an employer fails to provide "accurate and complete information" as required. Cal. Lab. Code § 226(e)(2)(B)(i). Here, Plaintiffs will establish their injury through common proof—namely, because Apple's wage statements uniformly reflect the wrong overtime rate, Apple did not accurately report that information. Thus, common questions will be addressed in class-wide adjudication of this claim. *See Clemens v. Hair Club for Men, LLC*, 2016 WL 1461944, at *8 (N.D. Cal. Apr. 14, 2016); *see also Deluca*, 2018 WL 1981393, at *11.

California's UCL provides a remedy for restitution caused by alleged unfair business practices and is subject to a four-year statute of limitations. Cal. Bus. & Prof. Code §§ 17200, 17208. Liability for failure to pay wages under California law gives rise to liability under the UCL. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011). The Court should certify Plaintiffs' UCL claims.[7] *See generally Cabrales*, 2023 WL 8458247, at *21–22 (certifying derivative claims for

---

[6] These alleged violations also give rise to PAGA claims, which are not subject to Rule 23 class certification. *See generally Estrada v. Royalty Carpet Mills, Inc.*, 541 P.3d 466, 474, 478–79 (2024).

[7] The other California claims have shorter statutes of limitations (from one to three years); thus Court should define the California class based on the longest potential statutory period, which is four years under the UCL. *See Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173–78 (2000) (holding that employees may seek restitution related to unlawfully withheld wages under the UCL and a four year statute of limitations applies); *see generally Sousa v. Walmart, Inc.*, 2023 WL 1785960, at *8 (E.D. Cal. Feb. 6, 2023) (finding unpaid wages are recoverable under the UCL

14

waiting time, wage statements, and unlawful business practices); *Santillan*, 2022 WL 4596574, at *16 (same); *Chacon*, 2021 WL 4595772, at *9–11 (certifying regular rate and derivative claims); *Hubbard*, 2020 WL 6149694, at *2 (same); *Dalchau*, 2018 WL 1709925, at *8–9 (certifying waiting time penalties and UCL claims).

### C.    Plaintiffs Are Typical and Adequate.

Rule 23 requires that the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts assess typicality by determining whether class representatives and the putative class "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hubbard*, 2020 WL 6149694, at *2 (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012)). Class representatives must also be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 131 S. Ct. 2541. The Ninth Circuit has "consistently held that Rule 23(a)'s typicality and adequacy requirements present relatively 'permissive standards' that do not pose a particularly high bar to class certification." *Woods*, 2015 WL 5188682, at *12 (citations omitted).

Here, the crux of the class representatives' claims is based on the exact same conduct that gives rise to the injury they and all other class members experienced—namely, Apple's failure to calculate their overtime pay rate correctly caused them unpaid overtime damages. Indeed, Apple

---

as restitution); *Louis v. Newtek Business Service Corp.*, 2022 WL 4596694, at *7 (C.D. Cal. July 29, 2022) (same); *Hall v. Cultural Care USA*, 2022 WL 2905353, at *5 (N.D. Cal. July 22, 2023) (explaining that "when an individual has a vested right to wages that she has earned, that is a property right") (citing *Cortez*, 23 Cal. 4th at 168); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 612 (N.D. Cal. May 2, 2022) (finding employees can bring UCL claims for restitution of unpaid wages).

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

concedes that its policy is to exclude RSU remuneration from all employees' overtime pay rate. There are no conflicts between the class representatives and the class as their interests align—they are asserting the same claims, under the same policy, and were all injured the same way. The class representatives also demonstrated adequacy and commitment by actively participating in the case, responding to written discovery, and sitting for their depositions. (Fisher Decl. ¶ 9.)

The Court should appoint Nichols Kaster and Shavitz Law Group, P.A. class counsel pursuant to Fed. R. Civ. P. 23(g), because they do not have conflicts, are experienced wage and hour litigators, and have demonstrated vigorous advocacy. For example, Nichols Kaster, PLLP and its attorneys here, Michele Fisher and Daniel Brome, are experienced wage and hour class and collective action litigators and have no conflicts. (*See* Fisher Decl. ¶ 7; Nichols Kaster, PLLP Firm Resume, Ex. 12.) Several courts have found the same and appointed them class counsel. *See, e.g.*, *Bowlay-Williams v. Google LLC*, Order, No. 4:21-cv-09942-PJH (N.D. Cal. Aug. 8, 2023) (recognizing skill of class counsel in restricted stock unit overtime case), Ex. 13; *Warsame v. Metro. Transp. Network, Inc.*, Order, No. 0:20-cv-01318 (D. Minn. Oct. 13, 2021), Ex. 14; *Borowske v. FirstService Residential Minnesota, Inc.*, Order, No. 0:20-cv-01564 (D. Minn. May 11, 2021), Ex. 15; *Abdul-Ahad v. Associated Courier Inc.*, Order, No. 0:20-cv-00607 (D. Minn. Mar. 26, 2021), Ex. 16; *Gardner v. Lancer Food Holdings, LLC*, Order, No. 20-cv-00493 (D. Minn. Sept. 18, 2020), Ex. 17; *Warfa v. Nationwide Express, LLC & Amazon Logistics, Inc.*, Order, No. 0:18-cv-03103 (D. Minn. Sept. 27, 2019), Ex. 18; *Vongkhamchanh v. All Temps. Midwest, Inc.*, Order, No. 17-cv-00976 (D. Minn. Jan. 26, 2018), Ex. 19; *Allen v. All Temporaries, Inc.*, Order, No. 16-cv-04409 (D. Minn. Nov. 8, 2017), Ex. 20; *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 2257130, at *8 (E.D. Cal. May 23, 2017); *Westfield v. Washington Mut. Bank*, 2009 WL 6490084, at *3 (E.D.N.Y. Jun 26, 2009) (citing other cases); *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 677 (D. Kan. 2008); *Harlow v. Sprint Nextel Corp.*, 254 F.R.D. 418, 425 (D. Kan. 2008).

Similarly, Shavitz Law Group has been appointed lead counsel in numerous wage and hour cases and has no conflict. (*See* Donnell Decl. ¶ 2); *see e.g.*, *Puglisi v. TD Bank, N.A.*, 2015 WL

16

574280, at \*3–4 (E.D.N.Y. Feb. 9, 2015) (collecting cases); *Zeltser v. Merrill Lynch & Co.*, 2014 WL 2111693, at \*3–4 (S.D.N.Y. May 12, 2014); *Palacio v. E\*TRADE Fin. Corp*., 2012 WL 1058409, at \*2 (S.D.N.Y. Mar. 12, 2012) (collecting cases); *Hernandez v. Merrill Lynch & Co*., 2012 WL 5862749, at \*3–4 (S.D.N.Y. Nov. 15, 2012).

### D.    Rule 23(b)(3)'s Predominance and Superiority Requirements are Met.

#### 1.    Common Issues Predominate Over Individualized Issues.

"Predominance under Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Dalchau*, 2018 WL 1709925, at \*10 (citing *Amchem Products, Inc. v. Windsor,* 117 S. Ct. 2231, 2236 (1997)). "[C]ommon questions must predominate over any questions affecting only individual members. *Id.* (citing *Hanlon*, 150 F.3d at 1022). As this Court explained, to predominate, Plaintiffs "must show that the common question relates to a central issue in the plaintiffs' claim." *Kellman v*, 2024 WL 2788418, at \*8 (citations omitted). The Ninth Circuit articulated that the predominance inquiry " 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Lytle v. Nutramax Labs., Inc.*, 2024 WL 1710663, at \*4 (9th Cir. Apr. 22, 2024) (citing *Tyson Foods*, 136 S. Ct. 1036)). The court must evaluate "'the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove' the common questions in one stroke." *Id.* (citations omitted, brackets in original).

Plaintiffs have made that showing. Plaintiffs assert that Apple denied them and the class accurate overtime pay under California and New York law because it undisputedly had a class wide policy of not including RSU remuneration in the regular rate. Plaintiffs also assert derivative claims under California law. Plaintiffs contend that RSU renumeration cannot meet the gift, discretionary bonus, or sums for no work performed exclusions based on common, and not individualized evidence—namely that it is undisputed that once Apple makes the RSU share awards, they are subject to a contract that requires continued active employment to vest. Similarly, whether RSUs qualify for the stock exclusion is a predominant legal issue that turns on the same common question

_____
PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

for everyone—do Apple RSUs meet the requirements of the stock exclusion? Despite Plaintiffs' optimism that Apple cannot prove that any of the exclusions apply, notably Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen,* 133 S. Ct. at 1191 (emphasis in original).

Furthermore, the common legal issue of whether RSU remuneration must be included in the regular rate predominates over any differences in damages Plaintiffs may have and over Apple's affirmative defenses. *See Tyson Foods,* 136 S. Ct. at 1043 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses particular to some individual class members.'") (citation omitted)); *see also Huntsman v. Southwest Airlines Co.*, 2021 WL 391300, at *11 (N.D. Cal. Feb. 3, 2021) (finding that as long as a defendant can assert individualized defenses at a later stage, the mere existence of such a defense does not defeat certification); *Culley*, 2016 WL 4208567, at *7 (rejecting that affirmative defenses raised individual questions in regular rate case); *Ruiz v. XPO Last Mile, Inc.*, 2016 WL 4515859, at *11 (S.D. Cal. Feb. 1, 2016) (explaining when granting certification that it is only if certain claims fail that potential individualized defenses might arise); *Rodman v. Safeway Inc.*, 2015 WL 2265972, at *3 (N.D. Cal. May 14, 2015) (explaining that courts are reluctant to deny certification simply because affirmative defenses may be available against some members); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167–68 (9th Cir. 2014) (explaining in wage/hour action that individualized damages questions alone cannot defeat certification). Moreover, as previously explained, several of Apple's asserted defenses require common legal determinations for the class.

Here, the common dispositive issue of whether Apple can prove that omitting RSU remuneration from the overtime pay rate is permitted by California and New York law is sufficiently cohesive, as the legal issue is identical for everyone and is based on common evidence. *Amchem*, 521 U.S. at 623. The identical nature of this common issue establishes predominance. As

18

previously stated, numerous courts have granted Rule 23 certification for classes alleging that an employer failed to include all required renumeration when calculating overtime pay and the Court should do the same here.

### 2.    *A Class Action is Superior to Thousands of Individual Actions.*

Pursuant to Rule 23(b)(3) class certification is appropriate where class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Factors to be considered include: (1) class members' interest in individually controlling the litigation; (2) the extent and nature of the litigation; (3) the desirability of concentrating the claims in one suit; and (4) the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A)–(D); *Leyva*, 716 F.3d at 514.

As with the predominance analysis, the fact that class members' claims are identical supports the superiority requirement. *Dalchau*, 2018 WL 1709925, at *11; *Provine*, 2012 WL 2711085, at *12. Here, none of the countervailing considerations in Rule 23(b)(3)(A) are present. If the Court does not certify the California and New York classes, Apple faces thousands of separate lawsuits over the same claim, which is antithetical to the purpose of Rule 23.

### E.    The Proposed Notice is Fair, Accurate, and Informative.

The proposed Rule 23 notices should be approved for distribution by mail and email. (Notices, Exs. 21–22.) The notice is modeled after the Federal Judicial Center's sample class notice.

## VI.    CONCLUSION

Like numerous other regular rate cases, this case is amenable to class treatment. For the reasons discussed above, Plaintiffs respectfully request that the Court (1) grant their motion and certify the California and New York classes; (2) approve the form of class notice; and (3) order that within 14 days Apple produce to Plaintiffs' Counsel and the administrator two separate lists (one for the California class and one for the New York class) with class members' name, unique

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

employee identifier used during their employment,[8] address, phone number, and last known email address.

Date: 8/29/24                              *s/Michele R. Fisher*

---

[8] This is needed considering people with duplicate names and to eventually match employees to the correct datasets for damages calculations. (Fisher Decl. ¶ 8.)

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO