GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
    TBoutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
    TEvangelis@gibsondunn.com
CYNTHIA CHEN MCTERNAN, SBN 309515
    CMcTernan@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

GIBSON, DUNN & CRUTCHER LLP
MEGAN COONEY, SBN 295174
    MCooney@gibsondunn.com
3161 Michelson Drive
Irvine, California 92612-4412
Telephone:    949.451.3800
Facsimile:    949.451.4220

*Attorneys for Defendant Apple Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCIS COSTA, AMANDA HOFFMAN, and OLIVIA MCILRAVY-ACKERT, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 3:23-cv-01353-WHO<br><br>**DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:    November 13, 2024<br>Time:    2:00 p.m.<br>Place:   In-Person Hearing Requested<br>Judge:  Hon. William H. Orrick |

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 3

      A.    Apple's Discretionary RSU Program ........................................................ 3

      B.    Procedural Posture ................................................................................... 8

III.  LEGAL STANDARD ............................................................................................. 8

IV.   ARGUMENT .......................................................................................................... 9

      A.    Individualized Issues Prevent a Finding of Commonality or Predominance ............... 9

            1.    Whether Plaintiffs Are Entitled to Overtime at All Turns on Individualized Analysis of Their Job Responsibilities.................................. 10

            2.    Plaintiffs' Claim That RSUs Must Be Included in Overtime Pay Turns on Individualized Evidence ............................................. 15

            3.    Apple's Defenses Cannot Be Resolved by Common Proof ............................ 18

      B.    Plaintiffs' Failure to Produce a Damages Model Precludes a Finding of Predominance or Superiority.................................................... 20

      C.    The Named Plaintiffs' Claims and Defenses Are Not Typical of the Class .............. 22

      D.    The Named Plaintiffs Are Not Adequate Class Representatives ................................ 24

V.    CONCLUSION...................................................................................................... 25

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

5     *A.B. v. Hawaii State Dep't of Educ.*,
        30 F.4th 828 (9th Cir. 2022) .................................................................................9

6     *Am. Exp. Co. v. Italian Colors Rest.*,
        570 U.S. 228 (2013) ..........................................................................................8

7

8     *Amchem Prods., Inc. v. Windsor*,
        521 U.S. 591 (1997) ....................................................................................9, 20

9     *Avilez v. Pinkerton Gov't Servs., Inc.*,
        596 F. App'x 579 (9th Cir. 2015) ......................................................................22

10

11    *Bodner v. Oreck Direct, LLC*,
        2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ...................................................24

12    *Brown v. Am. Airlines, Inc.*,
        285 F.R.D. 546 (C.D. Cal. 2011) .......................................................................22

13

14    *Campbell v. PricewaterhouseCoopers, LLP*,
        253 F.R.D. 586 (E.D. Cal. 2008) .......................................................................11

15    *Comcast Corp. v. Behrend*,
        569 U.S. 27 (2013) ..............................................................................2, 9, 20, 22

16

17    *Culley v. Lincare Inc.*,
        2017 WL 3284800 (E.D. Cal. Aug. 2, 2017) ....................................2, 15, 16, 18

18    *Dawsom v. Hertz Trans. Inc.*,
        2018 WL 6112623 (C.D. Cal. Nov. 5, 2018) .....................................................20

19

20    *Falco v. Nissan N. Am, Inc.*,
        2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) .....................................................20

21    *Gomez v. J. Jacobo Farm Lab. Contractor*,
        334 F.R.D. 234 (E.D. Cal. 2019) .......................................................................10

22

23    *Grosz v. Boeing Co.*,
        136 F. App'x 960 (9th Cir. 2005) ......................................................................11

24    *Hanon v. Dataproducts Corp.*,
        976 F.2d 497 (9th Cir. 1992).............................................................................22

25

26    *Hartstein v. Hyatt Corp.*,
        82 F.4th 825 (9th Cir. 2023) .............................................................................17

27    *Harvey v. Maximum Inc.*,
        2016 WL 7256797 (D. Idaho Dec. 15, 2016) ...................................................23

28

ii

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

# TABLE OF AUTHORITIES
(continued)

**Page**

*Herskowitz v. Apple, Inc.*,
    301 F.R.D. 460 (N.D. Cal. 2014)................................................................................19

*Horton v. NeoStrata Co.*,
    2017 WL 2721977 (S.D. Cal June 22, 2017)............................................................19

*Hunter v. Okun*,
    2011 WL 13243583 (N.D. Cal. July 12, 2011)...........................................................1

*IntegrityMessageBoards.com v. Facebook, Inc.*,
    2021 WL 3771785 (N.D. Cal. Aug. 24, 2021).......................................................3, 25

*Javine v. San Luis Ambulance Serv., Inc.*,
    2015 WL 12672090 (C.D. Cal. Jan. 13, 2015) ..........................................................23

*Jimenez v. Domino's Pizza, Inc.*,
    238 F.R.D. 241 (C.D. Cal. 2006) ..............................................................................11

*Lytle v. Nutramax Labs., Inc.*,
    --- F.4th ---, 2024 WL 3915361 (9th Cir. Aug. 23, 2024) ........................................20

*McCarty v. SMG Holdings I, LLC*,
    2022 WL 913092 (N.D. Cal. Mar. 29, 2022) ............................................................20

*McPhail v. First Command Fin. Planning, Inc.*,
    247 F.R.D. 598 (S.D. Cal. 2007)...............................................................................25

*Miles v. Kirkland's Stores Inc.*,
    89 F.4th 1217 (9th Cir. 2024) ................................................................9, 10, 19, 22

*Miska v. Engineering Automation & Design, Inc.*,
    2022 WL 3211745 (E.D. Cal. Aug. 9, 2022) ............................................................23

*Mobile Emergency Hous. Corp. v. HP, Inc.*,
    2023 WL 9550942 (N.D. Cal. Dec. 8, 2023) ........................................................2, 22

*Moreno v. Pretium Packaging, LLC*,
    2020 WL 4333353 (C.D. Cal. July 17, 2020) ...........................................................19

*Navarro v. ExxonMobil Corp.*,
    2022 WL 22248790 (N.D. Cal. July 5, 2022) .......................................................24, 25

*O'Connor v. Uber Techs. Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016), *rev'd on other grounds* 904 F.3d 1087 (9th
    Cir. 2018) ...................................................................................................................23

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) .................................................................................9, 22

iii

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

**Page**

*Ortiz v. Amazon.com LLC,*
2022 WL 1598968 (N. D. Cal. May 20, 2022) ...................................................15

*Parsons v. Ryan,*
754 F.3d 657 (9th Cir. 2014).................................................................................9

*Perez v. Wells Fargo & Co.,*
2015 WL 10558841 (N.D. Cal. Nov. 24, 2015)..................................................11

*Perry v. U.S. Bank,*
2001 WL 34920473 (N.D. Cal. Oct. 16, 2001)...................................................11

*Rendon v. Infinity Fasteners, Inc.,*
2022 WL 17634480 (E.D. Cal. Dec. 13, 2022) ..................................................19

*Ridgeway v. Phillips,*
383 F. Supp. 3d 938 (N.D. Cal. 2019) ..................................................................8

*Robbins v. Phillips 66 Co.,*
343 F.R.D. 126 (N.D. Cal. 2022).......................................................................22

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.,*
136 F.R.D. 658 (D. Or. 1991) .......................................................................23, 24

*Ruiz Torres v. Mercer Canyons Inc.,*
835 F. 3d 1125 (9th Cir. 2016)..............................................................................9

*San Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.,*
2019 WL 6493978 (N.D. Cal. Dec. 3, 2019)......................................................25

*Siino v. Foresters Life Ins. & Annuity Co.,*
340 F.R.D. 157 (N.D. Cal. 2022)...................................................................2, 20

*Smith v. Ceva Logistics U.S., Inc.,*
2011 WL 3204682 (C.D. Cal. July 25, 2021).....................................................22

*Vasquez v. Leprino Foods Co.,*
2021 WL 1737480 (E.D. Cal. May 3, 2021).......................................................19

*Vega v. K & C, Interior Constr. Corp.,*
2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018) ...................................................17

*Vinole v. Countrywide Home Loans, Inc.,*
571 F.3d 935 (9th Cir. 2009).............................................................................11

*Vire v. Entergy Operations, Inc.,*
2016 WL 10575139 (E.D. Ark. Oct. 31, 2016) ..................................................16

iv

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

4    *Wal-Mart Stores, Inc. v. Dukes*,
         564 U.S. 338 (2011) ................................................................................................9, 20

5

     *In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
6         571 F.3d 953 (9th Cir. 2009) ........................................................................................11

7    *Weston v. Cal. Dep't of Corr. & Rehabilitation*,
         2022 WL 17093922 (E.D. Cal. Nov. 21, 2022) .........................................................23

8
     *White v. Symetra Assigned Benefits Serv. Co.*,
9         104 F.4th 1182 (9th Cir. 2024) .....................................................................................12

10                                       **Statutes**

11    29 U.S.C. § 207(e)(1) ..........................................................................................................17

12    29 U.S.C. § 207(h) ..............................................................................................................22

13    Cal. Lab. Code § 515.5 ........................................................................................................13

14    Cal. Lab. Code § 515.5(a) ....................................................................................................12

15                                         **Rules**

16    Fed. R. Civ. P. 12(f) ............................................................................................................19

17    Fed. R. Civ. P. 23(a)(3) .......................................................................................................22

18    Fed. R. Civ. P. 23(b)(3) .........................................................................................................9

19                                      **Regulations**

20    29 C.F.R. § 541.400 .......................................................................................................12, 13

21    12 NYCRR § 142-2.2 ..........................................................................................................12

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

# I.    INTRODUCTION

Plaintiffs seek to certify two sweeping classes comprised of tens of thousands of current and former Apple employees based on an oversimplified and erroneous view of the facts and law. According to Plaintiffs, because restricted stock units ("RSUs") are allegedly "compensation," Apple must include them in calculating overtime pay.  But while Plaintiffs try to paint this case as a straightforward regular rate of pay action, nothing could be further from the truth.  This is a novel lawsuit raising a theory of liability that has never been litigated before.  Plaintiffs' claim, and Apple's defenses, are complex and involve myriad individualized issues that preclude any classwide resolution—including whether RSUs are discretionary awards or compensation for work or performance, whether employees were entitled to overtime pay, and whether employees waived their right to participate in class litigation or raise claims against Apple.  Moreover, even if Plaintiffs could establish liability for the entire class despite these individualized issues (they cannot), no viable damages model exists.  This is unsurprising given that determining damages would be a complex, individualized, and entirely unmanageable endeavor.  Given these realities, this is not the type of dispute that can be resolved on a classwide basis and the Court should deny class certification.

As the party seeking class certification, Plaintiffs bear the burden to show both that they satisfy all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)'s requirement that common issues predominate over individual ones and that class adjudication is the superior method to fairly and efficiently resolve their claims.  Plaintiffs fail to satisfy any of these requirements.

***First***, Plaintiffs cannot satisfy either Rule 23(a)'s commonality requirement or Rule 23(b)'s even more demanding predominance requirement because of the overwhelming number of individualized issues on key liability questions.  Common issues do not predominate if satisfying at least one element of a claim "will require individualized proof specific to each class member." *Hunter v. Okun*, 2011 WL 13243583, at *4 (N.D. Cal. July 12, 2011).  That's exactly what will be required here.  For example, the Court will need to individually analyze the job responsibilities of hundreds of putative class members to determine whether they are even entitled to overtime pay or instead are

exempt from overtime requirements.  The Court will also need to determine what individual class members understood to be the purpose of the RSUs they received, which is critical to establishing liability under Plaintiffs' theory.  *See Culley v. Lincare Inc.*, 2017 WL 3284800, at *5 (E.D. Cal. Aug. 2, 2017) (court would need to consider "each class member's understanding" of wage type when assessing whether it must be included in regular rate of pay).  Several of Apple's other affirmative defenses—including whether a putative class member has released their claims—can be resolved only through individualized inquiries.  Common issues do not predominate here.

*Second*, Plaintiffs have not even tried to present any damages model, in contravention of *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  *See also Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 164 (N.D. Cal. 2022) ("[A]lthough the existence of individualized damages and any attendant difficulty calculating them cannot defeat certification, the absence of a methodology for calculating damages on a classwide basis can.").  Instead of a damages model, Plaintiffs in conclusory fashion say damages can be proven with "objective data," grossly oversimplifying the steps necessary to measure damages in this case.  In reality, the damages calculation will be impracticably complicated and therefore unmanageable—another strike against Plaintiffs' contention that a class action is the superior method to fairly and efficiently adjudicate their claims, as required by Rule 23(b)(3).

*Third*, the dissonance between defenses applicable to the named Plaintiffs and to the rest of the class defeats typicality.  Apple already remunerated the named Plaintiffs for purportedly inaccurate wage statements through a prior settlement.  Apple can therefore argue that named Plaintiffs cannot claim injury as to those wage statements.  But that defense does not apply to the class as a whole.  Conversely, numerous putative class members—but not the named Plaintiffs—are subject to binding waivers of the right to pursue their claims in this forum.  "Where a defendant may raise a particular defense against the claims of the members of the putative class, but not against the claims of the named plaintiffs, no typicality exists."  *Mobile Emergency Hous. Corp. v. HP, Inc.*, 2023 WL 9550942, at *5 (N.D. Cal. Dec. 8, 2023).  The existence of these unique defenses prevents a finding of typicality and is another reason why Rule 23(a) is not satisfied here.

*Fourth*, the named Plaintiffs are inadequate class representatives.  Neither Amanda Hoffman

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

nor Olivia McIlravy-Ackert independently sought legal representation; rather, they were recruited to join a lawsuit that Plaintiffs' counsel had already decided to pursue.  *See* Declaration of Megan Cooney (Cooney Decl.) Ex. 1 (COSTA0001320) at COSTA0001321; *id.*, Ex. 2 (Hoffman Dep. Tr.) at 92:8–14.  Moreover, Hoffman has admitted that she is not "paying attention" to the lawsuit, "do[es]n't have time" for the lawsuit, and has "cut ties" with some of the Apple employees she seeks to represent.  *Id.*, Ex. 2 (Hoffman Dep. Tr.) at 125:8–16, 177:5–8.  The named Plaintiffs clearly are "not sufficiently engaged in monitoring th[e] action."  *IntegrityMessageBoards.com v. Facebook, Inc.*, 2021 WL 3771785, at *9 (N.D. Cal. Aug. 24, 2021).  What's more, Hoffman's testimony confirms that she does not understand the basis of her claims—she believes that she should have received cash instead of being granted an RSU award, not that the value of the vested shares received from those awards should have been included in her overtime pay.  Cooney Decl., Ex. 2 (Hoffman Dep. Tr.) at 154:21–24.  This is an independent reason why Rule 23(a) is not satisfied.

The Court should find that Plaintiffs satisfy neither Rule 23(a) nor Rule 23(b) and deny class certification.

## II.    BACKGROUND

### A.    Apple's Discretionary RSU Program

Apple is one of the world's leading developers of digital communications and media devices.  Dkt. 92 ¶ 15.  To manufacture, market, and sell the well-loved iPhone, iPad, MacBook, and iMac devices, Apple employs thousands across the United States—from Apple's corporate headquarters in Cupertino, California, to its traditional retail stores nationwide—in many different roles.  *See* Declaration of Joe Thomas Jr. (Thomas Decl.) ¶ 3.  Apple works hard to create a culture where everyone is empowered to do their best work, and believes that all employees should have the unique opportunity to share in the company's success.  *See* Cooney Decl., Ex. 3 (RSU Grant Email) at APLCOSTA00442368.  Apple believes in investing in its people and, in addition to highly competitive base pay, industry-leading benefits, training and development opportunities and discounts on Apple products and services, Apple was among the first companies in the U.S. to make all employees eligible to become shareholders through its discretionary stock programs.  *See* Cooney Decl., Ex. 4 (2022

Employee Stock Plan) at APLCOSTA00000069; *id.*, Ex. 5 (2014 Employee Stock Plan) at APLCOSTA00000047; *id.*, Ex. 6 (Jenkinson 30(b)(6) Dep. Tr.) at 70:10–23. Apple has thus exercised its discretion to award RSUs to groups of non-exempt employees because Apple believes that, similar to stock options, RSUs give employees "the opportunity to share in [the] long-term success [of the Company] by acquiring a proprietary interest in the Company," will "promote the long-term success of the Company," and "creat[e] shareholder value." Cooney Decl., Ex. 4 (2022 Employee Stock Plan) at APLCOSTA00000061; *id.*, Ex. 5 (2014 Employee Stock Plan) at APLCOSTA00000040.

An RSU is a type of equity award which grants an employee an unsecured future right to one share of Apple stock on a specific date (called a "vesting date") provided the conditions of the agreement are met. *See* Cooney Decl., Ex. 4 (2022 Employee Stock Plan) at APLCOSTA00000065, APLCOSTA00000076; *id.*, Ex. 5 (2014 Employee Stock Plan) at APLCOSTA00000043, APLCOSTA00000053–54. At the time of grant, RSU awards do not afford employees shares, voting or dividend rights, as these rights are not realized until the RSUs vest and the shares are issued to the employees. *See id.*, Ex. 4 (2022 Employee Stock Plan) at APLCOSTA00000076; *id.*, Ex. 5 (2014 Employee Stock Plan) at APLCOSTA00000053–54. RSUs do not have an actual realizable value unless and until they vest. *See* Cooney Decl., Ex. 7 (2022 Employee Stock Plan Prospectus) at APLCOSTA00001635–36, APLCOSTA00001641; *id.*, Ex. 8 (2014 Employee Stock Plan Prospectus) at APLCOSTA00001649–50, APLCOSTA00001654. At the time Apple grants an RSU award, the future value of the share is unknown, indeterminable, and cannot be predicted with certainty—it will depend entirely on the closing price of Apple's stock on each particular vesting date and the value of the share will continue to be variable based on the market price once issued. *See id.*, Ex. 7 (2022 Employee Stock Plan Prospectus) at APLCOSTA00001635–36, APLCOSTA00001641; *id.*, Ex. 8 (2014 Employee Stock Plan Prospectus) at APLCOSTA00001649–50, APLCOSTA00001654.

The applicable Apple Employee Stock Plan and RSU Award Agreement govern Apple's discretionary RSU awards. *See* Cooney Decl., Ex. 9 (Thomas 30(b)(6) Dep. Tr.) at 35:12–17. Under the terms of the plan and agreement, there is no right to a discretionary RSU award even if RSUs were granted in the past. The Apple Employee Stock Plan states that Apple has "no obligation . . . to

continue the Plan and/or grant any additional awards." *Id.*, Ex. 4 (2022 Employee Stock Plan) at APLCOSTA00000078; *id.*, Ex. 5 (2014 Employee Stock Plan) at APLCOSTA00000056.  The RSU Award Agreement, meanwhile, states that any RSU award "is an exceptional, discretionary, one-time grant, is voluntary, and occasional and does not create any contractual or other right to receive future awards of RSUs, or benefits in lieu of RSUs, even if RSUs have been awarded in the past." *Id.*, Ex. 10 (2022 Employee Stock Plan Global Restricted Stock Unit Award Agreement) at APLCOSTA00001625.  The Agreement further states that "all decisions with respect to future awards, if any, will be at the sole discretion of the Company," and that the "RSUs and the Shares subject to the Award, and any related income and value, are extraordinary items that do not constitute compensation of any kind for services of any kind rendered to the Company." *Id.*

Cooney Decl., Ex. 9 (Thomas 30(b)(6) Dep. Tr.) at 24:16–25.

*Id.* at 16:12–21.  Under the Apple Employee Stock Plan, all non-exempt employees are eligible to participate in the RSU program.  Cooney Decl., Ex. 4 (2022 Employee Stock Plan) at APLCOSTA00000069; *id.*, Ex. 5 (2014 Employee Stock Plan) at APLCOSTA00000047.  The decision to recommend that any employees receive a discretionary RSU award is not tied to hours worked, production, or an employee's attendance.  Cooney Decl., Ex. 6 (Jenkinson 30(b)(6) Dep. Tr.) at 52:16–24, 137:19–138:8.  After the discretionary decision has been made as to whether to grant RSU awards, the size of the grants, and the employees who should be granted an RSU award, Apple notifies employees who are selected to be granted an RSU award via email of the grant date, number of RSUs, and vesting commencement date. *Id.* at 99:15–19.  The Apple Employee Stock Plan provides employees the option to decline their RSU award, Cooney Decl., Ex. 3 (RSU Grant Email) at APLCOSTA00442368, and employees do so for various reasons, *id.*, Ex. 6 (Jenkinson 30(b)(6) Dep. Tr.) at 80:13–81:11 (e.g., "tax" or "religious reasons").

According to the testimony of the named Plaintiffs and putative class members, some managers

Gibson, Dunn & Crutcher LLP

5

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION CASE NO. 3:23-CV-01353-WHO

chose to discuss the RSU awards with the employees they supervised, but the information they conveyed varied widely. For example, named Plaintiff McIlravy-Ackert testified that in performance reviews with her supervisors, they would "highlight all the different benefits that the company offers, the health insurance and that kind of stuff, and then go[] over your compensation which they would always say included the stock grant for the RSUs." Cooney Decl., Ex. 11 (McIlravy-Ackert Dep. Tr.) at 49:24–50:19. Named Plaintiff Hoffman testified that she recalled her "supervisor specifically telling" her that her "RSUs are part of [her] annual bonus" and "part of [her] pay [given] here at Apple." *Id.*, Ex. 2 (Hoffman Dep. Tr.) at 38:23–39:8. Safiya Sears testified that in annual meetings with her manager, "the conversation would basically be like this is what [your raise] is, this is your RSUs, and to compensate for whatever else, . . . these are the other benefits you're also receiving." *Id.*, Ex. 12 (Sears Dep. Tr.) at 20:15–24; *see also id.*, Ex. 13 (Yun Dep. Tr.) at 33:13–34:9 (similar). James Doyle testified that RSUs were discussed in store-wide meetings when "new employees were being given information about their benefits." *Id.*, Ex. 14 (Doyle Dep. Tr.) at 32:11–23. Rachel Case testified that during performance reviews, her manager would say "[h]ere's the percentage of your raise. Here is your new dollar amount. Here is the RSU grant," and tell her that her RSU award "was a gift." *Id.*, Ex. 15 (Case Dep. Tr.) at 35:14–15, 43:21–23. Other putative class members had no recollection of their managers ever discussing RSUs. *See id.*, Ex. 17 (Nisenboym Dep. Tr.) at 33:7–14 (testifying that he could not recall any conversations where his manager discussed RSUs, but viewed RSUs as "another benefit that employees at Apple got"); *id.*, Ex. 18 (Shahinyan Dep. Tr.) at 62:21–63:6 (no recollection of discussing RSUs with manager); *id.*, Ex. 19 (Bacich Dep. Tr.) at 40:21–24 (same).

Manager testimony confirms that they differed in how they communicated discretionary RSU awards to the putative class members (if they discussed RSUs at all). For example, Erik Schaeffer, a Software Development Engineering Manager who supervises hourly employees, discussed RSUs with his team separately from hourly pay, in connection with discretionary awards and benefits like insurance and 401(k) plans. Declaration of John Erik Schaeffer (Schaeffer Decl.) ¶ 7. He did not tell putative class members whom he supervised that they could expect to receive RSU awards each year, and did not refer to RSUs as compensation. *Id.* Mr. Schaeffer explained that the number of

6

1    discretionary RSU awards vary year-to-year depending upon Apple's budget and other factors.  *Id.*

2    Lab Manager Erica Sheu, on the other hand, told her team that RSU awards were based on company

3    performance, unlike hourly rate changes and bonuses that were related to the individual employee's

4    performance.  Declaration of Erica Sheu (Sheu Decl.) ¶ 5.  Other managers who supervised putative

5    class members, like Software Development Engineer Manager Babak Shafiei, did not discuss RSUs at

6    all with their non-exempt team members.  *See* Declaration of Babak Shafiei (Shafiei Decl.) ¶ 10.

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████    *See* Cooney Decl., Ex. 6 (Jenkinson 30(b)(6) Dep. Tr.)

9    at 70:19–23.  RSUs will continue to vest even if an employee is not working or on an extended leave,

10   although the vesting schedule may extend if an employee is on an "unpaid personal leave of absence"

11   that is more than 30 days.  *Id.* at 134:22–135:3, 137:2–7.  For example, named Plaintiff McIlravy-

12   Ackert was on medical leave for six months and her RSUs continued to vest during that time.  Cooney

13   Decl., Ex. 11 (McIlravy-Ackert Dep. Tr.) at 119:1–4.

14   Once an RSU vests, the underlying Apple share is issued, meaning it is transferred to the

15   employee's personal brokerage account and the employee is free to do whatever they want with their

16   share.  *See* Cooney Decl., Ex. 6 (Jenkinson 30(b)(6) Dep. Tr.) at 148:6–25.  Apple has no visibility into

17   what the individuals choose to do with their shares once issued.  *See id.* at 148:10–25.  But both the

18   named Plaintiffs and opt-in plaintiffs testified that sales of their vested shares allowed them to make

19   meaningful purchases for themselves and their families.  For example, named Plaintiff McIlravy-

20   Ackert and other opt-in plaintiffs sold their vested shares for a down payment for a house and further

21   renovations.  Cooney Decl., Ex. 11 (McIlravy-Ackert Dep. Tr.) at 92:25–93:9, 97:8–14; *see also id.*,

22   Ex. 14 (Doyle Dep. Tr.) at 56:5–9 (James Doyle sold vested shares "to pay off debt" and "to put towards

23   a down payment for a house"); *see also id.*, Ex. 20 (Hernandez Dep. Tr.) at 46:3–11 (Christopher

24   Hernandez sold vested shares "for a down payment" on a condo, for which he also needed "cash" for

25   "a ton of remodels").  Matthew Waldman sold his vested shares to pay for his son's education and

26   photography business.  *Id.*, Ex. 16 (Waldman Dep. Tr.) at 56:8–19.  Safiya Sears sold her vested shares

27   whenever she wanted to buy something "more extravagant," including a designer purse.  *Id.*, Ex. 12

28

Gibson, Dunn &
Crutcher LLP

(Sears Dep. Tr.) at 33:16–24.  Lily Free routinely sells her shares "immediately, as soon as they're available to sell," with the aim of reinvesting them in other securities.  *Id.*, Ex. 21 (Free Dep. Tr.) at 66:19–69:8.  Rachel Case is letting her shares "continue to increase until [she] retire[s]" and hopes to "use th[em] to lay on a beach all day."  *Id.*, Ex. 15 (Case Dep. Tr.) at 67:11–15.  Finally, Vaneh Shahinyan testified that she was able to stay home with her child in part because of money she made from selling vested shares.  *Id.*, Ex. 18 (Shahinyan Dep. Tr.) at 48:10–20.

### B.    Procedural Posture

In their Third Amended Complaint, Plaintiffs allege that Apple did not include the value of vested RSUs in the regular rate of pay, which resulted in a failure to properly pay overtime pay in violation of the Fair Labor Standards Act and California and New York state law.  Dkt. 86 ¶¶ 79–98, 117–127.[1]  Plaintiffs also bring a number of related claims under California law, including derivative claims regarding failure to provide accurate itemized wage statements, failure to timely pay earned and unpaid wages, and violation of California's Unfair Competition Law.  *Id.* ¶¶ 99–116.

Plaintiffs now ask the Court to certify Rule 23 classes for their California and New York claims, with named Plaintiff Hoffman seeking to represent the California class and named Plaintiff McIlravy-Ackert seeking to represent the California and New York classes.

### III.    LEGAL STANDARD

Rule 23 "imposes stringent requirements for [class] certification that exclude most claims." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 229 (2013).  The party seeking class certification bears the burden to satisfy *both* the requirements of Rule 23(a) and Rule 23(b).  To satisfy Rule 23(a), Plaintiffs must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and

---

[1] In their Motion, Plaintiffs raised a new theory that dividends should be included in the regular rate of pay.  Mot. at 1, 5, 6 (contending Apple "has a common policy for all employees of not including the value of vested RSUs or their dividends in the regular rate").  This claim is not in the complaint or their PAGA notice and cannot be pursued.  *See, e.g.*, *Ridgeway v. Phillips*, 383 F. Supp. 3d 938, 944 n.2 (N.D. Cal. 2019) (barring theory not pled).  It is also undisputed that no Apple employee earns a "dividend" from an unvested RSU award—dividends are issued by the company to a stockholder that holds an actual share, which an RSU is not unless and until it vests.  Cooney Decl., Ex. 6 (Jenkinson 30(b)(6) Dep. Tr.) at 52:5–7; *id.*, Ex. 27 (Dividends and Dividend Equivalents People Site Page) at APLCOSTA00004464.

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

adequacy of representation. *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 834 (9th Cir. 2022). Where, as here, Plaintiffs seek to certify a class under Rule 23(b)(3), they must also demonstrate that common questions "predominate" over individual ones, and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). While there is some overlap between these factors—particularly between the commonality and predominance requirements—"Rule 23(b)'s predominance criterion is even more demanding than Rule 23(a)" and requires that courts "take a close look at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (quotation marks omitted).

Plaintiffs "cannot plead or speculate [their] way to class certification" but "must marshal facts" and satisfy their burden "by a preponderance of the evidence." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024). A court must engage in a "rigorous analysis" of "whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). This generally "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

## IV.    ARGUMENT

### A.    Individualized Issues Prevent a Finding of Commonality or Predominance

Rule 23(a)'s commonality inquiry examines whether plaintiffs' claims "depend upon a common contention such that determination of their truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (cleaned up). This inquiry overlaps with the Rule 23(b)(3) predominance inquiry, which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To satisfy this standard, the court must "make a global determination of whether common questions prevail over individualized ones." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F. 3d 1125, 1134 (9th Cir. 2016).

Common issues do not predominate if "a great deal of individualized proof would need to be introduced to address most or all of the elements of a claim." *Gomez v. J. Jacobo Farm Lab.*

Gibson, Dunn & Crutcher LLP

*Contractor*, 334 F.R.D. 234, 256 (E.D. Cal. 2019) (quotation marks omitted).  Nor do common issues predominate if "a number of individualized legal points" need to be established after common questions are resolved, or "the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."  *Id.* (quotation marks omitted).  That is precisely the case here.

Plaintiffs contend that they have made the requisite commonality and predominance showings because Apple "undisputedly has a class wide policy of not including RSU remuneration in the regular rate."  Mot. at 17; *see also id.* at 9.  They further assert that they can prevail on the merits under "common proof" because "once Apple makes the RSU share awards, they are subject to a contract that requires continued active employment to vest," and RSU awards do not meet the requirements of the FLSA's stock option exclusion.  *Id.* at 12 (commonality); *id.* at 17–18 (predominance).  But simply pointing to a common policy is not sufficient to establish commonality, much less predominance.  *See Miles*, 89 F.4th at 1223.  And Plaintiffs' assertions entirely ignore the individualized inquiries that will be necessary to adjudicate their claims:  *First*, whether members of the putative class are in fact non-exempt from overtime pay, and *second*, whether the RSUs granted to the members of the putative class are excludable from the regular rate of pay.  The individualized inquiries required to resolve either of these issues are sufficient to defeat class certification.

### 1.    Whether Plaintiffs Are Entitled to Overtime at All Turns on Individualized Analysis of Their Job Responsibilities

Only plaintiffs who are subject to state and federal overtime requirements have standing to challenge whether RSUs are "compensation" that must be included in the calculation of employees' regular rate of pay.  The Court therefore must resolve a threshold issue in this case—whether the members of the putative class are even eligible for overtime pay.  *See* Dkt. 92 at 27 (Apple's 34th affirmative defense: Plaintiffs are "exempt from the overtime pay provisions of the FLSA and California and New York wage and hour laws").  This question is not subject to classwide resolution.

While Plaintiffs define the classes to include current and former employees that Apple "classified as non-exempt/overtime eligible," Mot. at 2, the fact that Apple has classified certain

10

Gibson, Dunn &
Crutcher LLP

employees "as non-exempt and paid them as though they were non-exempt does not mean that they were in fact non-exempt." *Perez v. Wells Fargo & Co.*, 2015 WL 10558841, at *2 (N.D. Cal. Nov. 24, 2015). "Whether the employees are actually exempt or not requires an inquiry into their job duties." *Id.* And determining whether putative class members are actually exempt based on their job responsibilities—regardless of their formal classification—is an inherently individualized analysis. For this reason, "[w]here the relevant duties performed (i.e., those that arguably constitute exempt activity) vary from class member to class member, many courts have found that individual issues, rather than common issues, predominate." *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 602 (E.D. Cal. 2008) (collecting cases); *see also Grosz v. Boeing Co.*, 136 F. App'x 960, 962 (9th Cir. 2005) (certification improper where "the plaintiffs are diverse in a way that affects commonality").

For example, in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009), the Ninth Circuit upheld a denial of class certification in a wage-and-hour action, reasoning that individual issues predominated because the law required "an individualized analysis of the way each employee actually spends his or her time, and not simply [a] review [of] the employer's job description." *Id.* at 945–46. Similarly, in *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009), the Ninth Circuit reversed a grant of class certification after determining that the merits would turn on individual inquiries into the application of five different state and federal exemptions to overtime law, and "would require an analysis of the job experiences of the individual employees, including the amount of time worked by each [employee], how they spend their time, where they primarily work, and their levels of compensation." *Id.* at 956. District courts in this circuit routinely hold the same. *See, e.g.*, *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006) (no predominance where "there were many variable[s] which affected a particular manager's mix of duties"); *Perry v. U.S. Bank*, 2001 WL 34920473, at *7 (N.D. Cal. Oct. 16, 2001) (no predominance "in light of the differences in individual job duties").

The same result should follow here. Apple has identified at least 36 positions that, while formally classified as non-exempt, may in fact be exempt positions under the "Computer Exemption," depending on how the roles were performed. *See* Cooney Decl., Ex. 22 (Apple's Fifth Suppl. Resp.

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

and Obj. to Plaintiffs' First Set of Interrog.) at 74:11–75:4. Currently, there are approximately 782 employees who hold one of these titles, including 568 in California and 19 in New York, meaning it is likely hundreds did so within the four- and six-year putative class periods. *See* Thomas Decl. ¶ 4.

California law exempts from overtime computer software employees who are "primarily engaged in work that is intellectual or creative and requires the exercise of discretion and independent judgment." Cal. Lab. Code § 515.5(a). This includes employees who, among other things, spend most of their time "consulting with users[] to determine hardware, software, or system functional specifications," or "design[ing], develop[ing], . . . testing, or modification of computer systems." *Id.* New York adopts the federal standard and exempts from overtime employees who are "[c]omputer systems analysts, computer programmers, software engineers or other similarly skilled workers in the computer field" so long as the employee's "primary duty" consists of activities such as designing, developing, testing, and modifying computer systems and computer programs. 29 C.F.R. § 541.400; *see also* 12 NYCRR § 142-2.2 ("An employer shall pay an employee for overtime . . . in the manner and methods provided in . . . the Fair Labor Standards Act.").

While the New York, California, and federal exemptions may appear similar, there are important differences to these laws and how they apply. Critically, in California, the employee must "primarily engage[] in work that is intellectual or creative and that requires the exercise of discretion and independent judgment." Cal. Lab. Code § 515.5(a); Wage Order No. 4-2001 § 1(A)(3)(h)(i). New York and federal law have no equivalent. This further tips the scale against Plaintiffs' bid for certification because the "need to apply the law of different states raises questions of whether individualized issues predominate and how a matter can be fairly managed as a class action." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1199 (9th Cir. 2024).

The 36 titles Apple has identified to date each involve the technical, self-driven, and computer-based work that the computer professional exemptions were designed to cover. For example, at least one opt-in plaintiff testified that, as a Design Verification Engineer, he analyzed errors in code, discussed those errors and potential solutions with colleagues, and wrote code to correct technical issues. Cooney Decl., Ex. 23 (Roch Dep. Tr.) at 41:25–48:18; *id.*, Ex. 24 (Roch's Resp. to Apple's

Gibson, Dunn &
Crutcher LLP

Interrog. No. 6) (responsibilities include "[i]nterpreting specifications from hardware architects, designing behavioral simulations for pre-production hardware designs, and developing and verifying software models of hardware components"). Roch described his work in this position as "inherently creative," and explained that in his role, he used discretion and creativity to resolve problems with broken code. *Id.*, Ex. 23 (Roch Dep. Tr.) at 18:2–19:6, 46:4–16; *see* Cal. Lab. Code § 515.5 (computer professions exemption applies to employees that are "primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment"). Similarly, Lily Free, who worked as a Software Integrity Engineer 2, testified that she engaged in testing Apple devices based on design specifications, and has written various tests to determine whether Apple devices were functioning as designed. *See* Cooney Decl., Ex. 21 (Free Dep. Tr.) at 14:16–15:4, 33:8–18, 36:4–37:3; *see also* 29 C.F.R. § 541.400 (computer professions exemption applies to employees whose "primary duty consists of: . . . *testing* or modification of computer systems or programs" (emphasis added)); Cal. Lab. Code § 515.5 (same). While Free claimed that her job was not technical or complicated, she admitted that she was responsible for coming up with testing strategies without direction "multiple times a week," that she wrote approximately 100 test protocols that are "routinely" run by other engineers, and that having more than basic familiarity with coding language would help her do her job more effectively. Cooney Decl., Ex. 21 (Free Dep. Tr.) at 34:18–35:15, 37:4–13, 38:22–24.

Managers of employees in these roles confirm that they require creativity, autonomy, and complex decision making. For example, employees who hold the Software Development and Testing Engineer 2 role are responsible for writing the framework needed to test Apple's software and programs. Shafiei Decl. ¶ 5. This role has ample room for creativity, as Software Development and Testing Engineer 2s have discretion to decide the best way to test software and programs and have autonomy in writing the code necessary to create the test frameworks. *Id.* ¶ 6. Similar autonomy and creativity is exercised by employees in the Data Scientist role, who develop software to automate systems for data analysis and processing. Schaeffer Decl. ¶ 4–5. They have full autonomy on how to write code to develop their software, and must "think outside the box to come up with creative solutions," with no one right way to reach the desired result. *Id.* ¶ 5. The list goes on. *See* Sheu Decl.

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

Gibson, Dunn &
Crutcher LLP

¶ 3 (describing the Hardware Associate Engineer 2 role as "us[ing] specialized tools and techniques to test, research and help build cutting-edge hardware"); Declaration of Vinodh Cuppu (Cuppu Decl.) ¶ 3 (describing the Front-End Engineer 2 role as requiring "at minimum, . . . a bachelor's or master's degree in computer science or electrical engineering"); Declaration of Krishna Kumar Gattam Pandurangan (Gattam Pandurangan Decl.) ¶ 3 (Front-End Engineer 2 job responsibilities include "writing . . . and implementing []code"); Declaration of Brett Keating (Keating Decl.) ¶ 4 (describing the Machine Learning Engineer 2 position as a "highly intellectual role"); Declaration of Divya Poulose (Poulose Decl.) ¶ 3 (stating that the Tools & Automation Engineer 2 role "develop[s] new ideas of how to conduct testing"); *see also* Cooney Decl., Ex. 9 (Thomas 30(b)(6) Dep. Tr.) at 60:9–14, 61:6–12, 62:14–22, 62:7–13 (describing at least four more roles classified as non-exempt as "very academic," requiring "rigorous" testing, and involving "very complex" software engineering).

To determine whether the hundreds of putative class members who held these 36 roles are, in fact, eligible to seek damages for violation of New York or California overtime laws, the Court will need to individually analyze each person's actual responsibilities during the class period, which could entail individual testimony from the employee and their supervisor(s). Even individuals who hold the same role may have different job duties. For example, employees in the Software Integrity Engineer 2 role may have one of two completely different responsibilities: either screening, assessing, and resolving bug reports on the one hand, or performing manual test cases on developing software on the other. Shafiei Decl. ¶¶ 7–8; *see also* Declaration of Justin Etzine (Etzine Decl.) ¶ 3.

To present, consider, and weigh the evidence for each of these putative class members is no easy feat. Although Apple is not pursuing this defense with respect to every putative class member, these individualized issues would still require time-intensive mini-trials for hundreds of putative class members—at least 568 current employees in California hold one of the roles Apple contends are exempt. Thomas Decl. ¶ 4. For example, a court in this district recently conducted a four-day bench trial on the sole question of whether a single plaintiff seeking overtime pay was subject to California's executive exemption. *Ortiz v. Amazon.com LLC*, 2022 WL 1598968, at *1 (N. D. Cal. May 20, 2022). Multiplied by the hundreds of putative class members who may be exempt in this case, the amount of

14

Gibson, Dunn &
Crutcher LLP

time required to make these individualized analyses would overwhelm any determination of alleged common questions. Because individual inquiry is required for this key threshold question, individual questions predominate over any common question here.

### 2. Plaintiffs' Claim That RSUs Must Be Included in Overtime Pay Turns on Individualized Evidence

Plaintiffs' contention that the merits of their overtime claims will be "decided on common undisputed evidence" regarding Apple's purported "class wide policy of not including RSU remuneration in the regular rate," Mot. at 17, stands in stark contrast with the evidence they have produced. In support of their theory that RSUs are compensation, Plaintiffs primarily advance evidence relating to their own *individual* understanding of their RSU award—based largely on supposed individual conversations with their managers, who do not administer the program. The testimony of putative class member Lily Free lays bare Plaintiffs' theory. She testified that she believed the RSUs were a "form of compensation" that should have been included in her overtime pay rate *because* "any discussions of RSU grants have been included in discussions about [her] compensation." Cooney Decl., Ex. 21 (Free Dep. Tr.) at 48:16–21; *see also id.*, Ex. 25 (Butron Dep. Tr.) at 41:13–16 (stating that she "knew" RSUs were being awarded as "part of [her] salary" "because there was conversations around it from the managers who gave [her] review"). While the governing terms of the awards and overwhelming evidence show that RSU awards are not compensation, Plaintiffs appear to subscribe to the view that the Court can consider "each class member's understanding" of RSUs to determine whether they should be included in the regular rate of pay. *Culley v. Lincare Inc.*, 2017 WL 3284800, at *5 (E.D. Cal. Aug. 2, 2017). Plaintiffs cannot ignore the varied testimony of the named Plaintiffs and putative class members now, only to rely on it later.

As a threshold matter, Apple's RSU awards are facially *not* compensation. RSU awards are granted subject to the Apple Employee Stock Plan, which specifically provides that RSUs are "not intended to be compensation of a continuing or recurring nature, or part of a Participant's normal or expected compensation, and in no way represents any portion of a Participant's salary, compensation, or other remuneration." Cooney Decl., Ex. 4 (2022 Employee Stock Plan) at APLCOSTA00000078.

15

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION CASE NO. 3:23-CV-01353-WHO

Gibson, Dunn & Crutcher LLP

Instead, an RSU award "is an exceptional, discretionary, one-time grant, is voluntary, and occasional and does not create any contractual or other right to receive future awards of RSUs, or benefits in lieu of RSUs, even if RSUs have been awarded in the past," and "all decisions with respect to future awards, if any, will be at the sole discretion of the Company." *Id.*, Ex. 10 (2022 Employee Stock Plan Global Restricted Stock Unit Award Agreement) at APLCOSTA00001625. This is consistent with how RSUs function in practice—Apple's RSU awards are discretionary and are not based on work performed, hours worked, or productivity. *Id.*, Ex. 6 (Jenkinson 30(b)(6) Dep.) at 52:16–24; 138:1–8. And, unlike hourly and overtime wages, an employee can decline an RSU award; when an employee declines, it has absolutely no impact on their pay because it is not part of any compensation for their work. *Id.*, at 80:13–22; Cooney Decl., Ex. 3 (RSU Grant Email) at APLCOSTA00442368.

At their depositions, however, the named Plaintiffs claimed that RSUs were in fact compensation because their managers supposedly told them so. But even among the named Plaintiffs, the content of these conversations varied significantly, proving how highly individualized Plaintiffs' theory of liability is. Apple disputes that any plaintiff's understanding of their RSUs can overcome the clear evidence that RSUs are not compensation. But courts can and do take into account "each class member's understanding" of the payment when considering if it should be included in the regular rate of pay. *Culley*, 2017 WL 3284800, at *5; *see also Vire v. Entergy Operations, Inc.*, 2016 WL 10575139, at *5 (E.D. Ark. Oct. 31, 2016) (denying summary judgment because evidence showing that payments "were not guaranteed, were variable, and were left to management's discretion" conflicted with the employee's "understanding [that] payment was for hours worked and not a bonus").

In *Culley*, for example, the plaintiff brought class claims under the California Labor Code, alleging that her employer had improperly failed to include certain bonuses in the regular rate of pay. 2017 WL 3284800, at *1, 5. The court previously found that the underlying merits determination of whether the bonus could be excluded turned in part on the plaintiff's understanding that her bonus was tied to her performance and "induced her to take the job and work harder." *Id.* at *5. The court then granted the defendant's motion to decertify the class, finding that because "adjudication of Plaintiff's overtime bonus claim requires examining each class member's understanding of the bonus," individual

16

Gibson, Dunn &
Crutcher LLP

issues would predominate the litigation.  *Id.* at *5–6 (quotation marks omitted).

The Court should take the same course here.  Plaintiffs' claims turn on whether RSU awards fall within any of the regular rate of pay exclusions enumerated in the FLSA, since both California and New York follow the FLSA for purposes of determining what should be included in the regular rate of pay.  *See Hartstein v. Hyatt Corp.*, 82 F.4th 825, 833 (9th Cir. 2023); *Vega v. K & C, Interior Constr. Corp.*, 2018 WL 4376486, at *5 (E.D.N.Y. Aug. 28, 2018).  Two of the relevant exclusions are for sums paid as gifts, "the amount of which are not measured by or dependent on hours worked, production, or efficiency," 29 U.S.C. § 207(e)(1), and payments which are not "made as compensation for . . . hours of employment," *id.* § 207(e)(2).  But the evidence Plaintiffs themselves have advanced to argue that RSU awards do not fall within either of these exclusions is their own testimony regarding their individualized understanding based on conversations with their supervisors.

McIlravy-Ackert testified that in performance reviews with her supervisors, they would "highlight all the different benefits that the company offers, the health insurance and that kind of stuff, and then go[] over your compensation which they would always say included the stock grant for the RSUs" and described these items as "perks."  Cooney Decl., Ex. 11 (McIlravy-Ackert Dep. Tr.) at 49:24–50:19, 54:25–55:5.  Despite working in the same retail store as McIlravy-Ackert and reporting to the same manager, Hoffman testified to a very different conversation.  *See id.* at 60:16–22; Cooney Decl., Ex. 2 (Hoffman Dep. Tr.) at 25:6–9.  She recalled her "supervisor specifically telling" her that her "RSUs are part of [her] annual bonus" and "part of [her] pay [given] here at Apple."  *Id.*, Ex. 2 (Hoffman Dep. Tr.) at 38:23–39:8.  Safiya Sears testified that in annual meetings with her manager, "the conversation would basically be like this is what [your raise] is, this is your RSUs, and to compensate for whatever else, . . . these are the other benefits you're also receiving."  *Id.*, Ex. 12 (Sears Dep. Tr.) at 20:15–24.  James Doyle testified that RSUs were discussed in store-wide meetings when "new employees were being given information about their benefits."  *Id.*, Ex. 14 (Doyle Dep. Tr.) at 32:11–23. Rachel Case testified that during her performance reviews, her managers would say: "Here's the percentage of your raise.  Here is your new dollar amount.  Here is the RSU grant," and told her that her RSU award "was a gift."  *Id.*, Ex. 15 (Case Dep. Tr.) at 35:14–15, 43:21–23.  And some putative

Gibson, Dunn &
Crutcher LLP

1   class members had no recollection of their managers ever discussing RSUs with them.  *See id.*, Ex. 17

2   (Nisenboym Dep. Tr.) at 33:7–14 (testifying that he could not recall any conversations where his

3   manager discussed RSUs, but viewed RSUs as "another benefit that employees at Apple got"); *id.*, Ex.

4   18 (Shahinyan Dep. Tr.) at 62:21–63:6 (no recollection of discussing RSUs with manager); *id.*, Ex. 19

5   (Bacich Dep. Tr.) at 40:21–24 (same).

6           Testimony from the managers of putative class members confirms the individualized nature of

7   these conversations.  Some managers discussed RSU grants in addition to benefits like insurance and

8   401(k), separate from base pay.  Schaeffer Decl. ¶ 7.  Some explained to their direct reports that the

9   number of RSU awards vary year-to-year depending upon Apple's budget and other factors, while

10  others conveyed that RSU award decisions could be based on company performance.  Schaeffer Decl.

11  ¶ 7; Sheu Decl. ¶ 5.  Some managers did not discuss RSUs with their teams at all.  Shafiei Decl. ¶ 10.

12          This dispute, by Plaintiffs' own characterization, will turn on highly individualized evidence

13  regarding putative class members' understanding of their RSU awards.  Because Plaintiffs'

14  presentation of the case indicates that "individual issues will predominate any determination as to

15  whether" RSUs are properly excluded from the regular rate of pay, *Culley*, 2017 WL 3284800, at *5,

16  the proposed classes should not be certified.

17                  **3.    Apple's Defenses Cannot Be Resolved by Common Proof**

18          Plaintiffs insist that the Court can resolve the applicability of the statutory regular rate of pay

19  exclusions on a classwide basis.  Mot. at 9–13.  To be sure, should Apple prevail on its exclusion

20  defense, Plaintiffs will not be able to prove that they "were denied proper compensation."  Dkt. 86 ¶ 1.

21  But the statutory exclusions are just one of the many defenses Apple raises in this action.  *See* Dkt. 92

22  at 20–28.  Even if the Court were to reject that defense, it would not resolve the litigation.  Plaintiffs

23  cannot rely on *one* of Apple's many meritorious defenses to carry their burden to show that common

24  issues predominate.  "[T]he predominance inquiry is a pragmatic one, in which the Court does more

25  than just count up common issues and individual issues."  *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460,

26  470 (N.D. Cal. 2014).  Rather, the inquiry "is a holistic one, in which the Court considers whether

27  overall, considering the issues to be litigated, common issues will predominate."  *Id.*

28

Gibson, Dunn &
Crutcher LLP

18

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

Plaintiffs summarily claim with no factual or legal support that they can dispose of Apple's other defenses on a classwide basis. The cases they cite for this proposition are all inapplicable; most involve a motion to strike, a procedural mechanism no longer available to Plaintiffs. *See* Mot. at 12 (citing *Moreno v. Pretium Packaging, LLC*, 2020 WL 4333353, at *4–5 (C.D. Cal. July 17, 2020) (motion to strike); *Rendon v. Infinity Fasteners, Inc.*, 2022 WL 17634480, at *4–7 (E.D. Cal. Dec. 13, 2022) (same); *Horton v. NeoStrata Co.*, 2017 WL 2721977, at *11 (S.D. Cal June 22, 2017) (same); *Vasquez v. Leprino Foods Co.*, 2021 WL 1737480, at *4–6 (E.D. Cal. May 3, 2021) (motion for judgment on the pleadings)); *see also* Fed. R. Civ. P. 12(f). And their complete lack of evidence in support of their claim renders it meaningless. A "party cannot plead or speculate [their] way to class certification" but "must marshal facts" and satisfy their burden "by a preponderance of the evidence." *Miles*, 89 F.4th at 1222. This contention is not grounds to find commonality, much less predominance.

In any event, Plaintiffs' claim that Apple's affirmative defenses "are common legal questions that will streamline litigation," Mot. at 12, is belied by the defenses themselves. To state just a few examples, Apple's fourteenth affirmative defense is that Plaintiffs' claims are "barred, in whole or in part, to the extent covered by a prior agreement, compromise, and/or release of claims." Dkt. 92 at 22. As discussed below, to date, Apple has identified at least 131 FLSA opt-in plaintiffs (including putative class members) who are subject to such a release before even considering the impact of court-approved class settlements. *See* Declaration of Courtney Robles (Robles Decl.) ¶ 20. Whether a putative class member has released their claims must be resolved on an individual basis. Apple's thirty-fourth affirmative defense is that Plaintiffs' claims are "barred because they are exempt from the overtime pay provisions of the FLSA and California and New York wage and hour laws." Dkt. 92 at 26. This analysis is also inherently individualized. *See supra* 10–15. Plaintiffs cannot force Apple to litigate its individualized defenses on a classwide basis. "Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' . . . a class cannot be certified on the premise that [Apple] will not be entitled to litigate its statutory defenses to individual claims." *Dukes*, 564 U.S. at 367. Apple has the right to raise its defenses, and these defenses cannot be resolved by common proof.

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

\*     \*     \*

1     Rule 23(a)'s commonality inquiry requires Plaintiffs to prove "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Here, the prevalence of individualized questions that go to the heart of Plaintiffs' theory of the case prevents a finding of either commonality or predominance. Class certification should therefore be denied.[2]

## B.  Plaintiffs' Failure to Produce a Damages Model Precludes a Finding of Predominance or Superiority

To satisfy Rule 23(b)(3), Plaintiffs must proffer a damages model showing that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "[A]lthough the existence of individualized damages and any attendant difficulty calculating them cannot defeat certification, the absence of a methodology for calculating damages on a classwide basis can." *Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 164 (N.D. Cal. 2022); *cf. Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024) (district court must find that a damages model "is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial").

Plaintiffs do not even attempt to provide a damages model, instead stating only that "damages will be calculated using objective data Apple maintains for all employees, including payroll and time records, and RSU records reflecting number of shares, grant and vesting dates, and share value at vesting." Mot. at 11. But Plaintiffs have put forth no expert to explain *how* exactly those calculations will be done. *Cf. Falco v. Nissan N. Am, Inc.*, 2016 WL 1327474, at \*12 (C.D. Cal. Apr. 5, 2016) (using damages expert to perform classwide remedies analysis). The only support for this statement is the same line repeated verbatim in the declaration of Plaintiffs' counsel, with no further citation, evidence, explanation, or support. Dkt. 299-1 ¶ 6. This does not come close to satisfying *Comcast*.

---

[2] Certification of Plaintiffs' derivative classes necessarily fail for the same reasons. *See, e.g.*, *McCarty v. SMG Holdings I, LLC*, 2022 WL 913092, at \*7 (N.D. Cal. Mar. 29, 2022); *Dawsom v. Hertz Trans. Inc.*, 2018 WL 6112623, at \*10 (C.D. Cal. Nov. 5, 2018).

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

What's more, Plaintiffs' statement about calculating damages with "objective data" grossly oversimplifies the steps necessary to calculate damages in this case. In truth, there are myriad individual considerations that will affect the damages calculations, which Plaintiffs have done nothing to address. *See* Estevez Rpt. ¶¶ 10–19. As a threshold matter, Plaintiffs ignore how complicated calculating damages will be, even assuming *no* individual variation. They provide no legally supported or logically sound methodology for determining crucial inputs, including the relevant premium multiplier, the relevant look-back period(s), and the hours included. *See id.* ¶¶ 13–14.

Calculating damages would also necessarily involve accounting for individual differences among the thousands of putative class members. For example, some putative class members moved in and out of exempt roles during the class period, which would impact their individual damages, if any. *See* Estevez Rpt. ¶¶ 14–15. To illustrate, one opt-in plaintiff was granted a discretionary RSU award with a three-year vest on September 26, 2021, while they worked in a non-exempt role. *Id.* ¶ 15. On July 18, 2022, however, they moved into an exempt role. *Id.* All of the RSUs from the September 26, 2021 grant that vested did so while the opt-in plaintiff was exempt, and Plaintiffs do not explain how their damages (if any) would be calculated for this period. *Id.* Conversely, another opt-in plaintiff was granted a discretionary RSU award with a three-year vest on September 27, 2020, while they were working in an exempt role. *Id.* On January 4, 2022, they moved into a non-exempt role. *Id.* The RSUs they were granted while in an exempt role continued to vest after they moved to a non-exempt role; Plaintiffs do not explain what portion, if any, of this RSU award is in their damages calculation.

Further complicating matters, some putative class members moved in or out of California and New York during the class period—or, in some cases, lived in both. *See* Estevez Rpt. ¶¶ 14–15. For example, one opt-in plaintiff worked for Apple in non-exempt positions in both states during the class period. *Id.* ¶ 15. Plaintiffs do not explain which state's laws apply to them, when they may have been granted RSUs while in California that did not vest until they moved to New York, or vice versa. Finally, Apple is entitled to offset damages for roughly 90% of people, to whom Apple voluntarily paid a premium rate for holiday work. *Id.* ¶ 14; *see* 29 U.S.C. § 207(h) (certain premiums are "creditable toward overtime"). "[T]allying [these] credits . . . would be fact-intensive and specific to each

21

individual's employment history." *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 559 (C.D. Cal. 2011).

These examples not only illuminate the fundamental flaws with Plaintiffs' entire case theory, but show that there is no single damages model that can handle a theory this complicated and convoluted, and that potential overtime payments could vary widely between individuals based solely on when their RSUs vested and not based on their hours worked, performance, or duties. Plaintiffs' failure to set forth the "method or methods by which [they] propose to use the [classwide] evidence to prove the common question in one stroke" dooms their request for certification. *Olean*, 31 F.4th at 666. Without a feasible damages methodology, Plaintiffs "cannot show Rule 23(b)(3) predominance." *Comcast*, 569 U.S. at 35; *see also Smith v. Ceva Logistics U.S., Inc.*, 2011 WL 3204682, at *6 (C.D. Cal. July 25, 2021) ("Because plaintiff has failed to establish a classwide method of proof, the Court DENIES plaintiff's renewed motion for class certification for his off-the-clock claim.").

**C.      The Named Plaintiffs' Claims and Defenses Are Not Typical of the Class**

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs assert simply that the named Plaintiffs' claims are typical because "they are asserting the same claims, under the same policy, and were all injured the same way." Mot. at 16. These bald assertions do not satisfy Plaintiffs' obligation to prove typicality. Plaintiffs "cannot plead or speculate [their] way to class certification," *Miles*, 89 F.4th at 1222, but must provide "evidentiary proof" that they satisfy the elements of Rule 23, *Robbins v. Phillips 66 Co.*, 343 F.R.D. 126, 130 (N.D. Cal. 2022) (quotation marks omitted).

Moreover, "[w]here a defendant may raise a particular defense against the claims of the members of the putative class, but not against the claims of the named plaintiffs, no typicality exists." *Mobile Emergency Housing Corp. v. HP, Inc.*, 2023 WL 9550942, at *5 (N.D. Cal. Dec. 8, 2023); *see also Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (no typicality where defenses applicable to class members are not applicable to named plaintiff); *Rolex Emps. Retirement Tr. v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991) (no typicality where defenses

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

applicable to named plaintiffs are not applicable to others). Plaintiffs' unsupported assertion overlooks key distinctions between the named Plaintiffs and the classes they seek to represent.

*First*, named Plaintiffs Hoffman and McIlravy-Ackert participated in a prior class action settlement against Apple in which they made claims against Apple under California Labor Code Section 226 for inaccurate wage statements. *See* Consolidated Compl. ¶ 58, *Frlekin v. Apple Inc.*, 3:13-cv-3451-WHA (Jan. 9, 2015), at Dkt. 223 (seeking wage statement penalties). As a matter of law, an employee is entitled to only one penalty per inaccurate wage statement—they cannot collect additional penalties for each alleged inaccuracy. *See O'Connor v. Uber Techs. Inc.*, 201 F. Supp. 3d 1110, 1120 (N.D. Cal. 2016), *rev'd on other grounds* 904 F.3d 1087 (9th Cir. 2018); *see also Miska v. Eng'g Automation & Design, Inc.*, 2022 WL 3211745, at *3 (E.D. Cal. Aug. 9, 2022). Accordingly, Hoffman and McIlravy-Ackert have no standing to claim injury in relation to the wage statements for which they were already remunerated. To the extent the other members of the putative class were not subject to this prior agreement, this defense does not apply against them. That defeats typicality.

*Second*, many putative class members have signed separation agreements with Apple under which they have waived any claim against Apple. *See* Robles Decl. ¶ 20; *id.*, Ex. J (Separation Agreements). Where a party has released a given claim, that party cannot then raise that claim in subsequent litigation and expect to prevail. *See Weston v. Cal. Dep't of Corr. & Rehab.*, 2022 WL 17093922, at *1 (E.D. Cal. Nov. 21, 2022) (granting judgment on the pleadings against plaintiff raising claim waived in prior settlement agreement). The named Plaintiffs have not signed separation agreements with Apple and therefore are not subject to the same defense as these putative class members. This makes them atypical representatives of these employees. *Javine v. San Luis Ambulance Serv., Inc.*, 2015 WL 12672090, at *11 (C.D. Cal. Jan. 13, 2015) (named plaintiff atypical because he did not sign liability release agreement and lacked standing to challenge the validity of those agreements on behalf of putative class members who executed a release); *see also Harvey v. Maximum Inc.*, 2016 WL 7256797, at *3 (D. Idaho Dec. 15, 2016) (denying class certification, in part, because named plaintiff's claims were not typical of the class members who signed separation agreements).

Where, as here, "a major focus of the litigation will be on an arguable defense unique to the

23

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO

1    named plaintiff or to a subclass," the typicality requirement is not met.  *Rolex*, 136 F.R.D. at 664.

2         **D.**      **The Named Plaintiffs Are Not Adequate Class Representatives**

3         Finally, the named Plaintiffs must "affirmatively demonstrate with evidentiary proof" that they

4    meet the adequacy requirement.  *Navarro v. ExxonMobil Corp.*, 2022 WL 22248790, at \*9 (N.D. Cal.

5    July 5, 2022) (quotation marks omitted).  Plaintiffs' conclusory statement that the named Plaintiffs

6    "demonstrated adequacy and commitment by actively participating in the case, responding to written

7    discovery, and sitting for their depositions," Mot. at 16, is insufficient to meet their burden.  The

8    evidence shows that they are inadequate to pursue their claims on behalf of others.

9         Courts in this circuit have repeatedly held that class treatment is inappropriate when "plaintiffs'

10   counsel, and not plaintiff, is the driving force behind th[e] action" and when "plaintiff's counsel

11   constructed th[e] lawsuit before it ha[d] a plaintiff."  *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777,

12   at \*2–3 (N.D. Cal. Apr. 25, 2007); *see also, e.g.*, *Navarro*, 2022 WL 22248790, at \*6 (class

13   representative inadequate because he learned of lawsuit when class counsel cold-called him).  It is clear

14   that Plaintiffs' counsel have been in the driver's seat since the inception of this case, having concocted

15   a theory and then gone "in search of a plaintiff."  *Bodner*, 2007 WL 1223777, at \*2–3 (denying motion

16   for class certification where plaintiff's counsel admitted he had researched the functionality of the air

17   purifier at issue and then searched for a plaintiff).  Plaintiffs' counsel found the first named Plaintiff,

18   Francis Costa, through a narrowly tailored LinkedIn message, in which they asked whether he had

19   worked for Apple and "[r]eceived restricted stock unit payments."  Cooney Decl., Ex. 26

20   (COSTA0000001) at COSTA0000001.  After Costa brought an FLSA-only action, named Plaintiffs

21   Hoffman and McIlravy-Ackert were recruited to join the lawsuit so that Plaintiff's counsel could bring

22   class claims under California and New York law.  *See* Dkts. 70, 86.  Both Hoffman and McIlravy-

23   Ackert testified that they were not looking for lawyers or contemplating filing any action.  Instead,

24   McIlravy-Ackert only joined because "[the lawyers] needed another person who worked in California

25   and New York who is still an active employee," Cooney Decl., Ex. 1 (COSTA0001320) at

26   COSTA0001321, while Hoffman had not contemplated joining this lawsuit before being contacted by

27   her counsel, *id.*, Ex. 2 (Hoffman Dep. Tr.) at 92:8–14.

28

Gibson, Dunn &
Crutcher LLP

24

The named Plaintiffs also typify class representatives who "will not serve the necessary role of check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit." *Navarro*, 2022 WL 22248790, at \*6 (quotation marks omitted). Hoffman admitted that she was just doing whatever was "being asked of" her, was not "paying attention" to the lawsuit, "d[id not] have time" for the lawsuit, and had "cut ties" with some of the Apple employees she seeks to represent. Cooney Decl., Ex. 2 (Hoffman Dep. Tr.) at 125:8–16, 176:25–177:10; *see IntegrityMessageBoards.com v. Facebook, Inc.*, 2021 WL 3771785, at \*9 (N.D. Cal. Aug. 24, 2021) (denying class certification where named plaintiff testimony "shows that plaintiff is not sufficiently engaged in monitoring th[e] action"). Hoffman does not even understand the basis of her claims. When asked what the "basis for [her] claims in this litigation" was, she answered that "Apple should have given her [the value of RSUs] in straight cash as opposed to in RSUs," with no mention of overtime or the regular rate of pay. Cooney Decl., Ex. 2 (Hoffman Dep. Tr.) at 154:21–24. Where a named plaintiff's testimony "indicate[s] a[] distressing lack of understanding or familiarity with her claim," she is not an adequate representative. *San Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, 2019 WL 6493978, at \*5 (N.D. Cal. Dec. 3, 2019); *see also McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 612 (S.D. Cal. 2007) (finding class representative inadequate where representative had "little or no supervisory role in the litigation and little knowledge of the underlying facts of the lawsuit").[3] The named Plaintiffs are therefore inadequate class representatives—a separate reason for this Court to deny the motion for class certification.

## V.    CONCLUSION

Apple respectfully requests that the Court deny the motion for class certification. Apple respectfully requests oral argument on this motion in person, if possible.

---

[3] Similarly, numerous putative class members do not understand their claims, calling into question the nature of their involvement. For example, Sears testified that she opted in because she believed she "should have received more RSUs." *See, e.g.*, Cooney Decl. Ex. 12 (Sears Dep. Tr.) at 68:3–69:15.

Gibson, Dunn & Crutcher LLP

1    DATED: October 14, 2024                    Respectfully submitted,

2                                               GIBSON, DUNN & CRUTCHER LLP
                                                THEODORE J. BOUTROUS JR.
3                                               THEANE EVANGELIS
                                                MEGAN COONEY
4                                               CYNTHIA CHEN MCTERNAN

5
                                                By: _/s/ Theane Evangelis_____
6                                                    Theane Evangelis

7
                                                _Attorneys for Defendant Apple Inc._
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO