Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104

Michele R. Fisher, MN State Bar No. 303069*
fisher@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200

Loren B. Donnell, FL State Bar No. 013429*
ldonnell@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Rd. Suite 285
Boca Raton, FL 33431

Michael J. Palitz, NY State Bar No. 278915*
mpalitz@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
477 Madison Ave, 6th Floor
New York, NY 10022

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Francis Costa, Amanda Hoffman, and Olivia McIlravy-Ackert, individually and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>Apple, Inc.,<br><br>          Defendant. | Case No. 3:23-CV-01353-WHO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:  November 13, 2024<br>Time:  2:00 p.m. Pacific<br>Place:  Via Zoom<br>Judge:  Honorable William H. Orrick |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

INTRODUCTION .......................................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................... 1

    I.      Plaintiffs' Theory Supports that Common Issues Predominate ...................................... 1

          A.  The Gift Exclusion from the Regular Rate ............................................................. 2

          B.  The "Other Similar Payments" Exclusion from the Regular Rate ......................... 3

          C.  The Discretionary Bonus Exclusion from the Regular Rate .................................. 4

          D.  The Stock Option, Stock Appreciation Right, and Bona Fide Employee

               Stock Purchase Program Exclusion from the Regular Rate ................................... 5

    II.     Damages Calculations Do Not Defeat Certification ....................................................... 5

    III.    Apple's Defense That a Minority of Class Members it Classified as

           Non-Exempt Might Be Exempt Does Not Preclude Certification ............................... 9

    IV.    Apple's Typicality and Adequacy Arguments Do Not Defeat Certification ............. 12

          A.  The Class Representatives Satisfy the Typicality Requirement .......................... 12

          B.  The Class Representatives Satisfy the Adequacy Requirement ........................... 14

CONCLUSION ............................................................................................................................ 15

ii

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Alvarado v. Dart Container Corp. of California*,

4

    4 Cal. 5th 542 (2018) .................................................................................................. 7, 8

5

*Avilez v. Pinkerton Gov't Servs., Inc.*,

    596 F. App'x 579 (9th Cir. 2015) ................................................................................. 13

6

7

*Banks v. R.C. Bigelow, Inc.*,

    2023 WL 4932894 (C.D. Cal. July 31, 2023) .............................................................. 14

8

*Barnes v. AT & T Pension Benefit Plan*,

9

    270 F.R.D. 488 (N.D. Cal. 2010) ................................................................................. 12

10

*Blair v. Rent-A-Ctr., Inc.*,

11

    2018 WL 5728924 (N.D. Cal. Nov. 1, 2018).............................................................. 14

12

*Bodner v. Oreck Direct, LLC*,

    2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ............................................................ 14

13

*Brown v. Am. Airlines, Inc.*,

14

    285 F.R.D. 546 (C.D. Cal. 2011). ................................................................................. 9

15

*Clarke v. AMN Services, LLC*,

16

    987 F.3d 848 (9th Cir. 2021)......................................................................................... 4

17

*Comcast Corp. v. Behrend*,

    569 U.S. 27 (2013).......................................................................................................... 6

18

19

*Culley v. Lincare Inc.*,

    2017 WL 3284800 (E.D. Cal. Aug. 2, 2017) ............................................................... 4

20

*Dalchau v. Fastaff, LLC*,

21

    2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ............................................................... 1

22

*Falco v. Nissan N. Am. Inc.*,

23

    2016 WL 1327474 (C.D. Cal. Apr. 15, 2016) .............................................................. 6

24

*Featsent v. City of Youngstown*,

    70 F.3d 900 (6th Cir. 1995)............................................................................................ 4

25

*Flores v. City of San Gabriel*,

26

    824 F.3d 890 (9th Cir. 2016).......................................................................................... 3

27

iii

28

*Freeland v. Findlay's Tall Timbers Distrib. Center,* LLC,
    681 F. Supp. 3d 58 (W.D.N.Y. 2023) ................................................................ 4

*Gonzalez v. Diamond Resorts Int'l Marketing, Inc.,*
    2020 WL 2114353 (D. Nev. May 1, 2020) ...................................................... 11

*Haitayan v. 7-Eleven, Inc.,*
    762 Fed. App'x 393 (9th Cir. 2019) ................................................................ 14

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ........................................................................... 12

*Harris v. Best Buy Stores, L.P.,*
    2016 WL 4073327 (N.D. Cal. Aug. 1, 2016) ................................................ 7, 8

*Harvey v. Maximus Inc.,*
    2016 WL 7256797 (D. Idaho Dec. 15, 2016) .................................................. 13

*Herrera v. LCS Fin. Services Corp.,*
    274 F.R.D. 666 (N.D. Cal. 2011) ............................................................... 12, 13

*Hilario v. Allstate Ins. Co.,*
    642 F. Supp. 3d 1048 (N.D. Cal. 2022) ........................................................... 12

*Howell v. Advantage RN, LLC,*
    401 F. Supp. 3d 1078 (S.D. Cal. 2019) ............................................................. 4

*Hubbard v. RCM Tech. (USA), Inc.,*
    2020 WL 6149694 (N.D. Cal. Oct. 20, 2020) ................................................. 13

*In re Worlds of Wonder Sec. Litig.,*
    1990 WL 61951 (N.D. Cal. Mar. 23, 1990) ..................................................... 15

*In re Zillow Grp., Inc. Sec. Litig.,*
    2020 WL 6318692 (W.D. Wash. Oct. 28, 2020) ............................................. 15

*Javine v. San Luis Ambulance Serv., Inc.,*
    2015 WL 12672090 (C.D. Cal. Jan. 13, 2015) ................................................ 13

*Kneuss v. Advanced Clinical Employment Staffing, LLC,*
    564 F. Supp. 3d 1150 (N.D. Ala. 2021) ............................................................. 4

*Leyva v. Medline Indus. Inc.,*
    716 F.3d 510 (9th Cir. 2013) ............................................................................. 6

*Lytle v. Nutramax Labs., Inc.,*
    114 F.4th 1011 (9th Cir. 2024) ............................................................... 1, 6, 10

iv

*McGrath v. City of Somerville*,
    419 F. Supp. 3d 233 (D. Mass. 2019) ................................................................ 4

*Minns v. Advanced Clinical Employment Staffing LLC*,
    2015 WL 3491505 (N.D. Cal. June 2, 2015) ................................................. 7, 8

*Mobile Emer. Hous. Corp. v. HP, Inc.*,
    2023 WL 9550942 (N.D. Cal. Dec. 8, 2023) .................................................. 13

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    311 F.R.D. 590 (C.D. Cal. 2015) ............................................................. 10, 11

*Navarro v. Exxonmobil Corp.*,
    2022 WL 22248790 (C.D. Cal. July 5, 2022) ............................................... 14

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ................................................................. 13

*O'Brien v. Town of Agawam*,
    350 F.3d 279 (1st Cir. 2003) .......................................................................... 4

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ..................................................................... 6, 7

*Ortiz v. Amazon.com LLC*,
    2022 WL 1598968 (N.D. Cal. May 20, 2022) .............................................. 11

*Otsuka v. Polo Ralph Lauren Corp.*,
    251 F.R.D. 439 (N.D. Cal. 2008) ................................................................. 10

*Pietrzycki v. Heights Tower Service, Inc.*,
    290 F. Supp. 3d 822 (N.D. Il. 2017) ............................................................. 3

*Rodman v. Safeway, Inc.*,
    2015 WL 2265972 (N.D. Cal. May 14, 2015) .......................................... 7, 11

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,
    136 F.R.D. 658 (D. Or. 1991) ............................................................... 12, 14

*Rushing v. Williams-Sonoma, Inc.*,
    2024 WL 779601 (N.D. Cal. Feb. 21, 2024) ................................................ 14

*Ruiz v. XPO Last Mile, Inc.*,
    2016 WL 4515859 (S.D. Cal. Feb. 1, 2026) ................................................ 11

*Schroeder v. Envoy Air, Inc.*,
    2017 WL 3835804 (C.D. Cal. Aug. 30, 2017) ............................................... 4

v

*Silloway v. City and County of San Francisco,*
 117 F.4th 1070 (9th Cir. 2024) ..................................................................................... 10

*Siino v. Foresters Life Ins. & Annuity Co.,*
 340 F.R.D. 157 (N.D. Cal 2022) .......................................................................... 6, 11, 12

*Smith v. Ceva Logistics U.S., Inc.,*
 2011 WL 3204682 (C.D. Cal. July 25, 2011) .................................................................... 7

*Story Parchment Co. v. Paterson Parchment Paper Co.,*
 282 U.S. 555 (1931) ........................................................................................................... 8

*Ulin v. ALAEA-72, Inc.,*
 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) ..................................................................... 8

*Vaquero v. Ashley Furniture Industries, Inc.,*
 824 F.3d 1150 (9th Cir. 2016) ........................................................................................... 6

*Vire v. Entergy Ops., Inc.,*
 2016 WL 10575139 (E.D. Ark. Oct. 30, 2016) ................................................................ 4

*Weston v. California Dep't of Corrections and Rehab.,*
 2022 WL 17093922 (E.D. Cal. Nov. 21, 2022) .............................................................. 13

*Wheeler v. Hampton Tp.,*
 399 F.3d 238 (3d Cir. 2005) .............................................................................................. 4

*White v. Symetra Assigned Benefits Service Co.,*
 104 F.4th 1182 (9th Cir. 2024) ....................................................................................... 11

*Woods v. Vector Marketing Corp.,*
 2015 WL 5188682 (N.D. Cal. Sept. 4, 2015) ................................................................. 14

*Yost v. First Horizon Nat. Corp.,*
 2011 WL 2182262 (W.D. Tenn. June 3, 2011) ............................................................... 14

Federal Statutes

26 U.S.C. § 423(b)(6) ................................................................................................................ 5

29 U.S.C. § 207 .............................................................................................................. 2, 3, 4, 5

Regulations

29 C.F.R. § 778.208 .............................................................................................................. 7, 8

vi

29 C.F. R. § 778.209 ................................................................................... 7, 8

29 C.F.R. § 778.211 ....................................................................................... 4

29 C.F.R. § 778.212 ..................................................................................... 2, 3

29 C.F.R. § 778.224 ....................................................................................... 3

Rules

Fed. R. Civ. P. 23 ........................................................................................ 11

State Law

Cal. Labor Code § 510 .................................................................................. 1

Cal. Labor Code § 1194 ................................................................................ 1

Cal. Labor Code § 1198 ................................................................................ 1

Cal. Wage Order 4 ........................................................................................ 1

12 NYCRR § 142–2.2 ................................................................................... 1

NYLL, Art. 19, § 650 .................................................................................... 1

Other

Wage & Hour Div. Op. Ltr., 2020 WL 1640073 (Mar. 26, 2020) .................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

While Apple concedes that a common policy exists, its omission of RSU remuneration from all class members' overtime rate, Apple points to its defenses to unconvincingly assert that individualized issues predominate over the other important commonalities the class shares. First, it mischaracterizes Plaintiffs' theory and the evidence upon which Plaintiffs rely. Second, Apple says that because it asserts that some class members might be exempt, even though it classified them as non-exempt, predominance is defeated. Third, it incorrectly contends that Plaintiffs must present a damages model at this stage explaining precisely how damages will be calculated, when no such requirement exists. And fourth, Apple takes aim at the class representatives unsuccessfully contending that they do not meet the typicality and adequacy requirements for certification. Plaintiffs establish that common aggregation-enabling issues relevant to the class claims are more prevalent and important than the issues Apple raises. Plaintiffs' motion should be granted.

**LEGAL ARGUMENT**

**I.      Plaintiffs' Theory Supports that Common Issues Predominate**

"Predominance under Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Dalchau v. Fastaff, LLC*, 2018 WL 1709925, at *10 (N.D. Cal. Apr. 9, 2018) (citation omitted). The predominance inquiry "'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) (citation omitted). The court must evaluate "'the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove' the common questions in one stroke." *Id.* (citations omitted).

The gravamen of this action is whether Apple's policy of omitting vested RSU remuneration from the regular rate violates California (Cal. Labor Code §§ 510, 1194, 1198, and Cal. Wage Order 4) and New York overtime law (12 NYCRR. §142–2.2 and NYLL, Art. 19, § 650). (*See* 3d Am.

1

Compl. 17–18, 21–22, Dkt. 86.)[1] The "regular rate" under California and New York law includes "all remuneration for employment," subject to the same limited exclusions in the Fair Labor Standards Act (FLSA). (Pls.' Mem. 9, Dkt. 299.) The regular rate issue is dispositive and predominates because if the Court finds that Apple meets its burden, the case is over, and if Apple loses, other common questions follow, such as whether Apple can prove that it acted in good faith to avoid liquidated damages for FLSA and New York class members, whether Apple's actions were willful or intentional under the FLSA and California law, the appropriate method of calculating damages under the law for all class members, and whether California class members prevail on their derivative claims that provide for additional damages/penalties. (*See id.* 8.) Ignoring that these common questions drive resolution, Apple attempts to avoid certification by misconstruing what the law requires to prove that a regular rate exclusion applies[2] and by mischaracterizing the evidence upon which the Court will rely.

### A.        The Gift Exclusion from the Regular Rate

Section 207(e)(1) allows exclusion for: "Sums paid as gifts; payment in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amount of which are not measured by or dependent on hours worked, production, or efficiency." 29 U.S.C. § 207(e)(1). The Court will decide whether this exclusion applies based on the undisputed nature of RSUs—namely that once Apple awards (promises) them annually, they are subject to a contract that requires that the employee actively continue working hours for Apple until the shares vest to receive them. "Obviously, if the bonus is paid pursuant to contract (so that the employee has a legal right to the payment and could bring suit to enforce it), it is not in the nature of a gift." 29 C.F.R. §

---

[1] Plaintiffs contend that the dividends (Apple calls them "dividend equivalents") paid on RSUs at vesting are RSU remuneration, which Plaintiffs referred to throughout the Complaint as "vested RSU compensation." (*See, e.g.*, 3d. Am. Compl. ¶¶ 41, 45, 49, 50, 114, Dkt. 86.) Plaintiffs' PAGA notice also refers to "vested RSU compensation." (Dkt. 86–4.) It is undisputed that Apple pays them when RSUs vest. (Pls.' Mem. 5, Dkt. 299; What to Know, Dkt. 298–9; Dividends and Dividend Equivalents pp. 1–2, Dkt. 326–17.) This is not a new theory and is no surprise. (*See, e.g.*, 6/18/24 Dispute Ltr. 1, Dkt. 276 ("RSU remuneration includes vested RSUs and the dividends.").)
[2] In Apple's discovery responses, it asserts four exclusions. (Def.'s 3d Supp. Resp. to Irrogs. (Set 1) p. 52 (citing 29 U.S.C. §§ 207(e)(1), (2), (3), (8)), Dkt. 298–5.) In its opposition, Apple only refers to sections 207(e)(1), and (2). (Def.'s Opp'n 17.)

2

778.212(b); *see* 29 C.F.R. § 778.212(c). Individualized evidence of what class members did with the money, and their understanding of RSUs based on what managers told them, has no bearing on whether RSUs qualify for exclusion. Similarly, Plaintiffs do not, as Apple contends, advance those arguments as evidence the Court should consider. As Apple concedes, "managers do not administer the Apple Employee Stock Plan and the terms and conditions of RSU awards are established by the relevant Apple Employee Stock Plan and RSU Award Agreements. . . ." (Def.s' Mem. for Decert., 14, Dkt. 331; Def.'s Opp'n 15 (stating that managers "do not administer the program.").)

### B.    The "Other Similar Payments" Exclusion from the Regular Rate

Section 207(e)(2) provides exclusion for non-working time, reimbursements, and similar payments. *See* 29 U.S.C. § 207(e)(2). "Other similar payments" means they must be similar in character to those specifically described in section 207(e)(2) and the "clause was not intended to permit the exclusion from the regular rate of payments such as most bonuses. . . though not directly attributable to any particular hours of work." 29 C.F.R. § 778.224. As the Ninth Circuit reasoned, if payments did not have to be similar to the others specified, employers could assert that *all* lump sum payments fall outside the regular rate, obliterating the qualifications and limitations in the other delineated exclusions and making those subsections superfluous. *Flores v. City of San Gabriel*, 824 F.3d 890, 900 (9th Cir. 2016). This is exactly what Apple seeks to do by ignoring the "similar" requirement and claiming that RSUs qualify for exclusion because they supposedly are not compensation for hours of employment. Because RSU remuneration is not payment for non-working time or expense reimbursements, they are not "similar" to qualify for the exclusion. *See Pietrzycki v. Heights Tower Service, Inc.*, 290 F. Supp. 3d 822, 842 (N.D. Il. 2017) (rejecting that "other similar payments" applies to remuneration that is not similar to non-working time or reimbursement payments). And like with the gift exclusion, the Court will look at the nature of Apple's RSUs program[3] to determine whether it constitutes payment for non-working time,

---

[3] Setting aside Apple's mischaracterization of evidence Plaintiffs present, it does not assert that individualized evidence matters to prove its defense. It advances that this can be decided based on its RSU plan, as Apple contends that RSUs are facially *not* compensation. (Def.'s Opp'n 15.)

1   reimbursements, or "similar" things, and not assess Plaintiffs' perceptions of whether RSUs meet

2   some legal definition of "compensation" for a subsection that cannot apply.[4]

3           **C.**        **The Discretionary Bonus Exclusion from the Regular Rate**

4           Section 207(e)(3), sometimes referred to as the discretionary bonus exclusion, requires

5   more than just discretion. *See* 29 U.S.C. § 207(e)(3); 29 C.F.R. § 778.211(a). "A bonus is

6   discretionary, and therefore excludable, if the employer retains discretion as to both the fact of

7   payment and the amount 'until a time quite close to the end of the period for which the bonus is

8   paid.'" *Freeland v. Findlay's Tall Timbers Distrib. Center,* LLC, 681 F. Supp. 3d 58, 66

9   (W.D.N.Y. 2023). "Bonuses 'announced to employees to induce them to . . . remain with the firm

10  are regarded as part of the regular rate of pay." *Id.*; 29 C.F.R. § 778.211(c). A written agreement

11  to provide Plaintiffs stock but only after certain contractual obligations are met, precludes Apple

12  from establishing that RSU remuneration qualifies for exclusion. *See, e.g.*, *Wheeler v. Hampton*

13  *Tp.*, 399 F.3d 238, 247–48 n.12 (3d Cir. 2005); *O'Brien v. Town of Agawam*, 350 F.3d 279, 295–

14  96 (1st Cir. 2003); *Featsent v. City of Youngstown*, 70 F.3d 900, 906 (6th Cir. 1995); *Kneuss v.*

15  *Advanced Clinical Employment Staffing, LLC*, 564 F. Supp. 3d 1150, 1156 (N.D. Ala. 2021);

16  *McGrath v. City of Somerville*, 419 F. Supp. 3d 233, 253 (D. Mass. 2019); *Howell v. Advantage*

17  *RN, LLC*, 401 F. Supp. 3d 1078, 1092–93 (S.D. Cal. 2019); *see also Clarke v. AMN Services, LLC*,

18  987 F.3d 848, 857 (9th Cir. 2021); Wage & Hour Op. Ltr., 2020 WL 1640073 (Mar. 26, 2020).

19          The Court will analyze whether this exclusion applies based on undisputed evidence of

20  Apple's RSU program. *See Schroeder v. Envoy Air, Inc.*, 2017 WL 3835804, at *5–6 (C.D. Cal.

21  Aug. 30, 2017) (individual issues are unlikely to affect whether bonus should be included in regular

22  rate). While Apple makes it sound like discretion alone as to whether to provide RSU awards is

23  sufficient, this is misleading not only because an employer often has some discretion as to bonuses

24

---

25  [4] Apple cites *Culley v. Lincare Inc.*, 2017 WL 3284800 (E.D. Cal. Aug. 2, 2017) to support that the

26  Court will consider each class member's understanding of RSUs under "Plaintiffs' theory." (Def.'s Opp'n 2, 16.) However, Plaintiffs do not advance that their perceptions are evidence that the

27  exclusions do not apply. *Culley* is distinguishable because the bonus plan was ambiguous. *Id.* at *5–6. *Vire v. Entergy Ops., Inc.*, is distinguishable as the quote Apple includes refers to non-

28  contractual payments. 2016 WL 10575139, at *5 (E.D. Ark. Oct. 30, 2016).

4

_____
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION 3:23-CV-01353-WHO

it decides to provide, but because the exclusion requires more. *See* 29 U.S.C. § 207(e)(3). As stated, for the bonus to be discretionary Apple must retain discretion as to payment until near the end of the period it covers and not pursuant to any prior contract, agreement or promise. *Id.* The undisputed evidence is that once Apple promises the shares through an RSU award, Apple is contractually required to issue those shares once the employee continues employment through the vesting date. Apple does not retain discretion to change its mind, particularly if the employee fulfills the continued service obligation. No individualized analysis is needed.

### D.    The Stock Option, Stock Appreciation Right, and Bona Fide Employee Stock Purchase Program Exclusion from the Regular Rate

Apple's opposition neglects section 207(e)(8), which allows exclusion when requirements are met for three specific stock programs (not present here): "employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, and bona fide employee stock purchase program. . . .", all of which share a common feature—they are not given to employees for free like Apple RSUs. In fact, the statute provides that the stock's exercise price must be at least 85% of the fair market value at the time of grant. *See* 29 U.S.C. § 207(e)(8)(ii) (85% requirement must be met for stock options and stock appreciation rights); 26 U.S.C. § 423(b)(6) (tax code reflecting that employee stock purchase plans have the 85% requirement). The Court will decide the common question of whether Apple can meet its burden of proving that RSUs, for which employees pay nothing, qualify for this exclusion that says nothing about RSUs.

## II.    Damages Calculations Do Not Defeat Certification

Apple contends that the Court cannot certify the class because "Plaintiffs do not even attempt to provide a damages model" and that it is not enough that Plaintiffs explain that "damages will be calculated using objective data Apple maintains for all employees, including payroll and time records, and RSU records reflecting number of shares, grant and vesting dates, and share value at vesting." (Def.'s Opp'n 20.) It submits that certification must be denied because Plaintiffs "put forth no expert to explain *how* exactly those calculations will be done." (*Id.*) Apple's arguments fail.

Apple cites *Comcast Corp. v. Behrend* for the general proposition that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)" but then goes further to infer that Plaintiffs cannot prevail on certification unless they proffer a damages model. (*Id.* (citing 569 U.S. 27, 35 (2013).) *Comcast* does not go that far. The Ninth Circuit in *Leyva v. Medline Indus. Inc.*, addressed *Comcast's* application in a wage and hour case, explaining, that while "[i]t is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability," "individualized damages cannot, by itself defeat class certification under Rule 23(b)(3)." 716 F.3d 510, 514 (9th Cir. 2013). The Ninth Circuit distinguished *Leyva* from *Comcast*, explaining that once the wage and hour class proves liability, damages and related penalties will be calculated based on wages each employee lost due to those unlawful practices using computerized payroll and timekeeping data. *Id.*

Moreover, *Lytle* does not mandate a damages model for class certification. (Def.'s Opp'n 20 (citing 114 F.4th at 1019).) While *Lytle* involved a consumer case with different proof for liability and damages than here, it is instructive because the Ninth Circuit explained that plaintiffs must simply make a showing that "damages *could* be calculated on a classwide basis, even where such calculations have not been performed." *Id.* at 1024–25 (clarifying that the holding in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), provides that plaintiffs must "'establish[] that damages are *capable* of measurement on a classwide basis'", and not that they must "actually prove their case through common proof at the class certification stage."). Here, unlike the cases Apple cites, liability will be decided on common evidence and once liability is found damages will be calculated on objective data.[5] *See Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1154–55 (9th Cir. 2016) (unlike in an antitrust case like *Comcast*, the employer's actions in a wage case caused the injury, and while the measure of damages might be imperfect, it cannot be disputed that damages stemmed from those actions).

---

[5] *Siino v. Foresters Life Ins. & Annuity Co.* was a consumer case that depended on individualized factors that plaintiffs offered no viable way to address. 340 F.R.D. 157 (N.D. Cal 2022). *Falco v. Nissan N. Am. Inc.* was a consumer case where plaintiffs used an expert to describe the model but does not say that it is required. 2016 WL 1327474, at *12 (C.D. Cal. Apr. 15, 2016).

1  Apple cites no authority for its position that Plaintiffs must provide the level of detail it is

2  demanding. On the contrary, courts routinely certify without it. (*See generally* Pls.' Mem. 12–13,

3  Dkt. 299.)[6]

4      Regardless, once Apple produces the data it promised, Plaintiffs will calculate class

5  members' damages according to California and New York law. They will use pay, time, and RSU

6  records. Plaintiffs will also use information from Apple, such as class member dates and locations

7  of employment in non-exempt and exempt classified positions. (Fisher Decl. ¶ 2.); *see Minns v.*

8  *Advanced Clinical Employment Staffing LLC,* 2015 WL 3491505, at *8 (N.D. Cal. June 2, 2015).[7]

9  This calculation is not as difficult as Apple suggests and is no different in concept than a

10  calculation to include other non-discretionary bonuses. *See, e.g.*, *Alvarado v. Dart Container Corp.*

11  *of California*, 4 Cal. 5th 542, 547 (2018) (describing how regular rate overtime true up payment

12  for non-discretionary bonus must be calculated under California law); 29 C.F.R. §§ 778.208,

13  778.209 (discussing how to perform true up calculation under the FLSA, which New York law

14  follows); *Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327, at *3 (N.D. Cal. Aug. 1, 2016)

15  (explaining that bonuses that do not qualify for exclusion under the FLSA must be totaled with

16  regular earnings to determine regular rate on which overtime must be based and apportioned back

17  over the workweeks of the period during which they were earned). Plaintiffs have described how

18  damages can be calculated on a class wide basis. *See generally Rodman v. Safeway, Inc.*, 2015 WL

19  2265972, at *4 (N.D. Cal. May 14, 2015) (rejecting argument that plaintiffs had not proposed a

20  damages model, where plaintiffs simply explained in consumer case that damages are the

21  difference between the prices charged in stores versus online). Several courts have certified actions

22

23  ───────────────

24  [6] While *Olean*, says that the "determination whether expert evidence is capable of resolving a class-wide question in one stroke may include '[w]eighing conflicting expert testimony' and '[r]resolving

25  expert disputes,' where necessary" it does not say that Plaintiffs must present expert testimony or provide more details about their methodology than they already provided, or their case is "doomed"

26  as Apple suggests. 31 F.4th at 666; (Def.'s Opp'n 22). The holding in *Smith v. Ceva Logistics U.S., Inc.*, has no relevance because it involved off-the-clock claims where there was no reliable data to

27  prove damages. 2011 WL 3204682, at *5 (C.D. Cal. July 25, 2011).
[7] Apple said that it would try to complete production of damages data for the FLSA Plaintiffs in

28  September and October 2024, but its production is not close to complete. (Fisher Decl. ¶ 2.)

1    where damages are calculated based on lost wages. *See Minns,* 2015 WL 3491505, at *9 (citing

2    cases).

3        Apple's proffered expert, Valentin Estevez, Ph.D. (Estevez) [8] points out a few scenarios to

4    incorrectly suggest that a class wide calculation is "nearly impossible." (Report. pp. 8–10, Dkt.

5    330–4.)[9] First, he mentions that some class members moved between exempt and non-exempt

6    classified roles. (*Id.* ¶ 14.) He submits that Plaintiffs have not explained how they intend to account

7    for hours worked in positions classified as exempt (if at all). (*Id.*) Plaintiffs allege that the RSU

8    remuneration overtime true up payment is required for overtime hours recorded when class

9    members were classified as non-exempt. The regular rate calculation will use Apple's data for

10   each class member to calculate damages consistent with the law. *See, e.g., Alvarado,* 4 Cal. 5th at

11   547 (total non-overtime hours recorded divisor and applicable 1.5 or 2.0 multiplier); 29 C.F.R. §§

12   778.208 and 778.209 (total of all hours recorded divisor and .5 multiplier); *Harris,* 2016 WL

13   4073327, at *3. If Apple did not maintain hours worked for exempt periods that might occur during

14   vesting periods for some class members, Plaintiffs are permitted to calculate damages as a matter

15   of just and reasonable inference. *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S.

16   555, 562 (1931); *see Ulin v. ALAEA-72, Inc.,* 2011 WL 723617, at *12–14 (N.D. Cal. Feb. 23,

17   2011) (discussing just and reasonable inference permitted by Supreme Court, and how to calculate

18   regular rate damages under the FLSA and California law). Estevez also faults Plaintiffs for not

19   explaining how the issue of whether a class member worked in an exempt or non-exempt position

20   *when* the RSUs are awarded (promised) and/or vested impacts the calculation. (Report ¶ 15, Dkt.

21   330–4.) He infers that it matters but does not explain why or cite authority. (*Id.*) What matters is

22   that once RSU remuneration vests, if Apple's records reflect that the class member recorded

23   overtime hours while classified as non-exempt at any time during the vesting period, overtime

24   damages should be calculated for those overtime hours.

25

26

_____

27   [8] On October 14, 2024, Apple disclosed Estevez when filing its opposition. (Fisher Decl. ¶ 6.)
     [9] Estevez does not say that his questions about purported difficulties are based on law. Instead, he
28   speculates about how Plaintiffs are going to address scenarios that do not matter.

8

Next, Estevez mentions location changes, such as which state's law applies when RSU awards are granted in one state and vest in another. (*Id.* ¶¶ 14–15.) The calculations do not depend on where class members worked at the time of award or at vesting. Plaintiffs intend to calculate the overtime true up payment according to the law that applies during periods when the overtime hours were recorded. While Apple has not yet produced data to show the extent to which California and New York class members were working overtime inside and outside of those states during the vesting periods, Plaintiffs do not anticipate problems calculating it, as Apple agreed to provide the date and location of each position in which class members worked.

Last, Estevez says that Plaintiffs have not disclosed how to incorporate holiday pay offsets. While this defense is Apple's burden, Plaintiffs described how an offset, if applicable, should be calculated using the data. (Pls.' Mem. 11, Dkt. 299; Fisher Decl. ¶ 3 (holiday pay/hours appear on Earnings Statements, so if Apple wants damages reduced by it, it must produce the data).[10]

In sum, Estevez does not opine that damages *cannot* be calculated on a classwide basis; he says that there are "no grounds on which [he] could conclude that Plaintiffs' calculation methodology is analytically sound or that it could be applied systematically on a class-wide basis because none has been disclosed." (Report. ¶ 19, Dkt. 330–4.) To the contrary, Plaintiffs have sufficiently established that damages, just like in other regular rate cases, can be calculated classwide once Apple provides the data.

## III. Apple's Defense That a Minority of Class Members it Classified as Non-Exempt Might Be Exempt Does Not Preclude Certification

Despite substantial evidence of factual and legal similarities that are material to resolving the primary issue in this case, Apple contends that potential factual and legal dissimilarities for the minority of putative class members for whom it might assert the computer exemption defense prevents certification. However, in cases like this one, where common factual and legal similarities

---

[10] *Brown v. Am. Airlines, Inc.*, is not persuasive. 285 F.R.D. 546, 559 (C.D. Cal. 2011). The court found that the plaintiff was not an adequate representative because of an unrelated conflict and then summarily concluded that offsets would involve a fact intensive tallying of credits with no mention of whether there was data for doing so. *Id.*

9

1    that are material to resolution are more prevalent or important than the non-common, aggregation-

2    defeating individual issues, class certification should not be defeated. *Lytle*, 114 F.4th at 1023.

3        Apple classified all class members as non-exempt/overtime eligible, paid them overtime

4    premium pay when they worked overtime, but failed to include RSU remuneration when calculating

5    the overtime pay rate. Apple asserts that to the extent the Court finds that it miscalculated their

6    overtime, *some* Plaintiffs cannot collect damages because they might be exempt under one sole

7    exemption—the computer exemption.[11] Even if Apple is correct that some class members might be

8    exempt (which Plaintiffs do not concede), it is not a "key threshold question" as Apple claims.

9    (Def.'s Opp'n 10, 15.) This defense is only alleged for a fraction of the class and its applicability

10    will only be determined *after* the Court decides the primary common legal issues that will resolve

11    most class members' claims. *See Silloway v. City and County of San Francisco*, 117 F.4th 1070,

12    1076, (9th Cir. 2024); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 619

13    (C.D. Cal. 2015) (individual questions will arise for some people related to certain defenses, if at

14    all, *only after* significant common questions of law and fact have been answered.); *Otsuka v. Polo*

15    *Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (same).

16        Further, of the 442 job titles that Apple identified that are included in the class definition,

17    Apple only contends that a fraction of them (36) are potentially exempt.[12] (Fisher Decl. ¶ 4; Def.'s

18    3d Supp. Resp. to Irrogs. (Set 1) pp. 10–18, Dkt. 298–5; Def.'s 5th Supp. Resp. to Irrogs. (Set 1)

19    pp. 74–75, Dkt. 326–14.) While Apple does not disclose how many *eligible* putative class members

20    might potentially be impacted by this defense,[13] discovery related to the FLSA collective revealed

21    _____

22    [11] Despite Apple's assertion that these positions might now be exempt, the fact that Apple paid all
     class members hourly limits its exemption choices. *See* 29 C.F.R. § 541.0 (salary required for white

23    collar exemptions); (Thomas Dep. 58:16–59:1, Dkt. 298–4.)

24    [12] Apple did not disclose most of these positions until the day it filed its FLSA decertification
     motion. (Fisher Decl. ¶ 4). It keeps revising its list of jobs it might claim are exempt. (*Compare*
     Def.'s 3d Supp. Resp. to Irrogs. (Set 1) p. 53, Dkt. 298–5 *and* Def.'s 5th Supp. Resp. to Irrogs.

25    (Set 1) pp. 74–75, Dkt. 326–14.) On July 3, 2024, Plaintiffs served requests for production related
     to Apple's exemption defense, and while Apple produced some job descriptions in October 2024,

26    its production related to this defense is still incomplete. (Fisher Decl. ¶ 4.)

27    [13] Rather than disclosing how many putative *class members* worked in those positions, Apple
     proffers that because Apple *currently* has 782 employees working in them that it is "likely hundreds

28    did so within the four and six-year putative class periods." (Def.'s Opp'n 12.) This is misleading

that it only impacts 1.7% of the non-arbitration FLSA Plaintiffs (most of whom also worked periods in other positions for which Apple is not claiming an exemption). (Pls.' Opp'n Decert. 8, Dkt. 338.) In other words, the Court can dispose of the regular rate question, the common issue that *does* exist for everyone, for *most* Plaintiffs without even getting to Apple's exemption defense. *See Gonzalez v. Diamond Resorts Int'l Marketing, Inc.*, 2020 WL 2114353, at *5 (D. Nev. May 1, 2020) (where employer classified employees as non-exempt, defense that some might be exempt did not defeat certification).[14] "[C]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Ruiz v. XPO Last Mile, Inc.*, 2016 WL 4515859, at *11 (S.D. Cal. Feb. 1, 2026) (citing *Rodman*, 2015 WL 2265972, at *3). "If, at any stage in the class litigation, it becomes clear that 'an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms,' such as placing 'class members with potentially barred claims in a separate subclass.'" *Id.* at *11 (citation omitted).[15]

Once discovery is complete related to Apple's defense, Plaintiffs propose that the parties confer about whether summary judgment on the exemption defense should occur at the same time as the regular rate issue or later. *See Moore*, 311 F.R.D. at 624 (describing ability to structure case in phases where liability is determined first, and individualized defenses second). After the Court's ruling on the regular rate claim is also a logical time to discuss whether certification remains feasible for people who worked in positions Apple might claim are exempt. *See generally Siino*, 340 F.R.D.

---

as Apple appears to include arbitration plaintiffs (who are excluded from the proposed class) and employees who do not otherwise meet the class definition (e.g., they did not work overtime during an RSU remuneration vesting period in a non-exempt position).

[14] The cases Apple cites to assert that an exemption involves an individualized analysis of duties are distinguishable because they did not involve a regular rate claim—a claim here that will drive resolution of most class members' claims. (Def.'s Opp'n 11.) While Apple cites *Ortiz v. Amazon.com LLC*, 2022 WL 1598968 (N.D. Cal. May 20, 2022) for the point that individual cases are time consuming, it ignores that the claims of most class members can be resolved with common evidence despite Apple's exemption defense.

[15] Apple's contention that there are differences between New York and California law for the computer exemption does not defeat certification, as the Court can later create subclasses if needed. Fed. R. Civ. P. 23(c)(5) or 23(c)(4). *White v. Symetra Assigned Benefits Serv. Co.* is a RICO case that does not counsel against subclasses here as it involved issues of causation under state law that predominated. 104 F.4th 1182, 1192 (9th Cir. 2024). No causation problem exists.

at 163 (explaining that plaintiffs do not need to show that each class member will succeed, just that a common question permeates the liability question for the class as a whole).

## IV.    Apple's Typicality and Adequacy Arguments Do Not Defeat Certification

### A.    The Class Representatives Satisfy the Typicality Requirement

Apple makes two arguments that Hoffman and McIlravy-Ackert are atypical to the class. First, it asserts they were part of a settlement (*Frlekin v. Apple Inc.*) that resolved a wage statement claim for which they purportedly cannot recover additional damages, and that some class members may not have resolved such claims. Second, Apple claims that because some class members signed separation agreements and Hoffman and McIlravy-Ackert did not, they are not typical to these class members. Neither defeats typicality. "[D]efenses that may bar recovery for some members of the putative class, but that are not applicable to the class representative do not render a class representative atypical under Rule 23." *Barnes v. AT & T Pension Benefit Plan*, 270 F.R.D. 488, 494 (N.D. Cal. 2010); *see Herrera v. LCS Fin. Services Corp.*, 274 F.R.D. 666, 678, 681 (N.D. Cal. 2011) (unique defenses will not disturb typicality if not central to litigation). "This is so because Rule 23(a)(3) is primarily concerned with ensuring that there is no 'danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to [him].'" *Barnes*, 270 F.R.D. at 494 (quoting *Hanon*) (brackets in original). Those unique defenses can however defeat typicality if they "threaten to become the focus of the litigation." *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *see also Hilario v. Allstate Ins. Co.*, 642 F. Supp. 3d 1048, 1061–62 (N.D. Cal. 2022).[16]

The *Frlekin* settlement that Apple contends released Hoffman and McIlravy-Ackert's wage statement claim, only released class member claims through December 31, 2015. (*See* Order ¶ 14, 3:13-cv-3451 (N.D. Cal.), Dkt. 474.) Both worked for years afterwards accruing additional wage

---

[16] Apple cites *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, a case involving a fraud on the market claim, to support that typicality is not present if "a major focus will be on an arguable defense unique to the named plaintiff or to a subclass." 136 F.R.D. 658, 664 (D. Or. 1991). However, it involved facts specific to the named plaintiff that would rebut a reliance theory and had nothing to do with a release. *Id.*

12

1  statement violations. (*See* Pls.' Mem. 3 (dates of employment), Dkt. 299.) Hoffman and McIlravy-

2  Ackert have suffered wage statement violations that have not been redressed and have standing.

3      The fact that the class representatives did not sign separation agreements and others did,

4  should not defeat certification. *Herrera* is instructive and refutes Apple's claim that merely because

5  some class members may have signed releases, and the class representatives did not, that the class

6  representatives' claims are not typical. 274 F.R.D. at 681.[17] In *Herrera*, the defendant opposed class

7  certification by claiming it intended to "raise various defenses" including "release of claims" with

8  respect to some class members. 274 F.R.D. at 681. Rejecting this position, the court held: "[t]he

9  fact that some members of a putative class may have . . . released claims against a defendant does

10  not bar class certification" and merely because putative class members may be subject to varied

11  defenses, including releases of liability, was not a basis to deny class certification. *Id.*; *see Nitsch*

12  *v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 285 (N.D. Cal. 2016) (same). While the court

13  in *Javine v. San Luis Ambulance Serv., Inc*. found otherwise, it relied heavily on the fact that all but

14  a handful of putative class members signed releases and those releases required arbitration of future

15  claims, which is not the case here. 2015 WL 12672090, at *8 (C.D. Cal. Jan. 13, 2015).[18]

16      Hoffman and McIlravy-Ackert can fairly and adequately represent the class. They have the

17  same injury as the class from the same course of conduct and the release affects only a minority of

18  the class and therefore will not be a "major focus of the litigation." *Hubbard v. RCM Tech. (USA),*

19

20  [17] *Weston v. California Dep't of Corrections and Rehab.*, is of no persuasive value because the
   court simply dismissed a pro se plaintiff's case who signed a release. 2022 WL 17093922, at *1

21  (E.D. Cal. Nov. 21, 2022)

22  [18] *Harvey v. Maximus Inc*. is distinguishable for the same reason. 2016 WL 7256797, at *3 (D.
   Idaho Dec. 15, 2016). *Mobile Emer. Hous. Corp. v. HP, Inc.*, is inapposite because whether class

23  members saw disclosures that the plaintiffs did not was central to the case. 2023 WL 9550942, at
   *6 (N.D. Cal. Dec. 8, 2023). Rather than denying certification, the court granted it and narrowed

24  the class. *Id.* Similarly, rather than rejecting certification due to typicality concerns, the Ninth
   Circuit in *Avilez v. Pinkerton Gov't Servs., Inc*., instructed the district court to certify a Rule

25  23(c)(4) class on the prima facie case for liability and said that if the court finds that one exists it
   may proceed with defenses and cull the class to address that some class members had arbitration

26  agreements with class waivers. 596 F. App'x 579–80 (9th Cir. 2015). Here, there is no issue with
   forum as the class definition excludes those who signed an arbitration agreement, but it is

27  instructive that the court did not deny certification and reserved the issue for later after certifying a

28  Rule 23(c)(4) issues class.

13

*Inc.*, 2020 WL 6149694, at *2 (N.D. Cal. Oct. 20, 2020); *cf Rolex*, 136 F.R.D. at 664.[19] Under the Ninth Circuit's permissive standard for typicality, which does not pose a particularly high bar to class certification, the Court should find that the release defense does not bar this action from proceeding as a class. *See Woods v. Vector Marketing Corp.*, 2015 WL 5188682, at *12 (N.D. Cal. Sept. 4, 2015) (describing "permissive standard").

**B.    The Class Representatives Satisfy the Adequacy Requirement**

Apple argues that McIlravy-Ackert and Hoffman are inadequate class representatives because they were purportedly recruited to join the case, are disinterested, and/or do not understand the claims.[20] This is false.

Hoffman and McIlravy-Ackert joined after receiving court-authorized FLSA notice.[21] There is nothing improper for them to be asked to serve as named plaintiffs so that the case they joined can include their additional state law claims. Courts have rejected accusations that this alone makes someone inadequate. *See Banks v. R.C. Bigelow, Inc.*, 2023 WL 4932894, at *3 (C.D. Cal. July 31, 2023); *Blair v. Rent-A-Ctr., Inc.*, 2018 WL 5728924, at *3 (N.D. Cal. Nov. 1, 2018). Instead, the focus is on whether they will "fairly and adequately protect the interests of the class" and these individuals have done so. They have been active participants, by for example, reviewing

---

[19] A common issue exists because "[u]nder California law, an employee may not waive a wage-and-hour claim by contract." *Haitayan v. 7-Eleven, Inc.*, 762 Fed. App'x 393, 396 (9th Cir. 2019). To the extent the Court has concerns about whether Hoffman and McIlravy-Ackert can represent those who signed releases, if it rules in Plaintiffs' favor on the regular rate issue, it could create a subclass for those who signed releases and permit a substitute class representative. *See Yost v. First Horizon Nat. Corp.*, 2011 WL 2182262, at *11–12 (W.D. Tenn. June 3, 2011); *see generally Rushing v. Williams-Sonoma, Inc.*, 2024 WL 779601, at *5 (N.D. Cal. Feb. 21, 2024) (trier of fact can address all other common issues in one stroke and then address defense afterwards).

[20] Apple relies on *Bodner v. Oreck Direct, LLC*, where adequacy was not met because the plaintiff did not read the complaint, knew nothing about the claims, and could not say whether he suffered an injury; also *counsel* was inadequate. 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007). Apple also relies on *Navarro v. Exxonmobil Corp.* in which the court, in addition to finding the proposed substitute class representative had conflicts and varied interests that would prevent him from adequately representing the class, also found that "[c]lass counsel's inability to find and retain class representatives with an actual claim or continuing interest has been a concern throughout the litigation." 2022 WL 22248790, at *4–6 (C.D. Cal. July 5, 2022). That is not true here.

[21] Apple misrepresents that "Hoffman had not contemplated joining this lawsuit before being contacted by her counsel." (Def.'s Opp'n 24.) Hoffman joined after getting the court-authorized notice and then was only contacted by counsel afterwards. (Hoffman Tr. 92:11–93:20, Ex. 2.)

14

and authorizing the amended complaints, participating in discovery including responding to multiple sets of interrogatories, searching for and producing documents, attending full-day depositions, and responding to counsel's numerous inquiries. (*Id.*) Both assisted class members by answering questions and directing them to counsel. (*See* McIlravy-Ackert Tr. 155:5–:12; 157:2–:25, COSTA0001310-11 (Hoffman informing class members about case), Ex. 1.)[22] Apple's depiction of Hoffman as disinterested and unwilling to assist certain class members is inconsistent with her actions as she has dedicated substantial effort to advance this case.[23] (*See* Hoffman Tr. 167:21–:24 ("The reasoning why is, again, I'm trying to stand up for my fellow coworkers that I worked with closely for years and anybody else to make sure that they get the money that they deserve for the hard work that they did.").)

Further, Hoffman and McIlravy-Ackert are knowledgeable of the claims. McIlravy-Ackert testified, "when calculating our overtime pay, that RSUs should have been calculated into that." (McIlravy-Akert Tr. 155:5–:12, Ex. 3.) Hoffman's "understanding of the claims in this litigation" is "it's just based on were we paid and compensated correctly in accordance to the amount of overtime we've worked and the amount of using RSUs towards that as part of our compensation." (Hoffman Tr. 113:13–:18, Ex. 2.) Apple's assertion that Hoffman has a "distressing lack of understanding" of the claims is contradicted by her testimony.[24]

## CONCLUSION

For the foregoing reasons, Apple's attempt to defeat class certification fails.

Date: 10/30/24                                  *s/Michele R. Fisher*

---

[22] The class representatives' participation makes them different than the cases Apple cites where the plaintiffs were not engaged and had little knowledge. (Def.'s Opp'n 25.)

[23] Apple states Hoffman is inadequate because she "cut ties" with some class members, but she explained that this meant that they just are not close friends but are still acquaintances and that she ended others for personal reasons. (*Id.* 127:24–128:4, 176:17–177:5, Ex. 2.) Apple's references to Hoffman not "'paying attention' to the lawsuit" are vague and out-of-context. (*Id.* 125:1–:16.) She explained she was doing what was being asked of her. (*Id.*)

[24] "While a class representative must be familiar with the basic elements and 'the gravamen' of her claim, she need not be 'intimately familiar with every factual and legal issue in the case.'" *In re Zillow Grp., Inc. Sec. Litig.,* 2020 WL 6318692, at *6 (W.D. Wash. Oct. 28, 2020) (quoting *In re Worlds of Wonder Sec. Litig.*, 1990 WL 61951, at *3 (N.D. Cal. Mar. 23, 1990)).