1  GIBSON, DUNN & CRUTCHER LLP
   THEODORE J. BOUTROUS JR., SBN 132099
2      TBoutrous@gibsondunn.com
   THEANE EVANGELIS, SBN 243570
3      TEvangelis@gibsondunn.com
   CYNTHIA CHEN MCTERNAN, SBN 309515
4      CMcTernan@gibsondunn.com
   333 South Grand Avenue
5  Los Angeles, CA  90071
   Telephone:    213.229.7000
6  Facsimile:    213.229.7520

7  GIBSON, DUNN & CRUTCHER LLP
   MEGAN COONEY, SBN 295174
8      MCooney@gibsondunn.com
   3161 Michelson Drive
9  Irvine, CA  92612-4412
   Telephone:    949.451.3800
10 Facsimile:    949.451.4220

11 *Attorneys for Defendant Apple Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCIS COSTA, AMANDA HOFFMAN, and OLIVIA MCILRAVY-ACKERT, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 3:23-cv-01353-WHO<br><br>**DEFENDANT APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:     December 18, 2024<br>Time:     10:00 a.m. PT<br>Place:    via Zoom<br>Judge:    Hon. William H. Orrick |

## I. INTRODUCTION

Even after being given a chance to fix their failure to offer a viable damages model, Plaintiffs still fail to offer a methodology that satisfies their obligation to prove that it is feasible to calculate damages on a classwide basis. Plaintiffs' expert, Dr. Steward, offers a bare formula with no inputs and no exemplar calculation despite having data for thousands of individuals. Dr. Steward effectively parrots what Plaintiffs have already said—it's "just math and it['s] simple." Hr'g Tr. at 7:8–9. But Plaintiffs', and now Dr. Steward's, insistence that damages are simple and assertion that it will be easy to calculate them is not proof. Plaintiffs have the burden under Supreme Court and Ninth Circuit precedent to establish *how* classwide damages could be calculated reliably, accurately, and consistent with Plaintiffs' contention that Apple could have, and should have, included the value of vested restricted stock units ("RSUs") in the regular rate all along. Their repeated failure to answer basic questions about how their formula would apply to RSUs, or to offer any legal bases for the formula they've chosen, confirms that they would prefer to just ignore the realities of how infeasible it would be for a company to try to include variable, discretionary equity awards like RSUs in overtime pay. As Plaintiffs have failed yet again to meet their burden, class certification should be denied.

## II. ARGUMENT

The Supreme Court has expressly rejected the contention that "at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013). Instead, "any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.* at 35. And where, as here, "an expert's proposed method is novel or untested, it makes sense to demand a greater degree of specificity and completeness before it is relied upon to certify a class." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (en banc). Plaintiffs' expert report fails to satisfy these fundamental requirements.

***Plaintiffs' proposed formula is arbitrary and lacks legal support.*** Plaintiffs appear to have selected whatever damages calculation was most convenient in trying to certify a class, even if arbitrary

1

and inconsistent with their theory of liability—which is exactly what *Comcast* warns against. Dr. Steward contends that the damages methodology applicable to a "standard non-discretionary bonus" should be applied to RSU awards. Dkt. 366-1 (Steward Decl.) ¶ 12. RSUs, however, are anything but "standard" and do not resemble a non-discretionary cash bonus.[1]

Perhaps for this reason, Dr. Steward does not provide any principled reason why those bonus calculations should apply to RSU awards. Had he attempted to do so, he would have been forced to acknowledge and grapple with the stark differences between them. To start, the purposes of each are completely different. Unlike non-discretionary cash bonuses, which are awarded for work performed, Apple grants RSU awards to show appreciation and give non-exempt employees an opportunity to share in the Company's success. *See* Dkt. 343, Ex. 4 at APLCOSTA00000061. When RSU awards vest, the value of the shares released to the employee is based on Apple's stock performance on that day, *not* on work performed—in fact, awards vest for employees who are on a leave of absence and not working at all. *See, e.g.*, *id.*, Ex. 6 at 52:16–24, 134:22–135:3, 137:2–138:8.

Similarly, Dr. Steward simply concludes that California's "flat sum" bonus calculation will apply, without offering any reasoning for that conclusion. *See* Steward Decl. ¶¶ 10-11. This calculation is not the only one available under California law and is generally only applied to fixed-sum bonuses like an attendance bonus. *See Alvarado v. Dart Container Corp.*, 411 P.3d 528, 539 n.6 (Cal. 2018). The value of an RSU award is unknown at the time it is granted and the value of the shares underlying the award are *never* fixed. *Cf. Wheeler v. Hampton Tp.*, 399 F.3d 238, 241 (3d Cir. 2005) ("precise dollar figure[ ]" provided for pay included in regular rate). Neither Apple nor the employee receiving an RSU award can predict what the shares will be worth once they vest. *See, e.g.*, Dkt. 343, Ex. 7 at APLCOSTA00001635–36.

The arbitrary conclusions do not end there. Dr. Steward also definitively states—without any reasoning or support—that the Court can just ignore an employee's exemption status and the state

---

[1] Congress has already recognized that equity awards are unique and present impossible challenges with regard to a principled regular-rate calculation. It has observed that the "wide variations in the scope, nature and design of stock option programs," a very similar equity vehicle to RSUs, weighed in favor of excluding that vehicle from the regular rate. 146 Cong. Rec. H2437-01 at 2439 (2000).

where they are employed when the RSU award is granted and vests. Steward Decl. ¶ 16. Instead, Dr. Steward suggests all that matters is that they were classified as non-exempt in California or New York at some moment in time while the award is vesting and worked at least one hour of overtime. But this is at odds with Plaintiffs' own complaint, which repeatedly asserts that the value of vested RSUs should have been incorporated into overtime pay for the pay period *in which they vested*. *See*, *e.g.*, Dkt. 86 ¶ 38–44. It defies logic to suggest, as Dr. Steward does, that Apple would be required to make an overtime payment to an employee who is *exempt* and *not* overtime-eligible in the pay period when the RSU vests. This is the type of unsupported and unreliable conclusion that warrants excluding an expert under *Daubert*, and cannot support class certification even if it satisfied *Daubert*. *See Olean*, 31 F.4th at 667 n.9 ("Courts have frequently found that expert evidence, while otherwise admissible under *Daubert*, was inadequate to satisfy the prerequisites of Rule 23."); *see also Pierce v. Wyndham Vacation Resorts, Inc.*, 2017 WL 10436071, at *4 (E.D. Ten. Oct. 6, 2017) (excluding Dr. Steward in FLSA case); *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 316 (E.D. Pa. 2010) (similar).

**Plaintiffs' proposed formula leaves many critical questions unanswered.** In addition to proposing an arbitrary framework, Plaintiffs' expert fails to offer any actual opinion or analysis that would allow Apple or the Court to test their proposed formula. Remarkably, Plaintiffs' expert does not provide even a *single calculation* to show how his formula would work in practice. This is woefully short of "the greater . . . specificity and completeness" required in cases like these where "an expert's proposed method is novel or untested." *Lytle*, 114 F.4th at 1033; *see also* Estevez Decl. ¶ 14–15.

As detailed in Dr. Estevez's declaration submitted with this filing, there are myriad gaps in Dr. Steward's declaration that make it impossible to apply his formula in practice. *See* Estevez Decl. ¶ 12–15. To start, Dr. Steward opines that Plaintiffs' damages will be calculated "over the vesting period preceding the RSU vesting," Steward Decl. ¶ 12, but does not explain what that vesting period is or why it is the correct lookback for calculating damages. Dr. Steward merely notes that he "understand[s] [the vesting period] was either one year or six months," *id.*, but does not explain why calculating damages based on either of those periods is the supposedly correct method "consistent with [Plaintiffs'] liability case." *Comcast*, 569 U.S. at 35. For example, and assuming Plaintiffs' theory of

the case is correct, the value of vested shares could be considered to have been "earned" in the pay period of the vesting date, because that's the only pay period in which the individual needs to be employed by Apple in order for the RSU to vest. *See* Estevez Decl. ¶ 13. Or it could be considered to have been "earned" over the six-month, or one-, two-, or three-year period between grant and vest. Or it could be considered to have been "earned" in the time-period between vesting dates. Dr. Steward fails to offer any legal basis for his amorphous choice, let alone why it is the correct one. *See id.*

Plaintiffs also claim that they will "prorate the RSU remuneration" to account for employees who worked in exempt-classified positions during the vesting periods of their RSUs by "exclud[ing] pay periods when [the individual was] classified as exempt." Steward Decl. ¶ 15. Plaintiffs' proposal as to exempt employees is also problematic. They have not specified how the proration would work, which means that Apple—and the Court—has no insight into how much any class member is *actually* will recover if Plaintiffs prevail. As Dr. Estevez explains, the value could be prorated based on time in the exempt position, hours worked/paid, earnings, or a combination, and each choice will affect how damages are calculated. *See* Estevez ¶ 13. For example, if proration is done on an hourly basis, Apple would need a reasonable method to calculate exempt hours. But Plaintiffs have not explained how they would do that. *See id.* If proration is done on a salary basis instead, one employee who was exempt for part of the relevant period could make far more from the same vested value than an employee who was non-exempt the entire time—not because he worked more, but simply because the calculation is skewed. Where a damages model "would substantially overcompensate an (at this point unknown) number of members of the class out of proportion to the harm they have allegedly suffered," it should be rejected. *Maison D. Artiste v. Am. Int'l Grp., Inc.,* 2020 WL 5498061, at *4 (C.D. Cal. Aug. 3, 2020). And simply excluding work performed while in an exempt role is not "consistent with [Plaintiffs'] liability" theory that RSUs are compensation for work performed. *Comcast*, 569 U.S. at 35; *see* Dkt. 86 ¶¶ 27, 32, 37. If RSU awards are meant to compensate employees for work performed, as Plaintiffs claim, then all work performed during the vesting period should be considered.

Because of these issues, Dr. Steward is unable to (and does not) perform the most fundamental task of a statistical expert in a damages case: an actual calculation. He claims that he "reviewed the

data for one individual . . . in this case," and that "the data is sufficient to calculate damages" for that plaintiff "and when provided, on a class wide basis for all the Plaintiffs." Steward Decl. ¶ 13. But he inexplicably does not attempt to calculate damages for that individual, despite proffering a formula *and* having the data he claims he needs. Estevez Decl. ¶¶ 14–15. In doing so, he concedes that this is far more complicated than Plaintiffs claim. Under Plaintiffs' own cited cases, this "trust me" approach to a novel and highly complex damages issue fails Rule 23. *Lytle*, 114 F.4th at 1033.

***Plaintiffs' formula cannot be implemented prospectively.*** At the last hearing, the Court rightly questioned "how . . . Apple [would] deal with this on a forward-going basis." Hr'g Tr. 5:17–21. Dr. Steward concedes that any potential damages must be "equal to the difference between the overtime (OT) payments that the Plaintiffs should have received *had their OT rate been calculated correctly*" and the payments actually received. Steward Decl. ¶ 9 (emphasis added). It is therefore undisputed that any damages calculation must be consistent with the calculation Apple would have to do if Plaintiffs prevail. But as the Court previewed, there are endless complications that flow from trying to include the value of vested RSUs—which is *unknown* until vesting and *variable* based on the stock market—in the regular rate of pay. For example, Plaintiffs' assertion that the calculation would need to cover the whole "vesting period" leaves companies in the dark on how to treat awards with multiple vesting events. It also requires companies to wait to do a supplemental overtime calculation until potentially a year or more after the overtime was worked. Coupled with the fact that share prices vary from day to day, this means that companies would have no predictability over the amount of overtime pay owed. Companies like Apple that make the generous choice to provide non-exempt employees with discretionary equity awards would have no control over their labor budgets and would be at the whim of the stock market. Then, once this pay was "earned," it would create untold administrative burdens to try to calculate—let alone pay out and document on wage and tax records. While Plaintiffs, and their expert, want this Court to believe that this calculation is simple math, it is anything but. Plaintiffs have now twice failed to meet their burden.

### III.    CONCLUSION

Apple respectfully requests that the Court deny the motion for class certification.

DATED: December 11, 2024

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR.
THEANE EVANGELIS
MEGAN COONEY
CYNTHIA CHEN MCTERNAN

By: */s/ Theane Evangelis*
    Theane Evangelis

*Attorneys for Defendant Apple Inc.*

DEFENDANT APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-01353-WHO