1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8  FRANCIS COSTA,                               Case No. 23-cv-01353-WHO

9                      Plaintiff,
                                               **ORDER CERTIFYING CLASS AND**
10          v.                                  **DENYING FLSA DECERTIFICATION**

11  APPLE, INC.,
                                               Dkt. Nos. 298, 309, 313, 326, 331, 337, 345,
12                      Defendant.              371

13          Named plaintiffs Francis Costa, Amanda Hoffman, and Olivia McIlravy-Ackert bring this

14  putative class action against defendant Apple, Inc. ("Apple"), alleging that Apple violated

15  California and New York overtime laws by omitting the value of vested restricted stock units

16  ("RSUs") from the regular rate when it calculated class members' overtime pay.  Apple admits

17  that it maintains this common pay practice for all class members.  Common questions of law and

18  fact will drive the resolution of this case and predominate over individualized inquiries.  If

19  plaintiffs prevail, damages will be calculated using data in Apple's possession, according to the

20  standards set forth by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the

21  "FLSA"), California, and New York state law for calculating missing overtime pay.  Accordingly,

22  plaintiffs' motion to certify the class is GRANTED.  Apple's motion to decertify the FLSA

23  collective is DENIED for largely the same reasons.  I will modify the definition of the FLSA

24  collective so that those opt-in plaintiffs who signed arbitration agreements or otherwise are shown

25  to have released their claims against Apple are excluded.

26                                      **BACKGROUND**

27  **A.      The Fair Labor Standards Act**

28          Congress enacted the FLSA "to eliminate both substandard wages and oppressive working

United States District Court
Northern District of California

hours." *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 44, 143 S.Ct. 677, 214 L.Ed.2d 409 (2023) (internal quotation marks and citation omitted).  One of the ways that the FLSA discourages inappropriately long working hours is by requiring employers to pay employees overtime pay.  *Id.*  Generally, employers must pay covered employees time-and-a-half when they work more than forty hours in a week.  29 U.S.C. § 207(a)(1).  Many states have followed the FLSA requirements in adopting their own overtime rate rules.  *See e.g.* Cal. Labor Code §§ 510, 1194, 1198, and Cal. Wage Order 4; 12 NYCRR. §142–2.2 and NYLL, Art. 19, § 650.  The "regular rate" under California and New York law includes "all remuneration for employment," subject to the same limited exclusions in the FLSA.  *See Ferra v. Loews Hollywood Hotel*, 11 Cal. 5th 858, 868 (Cal. 2021); *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 331 (S.D.N.Y. 2012).  Not all employees are covered by the overtime requirement in the FLSA, or its state law equivalents, though.  Some are exempt.  *See* 29 U.S.C. § 213 (Exemptions).

### B.    Procedural Background

Francis Costa filed this putative FLSA collective action on March 23, 2023, alleging that Apple did not include the value of vested restricted stock unit remuneration in the regular rate it uses to calculate overtime pay.  *See* Dkt. No. 1 (Complaint).  On June 14, 2023, plaintiffs added California state law claims via the named plaintiff Amanda Hoffman as California class representative.  Dkt. No. 48.  On August 11, 2023, plaintiffs amended once again to add Olivia McIlravy-Ackert as another California class representative, and also designated her as the New York class representative for additional claims arising under New York state law.  Dk. No. 70.  On October 27, 2023, plaintiffs amended once more to add a claim under the California Private Attorneys General Act ("PAGA"), using Hoffman as that class representative.  Dkt. No. 86 (Third Amended Complaint (operative complaint)).

I authorized notice to the FLSA collective on November 21, 2023, and refined the FLSA collective definition shortly thereafter.  Dkt. Nos. 98, 112.  The FLSA collective is:

> All current and former employees of Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after March 23, 2020, and who recorded more than forty hours of work in a workweek after receiving an RSU but before the RSU vested.

Dkt. No. 112.

Thereafter, Apple provided the administrator with names and contact information for 47,333 putative FLSA plaintiffs who met the FLSA definition.  *See* Declaration of Michele Fisher ("Fisher Decl.") ¶ 2.  There are now over 8,000 FLSA plaintiffs, 2,770 of whom are from California and 479 of whom are from New York.  *Id.* ¶ 3.

### C.    Factual Background

Plaintiffs Costa, Hoffman, and McIlravy-Ackert worked (and in the latter's case, still work) for Apple as hourly, non-exempt, eligible for overtime pay employees.  *See* Third Amended Complaint ("TAC") [Dkt. No. 86] ¶¶ 9, 11, 13, and 25.  They allege that in addition to their hourly pay, Apple paid them compensation in the form of RSUs, which they understand to have a three-year vesting period.  TAC ¶¶ 27, 32, 37, 39, 42, and 44.  RSU awards are "a right to receive Apple stock for which employees pay nothing." Motion to Certify Class ("Cert. Mot.") [Dkt. No. 313-3] 3:14-15 (sealed).  Since 2015, Apple has granted RSUs to those employees that it classifies as "non-exempt/overtime eligible."  *See* 30(b)(6) Deposition of Joe Thomas ("Thomas Dep.") [Dkt. No. 299-2] 17:14-20; 27:9–28:12; *id.* Ex. 11.  As a matter of policy, Apple does not include the value of the vested RSUs when calculating the regular rate for non-exempt/overtime eligible employees. [1]  *See generally* TAC; 30(b)(6) Deposition of Christopher Jenkinson ("Jenkinson Dep.") 20:19-22, 122:2-13, 124:7-11.

Employees who receive these RSUs do not own shares of Apple stock; they later receive Apple stock on the condition that they continue working for Apple after the RSU is awarded and until it vests (unless they are on an approved leave of absence).  Thomas Dep. 28:20-30:20, 34, 38-39.  Once an RSU vests, it becomes stock and the employee owns it.  Jenksinson Dep. 94, 99; Ex. 1.  If an employee leaves Apple before the RSU vests, they lose the right to the unvested RSUs (unless they leave because of death or long-term disability).  *Id.*

RSU grants are usually set by job level and function.  Thomas Dep. 23:21-24:24, Ex. 2.

---

[1] Apple points out that plaintiffs raise a new theory in their class certification motion that "dividends" should be included in the regular rate of pay.  Cert. Mot. 1, 5, 6 (alleging that Apple has a "common policy for all employees of not including the value of vested RSUs or their dividends in the regular rate.").  This allegation does not appear in the plaintiffs' underlying complaint, and therefore cannot proceed.  *See Ridgeway v. Phillips*, 383 F. Supp. 3d 938, 944 n.2 (N.D. Cal. 2019) (theory not pleaded cannot proceed).

Apple's management team may make recommendations about who gets RSUs, but not after the award is granted. *Id.* 20-21, 28. Once the RSUs are awarded, they are subject to terms and conditions of a common Stock Plan and RSU Agreement. *Id.* 35:12-17, Ex. 2; Jenkinson Dep. 30-34, 46:8-15.

The same Stock Plan and RSU Agreement apply to all RSU awards, subject to occasional revisions by Apple. *See* Thomas Dep. 35:12–:17; 45:9–:16, 46:4–:16, 54:12– 55:5, Ex. 2; Jenkinson Dep. 46:17–48:4, 58:21–60:5, Ex. 1; *see generally* Stock Plan, Ex. 5; RSU Agmt., Ex. 6. Once Apple awards the RSUs, employees have a contractual right to Apple stock if they continue actively working for Apple until the RSUs vest and Apple has a contractual obligation to issue the stock at vesting. *See generally* RSU Agmt. ¶¶ 3–4, 7–8, 16–18, Ex. 6; Thomas Dep. 38:13–39:6, Ex. 2; Jenkinson Dep. 82:8–:12, 109:17–110:3, Ex. 1. The RSU Agreement provides that Apple may only rescind granted or vested RSUs under narrowly defined circumstances, none of which are at issue in this case. *See* RSU Agmt. ¶ 9, Ex. 6; *see generally* Thomas Dep. 48:8–:18, Ex. 2. Apple calculates the value of RSUs at vesting based on the closing price of Apple stock on the day the RSU vests multiplied by the number of RSU shares it awarded (less taxes). *See* Jenkinson Dep. 37:5-14, Ex. 1.

Apple asserts that RSU remuneration is excludable from the regular rate under four of the eight FLSA exclusions: gifts (29 U.S.C. § 207(e)(1)); payments for periods where no work is performed (*id.* § 207(e)(2); sums in recognition of services performed during a period made at sole discretion of an employer (*id.* § 207(e)(3); and stock options, stock appreciation rights, and bona fide employee stock purchase plan (*id.* § 207(e)(8). *See* Def.'s 3d Supp. Resp. to Irrogs. (Set 1) p. 52, Ex. 3.

The plaintiffs now move for certification of the following two classes:

**The California Class:** All current and former California employees who Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after June 14, 2019, and recorded more than forty hours of work in a workweek or more than eight hours of work in a workday after receiving an RSU but before the RSU vested. This excludes those who signed an arbitration agreement.

**The New York Class:** All current and former New York employees who Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after August 11, 2017, and recorded more than forty hours of work in a workweek after

receiving an RSU but before the RSU vested. This excludes those who signed an arbitration agreement.

## LEGAL STANDARD

## I.    CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 governs class actions. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663–64 (9th Cir. 2022) (en banc). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)). "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at 665.

A "plaintiff[] must make two showings" to certify its purported class. *Olean*, 31 F.4th at 663. "First, the plaintiffs must establish 'there are questions of law or fact in common to the class,' as well as demonstrate numerosity, typicality, and adequacy of representation." *Id.* (quoting Fed. R. Civ. Proc. 23(a)). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the "claims must depend upon a common contention." *Wal-Mart*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at 157).

"Second, the plaintiffs must show that the class fits into one of three categories" as provided in Rule 23(b). *Olean*, 31 F.4th at 663. Here, plaintiffs seek certification under Rule 23(b)(3). Under Rule 23(b)(3), a class may be certified if "questions of law or fact common to class members predominate over the questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). In deciding this, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the

United States District Court
Northern District of California

prerequisites of Rule 23 are satisfied by a preponderance of the evidence.  In carrying the burden of proving facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible evidence."  *Olean*, 31 F.4th at 665 (citing *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016)).  While the class-certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (internal citations and quotation marks omitted).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* (citation omitted).

In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action."  *Hanni v. Am. Airlines*, No. C-08-00732-CW, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010).  The court may also "consider supplemental evidentiary submissions of the parties."  *Id.*  "[T]he 'manner and degree of evidence required' at the preliminary class certification stage is not the same as 'at the successive stages of the litigation'—*i.e.*, at trial."  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

## II.    FLSA COLLECTIVE DECERTIFICATION

Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  The FLSA does not define the term "similarly situated," nor has the Ninth Circuit defined it.  To determine whether plaintiffs are "similarly situated," courts in this circuit have applied a "two-step approach involving initial notice to prospective plaintiffs, followed by a final evaluation whether such plaintiffs are similarly situated." *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).  "The first step under the two-tiered approach considers whether the proposed class should be given notice of the action.  This decision is based on the pleadings and affidavits submitted by the parties.  The court makes this determination under a fairly lenient standard due to the limited amount of evidence before it ... In the second step, the party opposing

1    certification may move to decertify the class once discovery is complete and the case is ready to

2    be tried." *Adams v. Inter–Con Sec. Systs., Inc.*, 242 F.R.D. 530, 535–56 (N.D. Cal. 2007).

3        This court applied the lenient stage-one standard when it previously certified the

4    conditional classes.  At step two of the process, which occurs at the conclusion of discovery,

5    courts engage in a more searching review.  *Leuthold*, 224 F.R.D. at 467.  At this stage, in order to

6    overcome a motion to decertify a conditionally certified class, "it is plaintiffs' burden to provide

7    substantial evidence to demonstrate that they are similarly situated." *Reed v. County of Orange*,

8    266 F.R.D. 446, 449 (C.D. Cal. 2010).  The Eleventh Circuit has noted that at this second stage,

9    "[l]ogically the more material distinctions revealed by the evidence, the more likely the district

10   court is to decertify the collective action." *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir.

11   2007).

12       The lead plaintiffs in a FLSA collective action have the burden of showing that the opt-in

13   plaintiffs are situated similarly to them.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584

14   (6th Cir. 2009); *see also Hill v. R+L Carriers, Inc.*, No. C 09–1907 CW, 2011 WL 830546, at *3

15   (N.D. Cal. Mar. 3, 2011).  In deciding whether plaintiffs have met their stage-two burden, courts

16   engage in a fact-specific inquiry to evaluate various factors. *Reed v. County of Orange*, 266 F.R.D.

17   446, 449 (C.D. Cal. 2010).  "These factors include: (1) the disparate factual and employment

18   settings of the individual plaintiffs; (2) the various defenses available to defendants with respect to

19   the individual plaintiffs; and (3) fairness and procedural considerations." *Beauperthuy v. 24 Hour

20   Fitness USA, Inc.,* 772 F. Supp. 2d 1111, 1118 (N.D. Cal. 2011).  Nevertheless, plaintiffs "must

21   only be similarly—not identically—situated to proceed collectively." *Falcon v. Starbucks,* 580

22   F.Supp.2d 528, 534 (S.D. Tex. 2008).

23       The decision whether to decertify a collective action is within the district court's

24   discretion. *See, e.g., Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213 (5th Cir. 1995) ("[T]he

25   district court's application of the [legal] standard must be reviewed for abuse of discretion.").

26                                    **DISCUSSION**

27   **I.    CLASS CERTIFICATION**

28       Plaintiffs seek certification of two classes of Apple employees: the California Class, and

United States District Court
Northern District of California

7

the New York Class, both of which are defined above.  *See* Background Section C.  Apple's main challenge concerns commonality/predominance.  Apple also attacks the plaintiffs' typicality/adequacy, and their proposed damages model.  I will address each of Apple's arguments against certification and each element of class certification as part of the "rigorous analysis" required by the United States Supreme Court.

### A.    Numerosity

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  There is no threshold number that satisfies the numerosity requirement, but courts often find that a group larger than 40 members meets the requirement.  *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp*., 249 F.R.D. 334, 346 (N.D. Cal. 2008).  Apple does not challenge numerosity: Here, 2,270 plaintiffs have joined the FLSA collective from California, and 479 have joined from New York.  Numerosity is met.

### B.    Commonality/Predominance

While the Rule 23(a) commonality requirement is distinct from the more demanding Rule 23(b)(3) predominance requirement, courts in this district address commonality and predominance in the same analysis.  *See, e.g.*, *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 9423286, at *8–23 (N.D. Cal. Dec. 14, 2023).  Apple does so here as well.  *See* Opposition to Motion for Class Certification ("Cert. Oppo.") [Dkt. No. 326-21] (sealed). To meet the commonality requirement, "a party must demonstrate that they and the proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution." *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019).  This means that the determination of the common contention's truth or falsity "will resolve an issue that is central to the validity of each one of the claims in one stroke"; the commonality element may be fulfilled if the court can determine "in one stroke" whether a single policy or practice which the proposed class members are all subject to "expose them to a substantial risk of harm." *Id.*

The predominance requirement is more demanding.  *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1154 (9th Cir. 2016).  It "asks the court to make a global determination of whether common questions prevail over individualized ones." *Ruiz Torres v. Mercer Canyons Inc.*, 835

F.3d 1125, 1134 (9th Cir. 2016).  That said, the Ninth Circuit has cautioned that "[p]redominance is not . . . a matter of nose-counting . . . [M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class. [Predominance] is an assessment of whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.*

Plaintiffs have shown that common questions predominate over individualized ones and the class is sufficiently cohesive to warrant certification.  They challenge Apple's common policy of not including the value of vested RSUs when calculating non-exempt employees' regular rate of pay. Cert. Mot. 8-9.  The question of whether this policy comports with California and New York overtime law is common to the class because the class is made of non-exempt/overtime eligible employees, meaning that they would all be presumed subject to this policy.  And the question predominates.  If Apple successfully shows that an established regular rate exclusion applies to the class, then the case is over, and Apple prevails, but if it does not make such a showing, then more common questions will drive the issue of damages.

Apple raises three arguments against commonality/predominance.  It argues that individualized questions predominate over common ones with respect to: (1) whether class members were truly entitled to overtime pay; (2) whether the vested RSUs qualify as exclusions under the FLSA such that Apple did not need to include them in regular rate calculations; and (3) whether class members waived their right to participate in class actions against Apple. Opposition to Motion for Class Certification ("Cert. Oppo.") [Dkt. No. 326-21] (sealed); Motion to Decertify the FLSA Collective ("FLSA Mot.") [Dkt. No. 326-22] (sealed).  Each argument is addressed below.[2]

### 1.    Employee Exemptions

California exempts computer software employees from overtime who are "primarily

---

[2] Apple's arguments against class certification overlap with its arguments in support of decertifying the FLSA collective.  *Compare* FLSA Mot. *with* Cert. Oppo.  Much of the forthcoming analysis resolves both motions.

engaged in work that is intellectual and requires the exercise of discretion and independent judgment." Cal. Lab. Code § 515.5(a).  This includes but is not limited to employees who spend the majority of their time "consulting with user[] to determine hardware, software, or system functional specifications," or "design[ing], develop[ing], . . . testing, or modif[ying] [] computer systems." *Id.*  New York adopts federal law, and exempts from overtime employees who are "[c]omputer systems analysts, computer programmers, software engineers or other similarly skilled workers in the computer field" if their "primary duty" consists of: "(1) [t]he application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications; (2) [t]he design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications; (3) [t]he design, documentation, testing, creation or modification of computer programs related to machine operating systems; or (4) [a] combination of the aforementioned duties, the performance of which requires the same level of skills." 29 C.F.R. § 541.400; *see also* 12 NYCRR § 142-2.2 (providing that "an employer shall pay an employee for overtime . . . in the manner and methods provided in . . . the [FLSA].").[3]

Obviously, only Apple employees who are subject to overtime requirements have standing

---

[3] Apple argues that the differences in exemption law between California and New York further "tips the scale against" class certification because of the "need to apply the law of different states," *see* Cert. Oppo. 12:15-25 (quoting *White v. Symetra Assigned Benefits Serv. Co.*, 104 F. 4th 1182 (9th Cir. 2024)).  But for the reasons discussed below, this potential wrinkle only affects a small percentage of the potential class members.  This case is not like *White*.  There, the district court certified two nationwide classes in a case where plaintiffs alleged that defendant insurance companies engaged in unfair business practices with respect to structured settlement annuities ("SSAs") to which the plaintiffs were subject.  On appeal, the court considered that the record contained four SSA settlement agreements, three of which had choice of law provisions, and all of which called for the application of laws of different states.  It appeared that more states' laws would become implicated down the line.  The plaintiffs could not offer a method for addressing these variations, and while the court did not undergo an examination of the different implicated states' laws to determine how they stood in relation to one another, there was no evidence that they would apply similarly to the plaintiffs' claims.  In light of these facts, the court decertified the class.  Here, there are only two states whose laws are implicated: California and New York.  No other states will be implicated down the line.  And California and New York labor laws share many similarities with respect to the issues at hand.  If the class must be divided later to account for persisting differences between exemption laws in California and New York, that can be addressed then.

to challenge whether the value of vested RSUs must be included in the calculation of the regular rate for the purposes of determining their overtime pay. While the proposed classes, by definition, are limited to Apple employees who were classified non-exempt/overtime eligible during the class period, Apple argues that some putative class members were actually exempt as a function of their job responsibilities: Its thirty-fourth affirmative defense states that "[p]laintiffs are 'exempt from the overtime pay provisions of the FLSA and California and New York wage and hour laws.'" Dkt. No. 92 (Answer) at 27. It concedes that it will not assert this defense with respect to every class member but believes nevertheless that the issue will quickly devolve into numerous "mini trials" to determine whether those class members who hold any one of the 36 potentially exempt roles worked in such a way during the class period that they lack standing to seek damages under the plaintiffs' theory of liability.

Apple warns that at least 36 out of the 442 job titles that it identified as included in the class definition are *formally* classified as non-exempt, but the employees holding those positions "may in fact be exempt" under the "Computer Exemption," depending on how those roles were performed. Cert. Oppo. 11-12; Cooney Decl., Ex. 22 (Apple's Fifth Suppl. Resp. and Obj. to Plaintiffs' First Set of Interrog.) at 74:11-75:4. According to Apple, there are approximately 782 Apple employees total who hold one of these 36 potentially exempt titles, including 568 in California and 19 in New York. Cert. Oppo. 11:22-12:3; Thomas Decl. ¶ 4. It argues that, in light of these numbers, whether plaintiffs are entitled to overtime at all is a "threshold issue" that turns on individualized analysis of their job responsibilities.[4]

Apple says that the 36 potentially exempt job titles each involve the "technical, self-driven, and computer-based work" that the computer professional exemptions were designed to cover. *See* Cert. Oppo. 12-13. It provides multiple examples of opt-in plaintiffs testifying about their job responsibilities in such a way that might suggest that they are subject to the California and federal

---

[4] Plaintiffs say that discovery related to the FLSA collective revealed that this affirmative defense only impacts 1.7% of the non-arbitration FLSA plaintiffs, and most of those plaintiffs also worked periods in other positions for which Apple is not claiming an exemption. *See* FLSA Decertification Oppo. [Dkt. No. 336] 8.

computer exemptions. *Id.* 12-13. It argues that to determine whether the "hundreds" of putative class members who held any one of these 36 potentially exempt roles are eligible to seek damages for violation of New York or California overtime laws, the court will have to individually analyze the person's job responsibilities during the class period. *Id.* 14:12-19.

The possible application of this computer exemption affirmative defense to some class members does not bar class certification at this point. California courts are reluctant to deny class certification under Rule 23(b)(3) just because affirmative defenses might be available against individual class members. *See e.g.*, *Ruiz v. XPO Last Mile, Inc*., No. 5CV2125 JLS (KSC), 2016 WL 4515859, at *11 (S.D. Cal. Feb. 1, 2016); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 WL 2265972, at *3 (N.D. Cal. May 14, 2015). If later during litigation it becomes apparent that the plaintiffs' claims hinge upon individualized inquiries, then Apple may request, and I will consider, procedural protections including dividing the class into sub-classes or, if necessary, decertifying the class. *See Ruiz*, at * 11 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)).[5] But for now, Apple has not identified enough potentially exempt class members to justify denying certification on this ground.

This case is not like *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) or *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009), on which Apple relies. In *Vinole*, the district court denied certification of a FLSA misclassification class where the plaintiffs alleged that their employer misclassified them as exempt employees. On

---

[5] *Heffelfinger v. Electronic Data Systems Corp*., 492 F. App'x 710 (9th Cir. 2012) is instructive. There, the court considered, in part, whether the district court abused its discretion when it certified information technology workers as a class. While the court was mostly considering whether the district court prematurely granted summary judgment for the defendant, and ultimately remanded to the district court for more proceedings, it had reason to consider whether the district court erred in certifying a class of IT workers where there were individualized questions about their job responsibilities. The court observed that the class members shared a common question of law: whether IT workers' duties constituted "work directly related to management policies or general business operations" such that they fell within the management exception in the California Code, Cal. Code Regs. tit. 8 § 11040(1)(A). At the time the district court certified the class, that common question of law predominated over any need for individualized inquiry into class members' responsibilities. In the context of remanding for further proceedings, the court noted that the district court had "broad discretion" to address problems in the certified class if it had become clear since class certification that common questions no longer predominated. *Id.* at 714.

United States District Court
Northern District of California

appeal, the court rejected the plaintiffs' argument that class certification is warranted whenever an

employer uniformly classifies a group of employees as exempt, notwithstanding the requirement

that the district court conduct individualized analyses of each employee's actual work activity.

*Vinole*, 571 F.3d at 947.  The court referenced its own recent opinion in *In re Wells Fargo*, the

other case that Apple cites, where the court ruled that focusing on a uniform exemption policy

alone did little to further the purpose of Rule 23(b)(3)'s predominance inquiry.  *Id.* (citing *In re*

*Wells Fargo*, 571 F.3d 953).  Instead, the court reiterated that district courts must assess the

relationship between individual and common issues instead of adopting the bright-line test that the

plaintiffs in *Vinole* asked for.

That is what I am doing here.  I am not certifying the class merely because the plaintiffs

are uniformly classified as non-exempt/overtime eligible; I have weighed the common questions

of law against the potential individualized questions of fact and determined that the former

predominates.  Class certification will enhance efficiency and further judicial economy despite the

possibility that some class members whom Apple classifies as "non-exempt" are actually exempt

based on their job responsibilities.  After all, the driving question behind Rule 23(b)(3) is not

whether all "questions of law or fact" are "common to class members," but rather whether those

questions that are common "predominate" over questions that affect only individual members.  *See*

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) (quoting Fed. R. Civ. Proc.

23(b)(3)).

Apple says that only eight percent (36 out of 442) of all job titles held by members of the

proposed class during the relevant period could turn out to be exempt.  The common question of

whether RSU remuneration should be included in the regular rate applies to most class members.

The question of whether *some* of those class members are ultimately exempt and therefore not

qualified for overtime damages can be resolved later in litigation; a subclass could be created, if

necessary.[6]

United States District Court
Northern District of California

---

[6] Apple also appears to draw inspiration from a short opinion issued in another case from this
district, *Perez v. Wells Fargo & Co.*, 2015 WL 10558841-PJH (N.D. Cal. Nov. 24, 2015), where
the Hon. Phyllis Hamilton held that just because an employer had classified its employees "as
non-exempt and paid them as though they were non-exempt did not mean that they were in fact

### 2.    Exclusions from the Regular Rate

The FLSA requires employers to pay their non-exempt employees overtime for hours worked in excess of forty hours in a workweek at a rate that is at least one-and-a-half times the employee's "regular rate." 28 U.S.C. § 207(a)(1).  The "regular rate" must account for "all remuneration," which includes compensation that is "not directly attributable to any particular hours of work." 29 U.S.C. § 207(e); 29 C.F.R. § 778.224.  Eight types of compensation are excluded from the regular rate calculation.  Apple identifies four of them as potentially applying to the RSUs.

Apple portrays the plaintiffs' evidence that the vested RSUs are compensation as being comprised mostly of their own testimony about their individual understandings of Apple's compensation structure.  *See* Cert. Oppo. 17-18 (referencing Cooney Decl., Exs. 11 (McIlravy-Ackert Dep. Tr.) at 49:24–50:19, 54:25–55:5 (describing McIlravy-Ackert's understanding of RSUs from conversations with her supervisors), and 21 (Free Dep. Tr.) at 48:16–21 (testifying that Free believed that RSUs were a form of compensation that should have been included in her overtime pay rate because "any discussions of RSU grants have been included in discussions about [her] compensation").  It argues that this evidence will vary so significantly from class member to class member that individualized facts will predominate over common ones with respect to the question of whether RSUs are compensation.

Apple's concern is unwarranted.  The plaintiffs, both in their reply papers and at oral argument, renounced the individualized evidence approach that Apple describes, explaining that they will use common proof to show that the vested RSUs are compensation: Apple's RSU Plan and Employee Agreements.  *See* Reply 3, n.3.  This representation, to which I will hold plaintiffs, distinguishes this case from *Culley v. Lincare Inc.*, 2017 WL 3284800 (E.D. Cal. 2017), where the court decertified a FLSA collective in part because individual issues would drive any

---

non-exempt." *Perez*, 2015 WL 10558841, at *2.  Judge Hamilton did not make that observation in the context of determining whether common questions predominated in a class certification context; she made it when determining that Wells Fargo could amend its answer to a class action complaint to assert a new affirmative defense.  I agree that classification does not necessarily reflect true exemption status; the question is whether a potential conflict between classification and status predominates over common issues.  It does not.

1    determination for whether a bonus that the class received was properly excluded from their regular

2    rate of pay.

3           In *Culley*, plaintiffs claimed that the bonus the putative class received was non-

4    discretionary and thus, under the FLSA, improperly excluded from the plaintiffs' regular rate of

5    pay. *Id.*  The defendants argued that adjudication of the plaintiffs' claims required "'examining

6    each class member's understanding of the bonus,'" because the plan was not uniformly applied,

7    and because extrinsic evidence was required to determine the plan's meaning specific to each

8    individual employee. *Id.* at *5.  The plaintiffs in *Culley* offered no opposition to that argument;

9    they simply asserted that the bonus plan was non-discretionary on its face. *Id.* at *6.  But the court

10   had already held earlier in the case that the bonus plan was *ambiguous* as to discretion.  *See id.*

11   Because the plaintiffs provided "no explanation why individual issues will not now predominate in

12   the determination of the plan's discretionary nature," the court granted defendants' motion to

13   decertify the FLSA collective.  *Id.*

14          Unlike the court in *Culley*, I have not ruled that the Apple's Employee Stock Plan or RSU

15   Award Agreements are ambiguous concerning how vested RSUs should be considered with

16   respect to the regular rate; those documents may still serve as the foundation of both parties'

17   arguments.  Plaintiffs may be wrong about what Apple's contracts mean, but that is a merits

18   question for later.  I can resolve the applicability of the statutory regular rate of pay on a classwide

19   basis by considering Apple's Employee Stock Plan and RSU Award Agreements; I do not need to

20   consider the individual plaintiffs' experiences with respect to their receipt of the vested RSUs

21   because the statutory regular rate of pay exclusions turn on the employer's actions and intentions,

22   not the employees' understanding.

23          The same is true for the other FLSA exclusions that Apple raises as potentially applicable

24   to the vested RSUs.  Consider the "gift exclusion," 29 U.S.C. § 207(e)(1), which Apple raises in

25   its discovery responses.  *See* Apple's 3d Supp. Resp. to Irrogs. (Set 1) p. 52.  Section 207(e)(1)

26   allows exclusion for: "Sums paid as gifts; payment in the nature of gifts made at Christmas time or

27   on other special occasions, as a reward for service, the amount of which are not measured by or

28   dependent on hours worked, production, or efficiency." 29 U.S.C. § 207(e)(1).  "[I]f [a] bonus is

United States District Court
Northern District of California

United States District Court
Northern District of California

1   paid pursuant to a contract (so that the employee has a legal right to the payment and could bring

2   suit to enforce it), it is not in the nature of a gift." 29 C.F.R. § 778.212(b).  Determining whether a

3   payment falls within the "gift exclusion" requires the court to consider the nature of the contract

4   that provides for the payment, not how parties to the contract may have understood it.

5   Individualized evidence of what class members did with the money they got in the form of vested

6   RSUs, or what they understood about the RSUs from their managers, has no bearing on whether

7   the vested RSUs qualify for exclusion under 28 U.S.C. § 207(e)(1).  Apple has confirmed that the

8   terms and conditions of the RSU awards are determined by the Apple Employee Stock Plan and

9   RSU Award Agreements, not on a case-by-case basis from employee to employee.  *See* FLSA

10   Mot. 14.

11       29 U.S.C. § 207(e)(2) lays out an exhaustive list of types of payments that can be excluded

12   from the regular rate of pay when calculating overtime compensation.  Included in that list are

13   exclusions for non-working time, reimbursements, and "other similar payments." *Id.*  Apple

14   argues that vested RSUs qualify for exclusion under the "other similar payments" provision

15   because it says they are not compensation for hours of employment.  The plaintiffs disagree,

16   arguing that the vested RSUs are not similar to remuneration for non-working time or

17   reimbursements.  Which side is correct will be determined through the course of litigation, and

18   that determination will rely upon analysis of Apple's contracts, not individual employees'

19   understanding of the RSUs.

20       The "discretionary bonus exclusion," 29 U.S.C. § 207(e)(3), is similar.  It provides, in

21   relevant part, that a payment is properly excluded from the regular rate if it is a sum "paid in

22   recognition of services performed during a given period if . . . both the fact that payment is to be

23   made and the amount of the payment are determined at the sole discretion of the employer at or

24   near the end of the period and not pursuant to any prior contract, agreement[.]" *Id.*  To determine

25   whether the discretionary bonus exclusion applies to the RSUs, I will consider whether Apple

26   retains discretion regarding payment until "near the end of the period" and "not pursuant to any

27   prior contract [or] agreement." *Id.*  I need not consider employees' understanding of the vested

28   RSUs, only Apple's employment documents.  And the potential applicability of the particular

16

United States District Court
Northern District of California

1    stock program exclusions laid out by 29 U.S.C. § 207(e)(3) (which Apple raises in its discovery

2    answers, but not in opposing class certification) will also be susceptible to common proof.

3         When determining whether FLSA exclusions apply, other courts have compared

4    companies' overtime pay policies to the plain language of the FLSA without considering any

5    plaintiffs' individual testimony or other individualized evidence. *See e.g. Dietrick v. Securitas*

6    *Security Services USA, Inc.*, 50 F. Supp. 3d 1265 (N.D. Cal. 2014) (plaintiffs asserted classwide

7    FLSA claim for failure to pay overtime wages and the Hon. Jon Tigar concluded that defendant

8    could not meet its burden to show that payments made under its vacation pay plan fell within a

9    FLSA exemption "in light of the plain language of § 207(e)(2), the regulations interpreting §

10   207(e)(2), and the few available opinions on this issue.");

11   *Chacon v. Fashion Express Operations LLC*, No. 819CV00564JLSDFM, 2021 WL 4595772, at

12   *10 (C.D. Cal. Jun. 14, 2021) (granting class certification for a "regular rate subclass" made up of

13   "all class members who [during the class period] earned a non-discretionary bonus . . . covering

14   the same work period [where they] received overtime wages," where plaintiffs alleged that

15   defendant employer applied the same set of regular rate calculations to all of its non-exempt

16   employees in California, and those calculations "fail[ed] to incorporate non-discretionary sales

17   bonuses . . . into employees' regular rate of pay"; the court considered the employer's admitted

18   method of calculating overtime that was typical to the class, and determined that the question of

19   whether its practice violated California law was a "predominant common question amenable to

20   class treatment.").

21        *Dietrieck* and *Chacon* are not directly on point: indeed, the only cases where a court has

22   considered a similar theory of liability to the plaintiffs' here have either settled prior to any

23   substantive decision being issued or are currently stayed.[7] But *Dietrieck* and *Chacon* are

24   _____

25   [7] *See Bowlay-Williams v. Google LLC*, 4:21-cv-09942- PJH (N.D. Cal.) (settled); *Myers v. Gilead*
     *Sciences, Inc.*, 3:24-CV-02668-AMO (N.D. Cal.) (alleging that defendant Gilead Sciences, Inc.,

26   provides class members and FLSA collective members with remuneration in addition to their
     hourly wages including but not limited to grants of Gilead restricted stock units ("RSUs"), which

27   plaintiffs allege are non-discretionary and based primarily on retention with the company and
     unlawfully exclude those RSUs from the calculation of "regular rates" for overtime pay, in

28   violation of the FLSA) (stayed pending resolution *of Pappoe v. Kite Pharma*, Inc., 24STCV02259
     (LA Super. Ct.)).

instructive to the extent that they exemplify how courts might consider whether a defendant has shown that a particular payment structure falls within an enumerated FLSA exclusion.  Those courts considered the payment infrastructure used by employer-defendants with respect to the class (here, that infrastructure is the Apple Stock Plan and RSU Award Agreement) and compared it to the plain language of the FLSA and associated regulations and cases interpreting its enumerated exclusions.  *See e.g.*, *Dietrieck*, at 1269-71; *Chacon*, at *9-11.  I can do the same here.

### 3.    Apple's Other Defenses

Apple argues that some of its other affirmative defenses—including that many class members are subject to arbitration agreements—also cannot be resolved by common proof.  Oppo. 19-20.  But again, "courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Ruiz v. XPO Last Mile, Inc.*, 2016 WL 4515859, at *11 (S.D. Cal. Feb. 1, 2026).  "If, at any stage in the class litigation, it becomes clear that 'an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms,' such as placing 'class members with potentially barred claims in a separate subclass.'" *Id*. at *11

Apple argues that its fourteenth affirmative defense, that plaintiffs' claims are "barred, in whole or in part, to the extent covered by a prior agreement, compromise, and/or release of claims," is also not subject to common proof because it has identified at least 131 FLSA opt-in plaintiffs who are subject to such a release.  *See* Dkt. No. 92 (affirmative defenses); Cert. Oppo. 19; Declaration of Courtney Robles (Robles Decl.) ¶ 20.  Apple's concerns can be addressed by excluding those 131 FLSA opt-in plaintiffs, which I will do.[8]

\*\*\*

The driving question of whether vested RSUs should be included in calculating the class members' regular rate of pay can be resolved on a classwide basis based on the terms in Apple's documents.  Apple's affirmative defense with respect to overtime exemptions applies only to a small percentage of the class.  Its arguments about the potential applicability of FLSA exclusions

---

[8] I addressed Apple's thirty-fourth affirmative defense earlier.  *See* discussion *supra*, Section I(A)(2).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    will require me to consider the terms of its contracts and compare those terms to the statutory

2    language of the FLSA and the Department of Labor's associated regulations, not individual

3    plaintiffs' understanding of their compensation structure.  While the issues that Apple raises

4    against commonality and predominance may necessitate the creation of sub-classes down the line,

5    they do not preclude certification today. [9]

6        **C.    Typicality**

7        Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

8    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "test of typicality is whether

9    other members have the same or similar injury, whether the action is based on conduct which is

10   not unique to the named plaintiffs, and whether other class members have been injured by the

11   same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A

12   plaintiff's claims are considered typical if they are "reasonably co-extensive with those of absent

13   class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d

14   723, 730 (9th Cir. 2020).  A plaintiff may not be typical if she is "subject to unique defenses

15

16   [9] Because I conclude that the plaintiffs' case does not center individual plaintiff testimony, I
     DENY Apple's administrative motion for an order to show cause why non-responsive plaintiffs
17   should not be dismissed from the action.  OSC Motion [Dkt. No. 371].  The purposes of allowing
     the at-issue discovery were to allow Apple to develop its defenses and evaluate whether opt-in
18   plaintiffs were similarly situated.  *See* Dkt. No. 278 (Discovery Order).  To that end, I ordered that
     Apple could send written discovery to a random sample of 5% of the class (224 individuals) and
19   depose up to 30 individuals from that group.  *Id.*  Plaintiffs produced discovery responses from
     288 opt-in plaintiffs (64 more than the number I ordered) and Apple has been able to depose 20 of
20   those individuals, in addition to the three named plaintiffs.

21   Apple contends that 96 opt-in plaintiffs selected for discovery failed "without explanation" to
     abide by their discovery obligations, including by failing to respond to written discovery, failing to
22   respond to requests to schedule depositions, and failing to appear for duly noticed depositions.
     *See* OSC Motion.  Those opt-in plaintiffs are at fault for not responding.  But as indicated by the
23   foregoing analysis in Section I(B), their absence will not prejudice Apple or otherwise impact its
     ability to defend itself.  Dismissal is a "harsh penalty" only warranted in "extreme circumstances."
24   *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011).  The Ninth Circuit in *Malone v. U.S.
     Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) laid out the factors that I consider in determining
25   whether to dismiss non-responsive plaintiffs: "(1) the public's interest in expeditious resolution of
     litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4)
26   the public policy favoring disposition of cases on their merits; and (5) the availability of less
     drastic sanctions."  At this stage, none of the *Malone* factors favors dismissal.  Resolution of this
27   case will not turn on the testimony of individual Apple employees, but rather upon an examination
     of Apple's documents.  Later in the case, if Apple shows prejudice, I will consider whether any
28   sanction is appropriate.

which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508.  However, "[d]iffering factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n. 9 (9th Cir. 2011) (citing *Hanon*, 976 F.2d at 508).

The named plaintiffs are typical of the class because their claims arise out of the same conduct giving rise to the alleged classwide injury—that Apple failed to calculate their overtime pay rate properly and caused them unpaid overtime damages.  Apple makes two arguments that Hoffman and McIlravy-Ackert are atypical.  First, it asserts that they were part of a settlement that resolved a wage statement claim for which they purportedly cannot recover additional damages, while some class members may not have resolved such claims.  Second, Apple claims that because some class members signed separation agreements and Hoffman and McIlravy-Ackert did not, they are not typical.

Neither argument is persuasive.  With respect to the settlement agreement, the plaintiffs point out that the settlement in question only released class member claims through December 31, 2015.  *See* Settlement Order ¶ 14, 3:13-cv-3451 (N.D. Cal.), Dkt. 474.  Both named plaintiffs worked for several years afterwards accruing what the plaintiffs argue were wage statement violations, meaning that Hoffman and McIlravy Ackert could have "suffered wage statement violations that have not been redressed and have standing."  Reply 12:21-13:4.[10]  With respect to the separation agreements, plaintiffs propose that if I rule in their favor, I could create a subclass for those class members who signed releases and permit a substitute class representative for them, allowing a trier of fact to consider Apple's defenses against *them* separately.  *See* Reply 14, n. 19.  And if it becomes apparent throughout the course of the case that more class members have claims that accrued before December 31, 2015, then I may revisit the named plaintiffs' typicality at that

---

[10] The plaintiffs also point out that courts in this district have held that "[t]he fact that some members of a putative class may have . . . released claims against a defendant does not bar class certification."  *See Hererra v. LCS Fin. Services Corp.*, 274 F.R.D. 666, 678 (N.D. Cal. 2011).  *Hererra* does not really support the plaintiffs, though, because there the court considered the effect that "some class members" having released claims might have on class certification; here, Apple argues that the named plaintiffs are atypical because *they* released claims against Apple.  I am more persuaded by the fact that named plaintiffs did not release all their claims.

United States District Court
Northern District of California

point.

**D.    Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To determine whether the named plaintiffs are adequate class representatives, I consider first whether they and their counsel have "any conflicts of interest with other class members," and second, whether they and their counsel can "vigorously prosecute the action on behalf of the class." *See Ellis*, 657 F.3d at 985.

The named plaintiffs are adequate class representatives.  The arguments that Apple raises in opposition—namely, that they were recruited to join the case, are disinterested, or do not understand the claims—come up short.  Nothing suggests that Hoffman or McIlravy are only acting because they have been convinced to do so by counsel; both joined after receiving the FLSA notice.  They have actively participated in this action by responding to interrogatories, producing documents, and sitting for depositions.  They have generally demonstrated interest in and commitment to the case.  *See e.g.*, McIlravy-Ackert Depo. Tr. 155:5-12, 157:2-25; Hoffman Depo. Tr. 167:21-24.

**E.    Damages**

A class action plaintiff must "establish[] that damages are capable of measurement on a classwide basis." *See Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 569 U.S. 27, 34 (2013); *Lytle v. Nutramax Labs. Inc.*, 114 F. 4th 1011 (9th Cir. 2024).  "[A]lthough the existence of individualized damages and any attendant difficulty calculating them cannot defeat certification, the absence of a methodology for calculating damages on a classwide basis can." *Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 164 (N.D. Cal. 2022).  While plaintiffs need not provide common evidence showing that classwide damages actually exist, they must at least "proffer [a] reliable method of obtaining evidence that will come into existence once a damages model is executed," even if the results are not yet available at the class certification stage[.]" *Id.*  "[C]lass action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a

manner common to the class at trial." *Id.*

An employer may satisfy the overtime requirements of the FLSA by calculating a bonus as a "[p]ercentage of total earnings." 29 C.F.R. § 778.210 (2016); *see also Harris v. Best Buy Stores, L.P.*, No. 15-CV-00657-HSG, 2016 WL 6248893, at *2 (N.D. Cal. Oct. 26, 2016). Section 7(e) of the FLSA requires the inclusion in the regular rate of all remuneration for employment except for eight specified types of payment, which are excluded from the regular rate. Of course, as discussed, Apple argues that vested RSUs fall within four of those exclusions. Whether or not that is true will be revealed through litigation. What is clear now is that bonuses that *do not* qualify for exclusion from the regular rate must be totaled with other earnings to determine the regular rate on which overtime pay must be based. 29 C.F.R. § 778.208 (Inclusion and Exclusion of Bonuses in Computing the "Regular Rate"). For payments "other than cash," like the vested RSUs here, the "reasonable cost to the employer or the fair value" must be included in the regular rate. *Id.* § 778.116. Regulations explain how to include a bonus in the regular rate. *See id.* § 778.209.

Plaintiffs say that if they prevail, damages will be calculated based on federal overtime regulations (29 C.F.R. § 778.209) and using "objective payroll, time, and RSU data," all of which Apple possesses. Class Cert. Motion 11-12. When the plaintiffs filed their motion for class certification, they had not provided a sufficiently articulated damages model. I asked them to provide supplemental briefing on how damages might be calculated. The plaintiffs submitted the expert declaration of Dr. Dwight Steward and a supplemental declaration by Steward responding to Apple's concerns. *See* Declaration of Dwight Steward, Ph.D. ("Steward Decl.") [Dkt. No. 366-1]; Suppl. Expert Declaration of Dwight Steward, Ph.D. ("Suppl. Steward Decl.") [Dkt. No. 370-2] (Ex. A).

Steward provides a straightforward formula for calculating damages that appears to be commonly applied across the New York and California classes. It is more likely than not that he has the expertise to perform the calculation and that he will have sufficient data to do it. The methodology he describes is reliable. He does not need to have done the calculation at this stage; his description of how he will eventually do the calculation is sufficient.

According to the model supplied by Steward, the overtime payment damages due to each

United States District Court
Northern District of California

individual plaintiff is equal to the difference between the overtime payments that the plaintiffs should have received had their overtime been calculated in the manner that the plaintiffs believe is correct (i.e. including the vested RSU value in the overtime pay rate), and the overtime payments that were actually received by the plaintiffs.  Steward Decl. ¶ 9.  Since Apple calculates its overtime payment in a "systematic, consistent and formulaic manner," Steward opines that the additional amount of overtime owed to each plaintiff can be calculated using minimal and readily accessible payroll and RSU data.  *Id.*  He says that the damage calculation formula can be adjusted to calculate unpaid overtime in California and New York.  *Id.* ¶ 10.  He provides the formulas specific to each state.  *Id.*

Pursuant to Steward's model, the hourly value of the vested RSU remuneration can be calculated by dividing the RSU value at vesting by either the total hours worked or the total regular hours worked in the vesting period. *Id.* ¶ 11.  In the FLSA/New York overtime calculation, the hourly value of the vested RSU remuneration will be calculated by dividing the RSU remuneration value at vesting by the total hours worked in the vesting period.  And in the California overtime calculation, the vested RSU remuneration is divided by total regular hours (meaning, hours less than or equal to 40 hours in a week) that are worked in the vesting period. *Id.*  The overtime payments due to each plaintiff in each week (or pay period) within the vesting period can then be calculated by first multiplying the overtime hours worked by the plaintiff in that week (or pay period) by the hourly value of the vested RSU remuneration.  *Id.* ¶ 12.  The amount in the first step will then be multiplied by the relevant multiplier depending on whether the plaintiff is part of the California or New York class.  *Id.*  This is consistent with federal regulatory language to the extent that it instructs that the period over which the regular rate calculation occurs must be "apportioned back over the workweeks of the period during which it may be said to have been earned." 29 C.F.R. § 778.209(a).

Steward also addresses the concerns raised by Apple's economic expert, Dr. Valentin Estevez, regarding the calculation of damages.  *Id.* ¶¶ 14-19.  With respect to Estevez's concern that damages cannot be calculated for class members who move between exempt and non-exempt classified titles during the class period, Steward responds that if a plaintiff worked in job titles

United States District Court
Northern District of California

during a portion of the RSU vesting period that Apple classified as exempt, then the damage calculation will prorate the RSU remuneration and exclude those pay periods in the vesting period during which they were classified as exempt from the calculation. *Id.* ¶ 15. He explains that what job title an individual held when the RSUs were promised or when they vested does not impact this calculation, because the proposed damages methodology is performed on a pay period-by-pay period basis, and considers the job title that the individual held when they worked overtime hours. *Id.* ¶¶ 16-17.

Apple doubts that damages can be prorated. But in his supplemental brief, Steward expands upon the proration model plaintiffs plan to use. He explains that the vested value of RSU remuneration will be apportioned across all pay periods within a vesting period. If half of the pay periods in the vesting period were worked as an "exempt" employee (a fact that is identifiable in records that Apple has produced) then those pay periods will be excluded from the damages calculation. At that point, the remaining prorated/apportioned RSU value will be divided by the applicable hours worked in each pay period as a *non*-exempt employee to calculate the regular rate for those pay periods. Suppl. Steward Decl. ¶ 5.

Steward also addresses the impact of Apple's defense that it is entitled to an offset to damages for holiday premium payments. He explains that holiday premium payments can be accounted for in the damages calculation because the Earning Statements Apple produced contain holiday hours and holiday premium pay, which allows the plaintiffs to calculate the offset on a pay period-by-pay period basis for each plaintiff. *Id.* ¶ 18.

The plaintiffs have offered a damages model that appears capable of calculating damages on a classwide basis.

## II.    MOTION TO DECERTIFY FLSA COLLECTIVE

In addition to opposing class certification, Apple moves to decertify the FLSA class on the ground that plaintiffs have failed to meet their burden to produce substantial evidence showing that class members are similarly situated. *See* FLSA Mot. Its arguments largely track the ones I rejected above.

Apple argues that the plaintiffs' core claim that the vested RSUs were compensation and

therefore wrongly omitted from overtime calculations relies on the class members' individual understanding of how RSUs were described to them. This, it insists, means that the plaintiffs are not similarly situated with respect to a threshold material issue. Second, it argues that the court will need to conduct "individualized 'mini-trials' for dozens of opt-in plaintiffs not subject to arbitration to determine whether they are properly classified as non-exempt and therefore entitled to overtime pay at all." FLSA Mot. 1-2. Finally, it points out that "thousands" of opt-in plaintiffs are bound by enforceable arbitration agreements and are thus not similarly situated to those opt-in plaintiffs who are not bound by such agreements. FLSA Mot. 2; Declaration of Courtney Robles (Robles Decl.) ¶ 3. Out of the 8,165 plaintiffs who have opted-in to the FLSA collective and not withdrawn, 3,683 of them have signed binding arbitration agreements and did not opt out of arbitration. Robles Decl. ¶ 8.

I have addressed Apple's first two arguments against the plaintiffs' being similarly situated in the preceding section. *See supra* Section I(A). My conclusion that the plaintiffs have sufficiently shown that common questions of fact and law predominate such that class certification is justified answers them. With respect to how plaintiffs intend to prove that the RSUs are compensation, and with respect to their status as non-exempt/overtime eligible employees, they have shown that they are similarly situated: They are subject to the same Apple contracts and terms, which will be used to evaluate the merits of their claims.

I agree with Apple that those opt-in plaintiffs who have been shown to be bound by arbitration agreements (which I already determined were valid and enforceable, *see* Dkt. No. 130), are not similarly situated to the others. I will exercise my discretion to modify the definition of the FLSA collective to exclude Apple employees who have signed and not opted-out of its binding arbitration agreements. *See Carlino v. CHS Med. Staffing, Inc*., 634 F. Supp. 3d 895, 901 (E.D. Cal. 2022); *see also Geiger v. Charter Commcn's, Inc*., 2019 WL 8105374, at *4 (C.D. Cal. Sept. 9, 2019) (redefining the FLSA collective to exclude plaintiffs who agreed to arbitration provisions); *Gonzales v. Charter Commc'ns, LLC*, 2020 WL 8028108, at *5 (C.D. Cal. Dec. 4, 2020) (same).

I will stay the claims of those opt-in plaintiffs for whom Apple has produced signed

arbitration agreements (whom the plaintiffs refer to as the "Arbitration Plaintiffs"). Following the plaintiffs' request and my own practice, I stayed the claims of the four plaintiffs earlier for whom Apple originally produced arbitration agreements. *See* Dkt. Nos. 130, 170. Since then, the United States Supreme Court has confirmed that it is proper to stay rather than dismiss claims when a court finds that a dispute is subject to arbitration and the party has requested a stay pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472 (2024). Apple points to *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 27 (W.D.N.Y. 2020) to argue I should not stay those claims, but (aside from the fact that the case is in no way binding) the court there simply noted that it was improper to let individuals bound by arbitration agreements *into* the FLSA collective and then stay their claims; it did not consider whether it would be correct to stay their claims after they had been excluded from the collective (or before they were ever allowed in). The stay includes the claims of the 3,674 Arbitration Plaintiffs identified in Exhibit 1 of plaintiffs' Opposition to Apple's FLSA Motion, Dkt. No. 337-1 (sealed).

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for class certification is GRANTED and the defendant's motion to decertify the FLSA collective DENIED. I exclude from the collective those opt-in plaintiffs who have signed binding arbitration agreements from the FLSA collective.

**IT IS SO ORDERED.**

Dated: February 10, 2025

William H. Orrick
United States District Judge