UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS COSTA,<br><br>          Plaintiff,<br><br>    v.<br><br>APPLE, INC.,<br><br>          Defendant. | Case No.  23-cv-01353-WHO<br><br>**ORDER ON MOTIONS TO EXCLUDE AND SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 446, 447, 448, 449, 450, 451, 455, 456, 461, 462, 467, 468, 472, 474, 475, 479, 480, 484, 485, 490, 492 |

Named plaintiff Francis Costa ("Costa" or "plaintiffs") and defendant Apple, Inc. ("Apple") each move for summary judgment on a novel question: whether restricted stock units ("RSUs") are required to be included in the regular rate of pay when calculating employees' overtime pay under the Fair Labor Standards Act ("FLSA").  Under 29 U.S.C. § 207(e)(1) (the "gift exception") and § 207(e)(8) (the "equity exception"), the answer is "No".  For the additional reasons set forth below, Apple's motion for summary judgment is GRANTED and plaintiffs' motion is DENIED.  Both parties' motions to exclude expert witnesses are DENIED, except for plaintiffs' motion to exclude portions of Barbara Baksa's report, which is GRANTED in part.

**BACKGROUND**

In October 2015, Apple expanded its RSU offerings to cover all employees working for the company—including those classified as non-exempt or eligible for overtime.  *See* Declaration of Joe Thomas Jr. in Support of Plaintiffs' Administrative Motions to Consider Whether Another Party's Material Should be Sealed ("Thomas Dep.") [Dkt. No. 459-10] at 26:6–28:1; Declaration of Megan Cooney ("Cooney Decl.") [Dkt. No. 447] Ex. 2 (Oct. 13, 2015, Email from Tim Cook to Apple employees ("Cook Email")) at COSTA0001228 ("This year, I'm excited to let you know that the Executive Team has created a new program for stock ownership through RS grants. . . .

United States District Court
Northern District of California

This new program extends eligibility to everyone not covered by other RSU programs, effectively making everyone who works at Apple eligible for an RSU grant."). Apple described this new program to its employees as a "promise to give [them] shares of Apple stock over a period of time (known as a vesting schedule)," and that the awards were meant to serve "as an incentive" for employees "to continue their important contributions to Apple." Cook Email at COSTA0001228; What to Know About Your RSUs [Dkt. No. 298-9] at COSTA0001297.

RSUs are a future right to receive shares, subject to the terms of Apple's agreement with the employees. *See* 30(b)(6) Deposition of Joe Thomas Jr. ("Thomas Dep.") [Dkt. No. 444-5] at 35:12–17. Apple described RSUs to its employees as follows:

> RSUs are a promise to give you shares of Apple stock over a period of time (known as a vesting schedule). You don't buy these shares – they're awarded to you by Apple. When an RSU vests, you own that share. If you leave Apple, you keep your vested shares and forfeit any unvested RSUs.

What to Know About Your RSUs at COSTA0001297. Every October, Apple's compensation team determines which employees will receive awards, taking into consideration each employee's job level and function. Thomas Dep. at 21:15–25, 24:16–25. Because of this, employees with the same job title or role may receive differing awards. *Id.* But the ultimate decision to recommend RSU awards is untethered to hours worked or production. *See* 30(b)(6) Deposition of Christopher Jenkinson ("Jenkinson Dep.") at 52:16–24, 137:19–138:8. Past performance has no bearing on the amount of RSUs an employee may receive. Cooney Decl., Ex. 8 (June 16, 2025 Thomas Decl.) ¶ 3.

After recommendations are made and Apple's Plan Administrator agrees to grant RSUs, employees selected for an award are notified via email. Jenkinson Dep. at 99:15–19; Thomas Decl., Ex. 4 (2014 Employee Stock Plan Prospectus) at COSTA00001648. The email notifies employees of the grant date, the number of RSUs granted, and the vesting date. *Id.* Employees do not know the ultimate value of the RSU at the time of grant, as the value hinges on market conditions on each vesting date. *See id.* at COSTA00001649 (explaining that the value of stock can be influenced by "(a) the strength of the Company's financial performance, (b) Wall Street's expectations, and (c) other factors, many of which are beyond the Company's control, that affect

the value of the Common Stock."). Employees may decline to accept their RSU award, *see* 2014 Employee Stock Plan Prospectus at COSTA00001649 (explaining that employees can decline RSU awards); *id.*, Ex. 5 (2022 Employee Stock Plan Prospectus) at COSTA00001636 (same), but do not receive another bonus or payment in lieu of the RSU award, *see* Cooney Decl., Ex. 7 (Jenkinson Decl.) ¶ 6. RSUs for non-exempt employees are typically subject to a three-year vesting period, with one-third vesting per year. *See* Jenkinson Dep. at 70:10–23, 75:9–76:7, 144:11–146:18.

Employees who accept their RSU awards receive a Global Restricted Stock Unit Award Agreement from Apple, which describes the terms and conditions of the award. *See, e.g.*, Thomas Decl., Ex. 12 (2022 Employee Stock Plan). These agreements note that the RSU award is "an exceptional, discretionary, one-time grant, is voluntary, and occasional and does not create any contractual or other right to receive future awards of RSUs, or benefits in lieu of RSUs, even if RSUs have been awarded in the past." *Id.* at 13(b). "[A]ll decisions with respect to future awards, if any, will be at the sole discretion of the Company," and "RSUs and the Shares subject to the Award, and any related income and value, are extraordinary items that do not constitute compensation of any kind for services of any kind rendered to the Company." *Id.* at 13(c), 13(f).

The named plaintiffs in this case all worked in jobs Apple classified as non-exempt or overtime eligible, which Apple pays on an hourly basis. Thomas Dep. at 58:9–23, Jenkinson Dep. at 122:2–9. Apple employed plaintiff Francis Costa from June 2015 to May 2022 in Florida and South Carolina as an At-Home AppleCare Advisor. *See* Def.'s 5th Irrogs. Appx. A p. 362. Apple employed Amanda Hoffman in California from September 2011 to October 2022 as a Genius. *Id.* at 138. And it employed Olivia McIlravy-Ackert as a Genius Administrator from 2019 to August 2025 in New York and California, and as a Technical Expert from March 2013 to 2019 in New York and California. *Id.* at 208. Plaintiffs each received RSU awards from Apple. As a matter of policy, Apple did not include the value of the vested RSUs when calculating the regular rate for non-exempt/overtime eligible employees. *See* 30(b)(6) Deposition of Christopher Jenkinson ("Jenkinson Dep.") at 20:19–22, 122:2–13, 124:7–11.

Plaintiffs brought this case to challenge that policy. *See* Amended Complaint [Dkt. No.

86].  In their view, RSUs should not be excluded from the regular rate of pay calculations under the FLSA, and that they are entitled to damages.  On February 10, 2025, I granted class certification as to two classes of employees:

> **The California Class:** All current and former California employees who Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after June 14, 2019, and recorded more than forty hours of work in a workweek or more than eight hours of work in a workday after receiving an RSU but before the RSU vested.  This excludes those who signed an arbitration agreement.

> **The New York Class:** All current and former New York employees who Apple, Inc. classified as non-exempt/overtime eligible who received restricted stock units that vested on or after August 11, 2017, and recorded more than forty hours of work in a workweek after receiving an RSU but before the RSU vested.  This excludes those who signed an arbitration agreement.

*See Costa v. Apple, Inc.*, 2025 WL 445365, at *3 (N.D. Cal. Feb. 10, 2025).

Both parties now move for summary judgment.  *See* Plaintiffs' Motion for Summary Judgment ("Costa MSJ Mot.") [Dkt. No. 456]; Apple's Motion for Summary Judgment ("Apple MSJ Mot.") [Dkt. No. 446].  They also seek to exclude the other party's expert witnesses.  *See* Motion to Exclude Expert Reports ("Costa Exclude Mot.") [Dkt. No. 455]; Motion to Exclude the Opinions of Dwight D. Steward, Ph.D. ("Apple Exclude Mot.") [Dkt. No. 468].  I heard oral argument on April 8, 2026.

### LEGAL STANDARD

**Summary Judgment**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or a defense on which the non-moving party will bear the burden of persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial."  *Id.*  The party opposing summary

judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court must draw all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* But conclusory and speculative testimony does not raise a genuine issue of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**Motion to Exclude**

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "To be admissible under Rule 702 expert testimony must be relevant and reliable." *Rodman v. Otsuka Am. Pharm., Inc.*, 564 F. Supp. 3d 879, 886 (N.D. Cal. 2020) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).

Expert testimony must also have a "reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 593 F.3d at 565. To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer review literature, and general acceptance." *Id.* at 564. The inquiry is flexible, however. *Id.* The Ninth Circuit has emphasized that the *Daubert* factors are "helpful, not definitive," and

that the trial court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal citation omitted). Importantly, "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Id.* "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

**DISCUSSION**

**I.      Motions to Exclude**

Apple and Costa both move to exclude the other party's expert witnesses. Plaintiffs' primary expert witness, Dr. Dwight D. Steward, Ph.D. ("Dr. Steward"), seeks to provide a methodology to calculate damages should RSUs be incorporated into overtime calculations. Apple Exclude Mot. at 2. Apple, in response, brings two expert witnesses: (1) Dr. Valentin Estevez, Ph.D. ("Dr. Estevez"), who opined on Dr. Steward's methodology and the feasibility of damages calculations; and (2) Barbara Baksa ("Baksa"), who sought to compare RSUs to stock options and similar equity-based programs. Plaintiffs' Motion to Exclude Expert Reports ("Costa Exclude Mot.") [Dkt. No. 441-9] (sealed).

Most of the issues with Dr. Steward and Dr. Estevez concern their methodology for calculating damages. This question does need to be reached because of my conclusion, as described below, that Apple has not violated the FLSA. Regardless, I would DECLINE to exclude the testimony of Dr. Steward and Dr. Estevez. Both parties raise issues of credibility that are "within the province of the jury." *S.E.C. v. Todd*, 642 F.3d 1207, 1217 (9th Cir. 2011); *see Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) ("If two contradictory expert witnesses can offer testimony that is reliable and helpful, both are admissible and it is the function of the finder of fact, not the trial court, to determine which is the more trustworthy and credible.") (citation and alternations omitted)). Given how difficult the questions of damages calculations appear to be, both parties would be entitled to present their respective, relevant theories for apportioning damages to a factfinder.

The more pertinent question concerns the report written by Apple's second expert, Barbara Baska. Baska is the Executive Director of the National Association of Stock Plan Professionals

6

United States District Court
Northern District of California

(NASPP). Her report "compare[s] the features of RSUs to stock options, identifying both their similarities and differences." *See* Report of Barbara Baksa for *Costa v. Apple Inc.* ("Baksa Rep.") [Dkt. No. 441-4] at 1. She also analyzes "how public companies have shifted over the past quarter century from granting stock options to granting RSUs," and "explain[s] the primary drivers of this shift in practice." *Id.* She concludes her analysis by discussing "how any differences in how stock options and RSUs are treated under the FLSA are arbitrary and illogical." *Id.*

Costa maintains that Baksa's report must be excluded because Baksa is "not qualified to testify as an expert on the issues the Court must decide in this case," and that "Baksa's opinions are not reliable or relevant, but rather, seek to advance improper legal conclusions and advocate for change in the law." Costa Exclude Mot. at 17. I agree in part.

### 1. Qualifications

Under Federal Rule of Evidence 702, a testifying expert may be qualified based on their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Qualification of an expert witness must be established by a preponderance of the evidence." *AWI Builders, Inc. v. Thyssenkrupp Elevator Corp.*, No. 2:19-cv-05677-MEMF-PJWx, 2023 WL 7280451, at *2 (C.D. Cal. Aug. 21, 2023).

Plaintiffs attack Baksa's qualifications on multiple grounds. First, they note that the NASPP, for which Baksa works, "profits from companies that have equity compensation programs by providing them with resources and conferences." Costa Exclude Mot. at 17; *see* Baksa Dep. 38:23–41:19, 45:7–13. Similarly, Baksa serves on the Certified Equity Professional (CEP) advisory board, which was "chaired by *Apple's* equity program manager." *Id.* (emphasis in original); *see* Baksa Dep. 166:25–168:4. She has also provided no previous expert testimony "other than being deposed over 20 years ago." *Id.* (citing Baksa Report at App'x A; Baksa Dep. 5:21–6:8, 7:23–8:22). And she is "not a lawyer, or an expert on Congressional intent or the FLSA." Costa Exclude Mot. at 18. With this in mind, plaintiffs conclude that "Baksa is not qualified" to determine if Apple's RSU program "meets the legal requirements of any regular rate exceptions," as her "opinions about similarities between stock options and RSUs, why Congress did not exclude RSUs from the regular rate, and how employers might react if RSUs must be

7

included, do not inform that analysis." *Id.*

In response, Apple maintains that Costa's "arguments both mischaracterize the purpose of [Ms. Baksa's] testimony and apply an overly narrow definition of what constitutes applicable expertise." Costa Exclude Oppo. at 6 (quoting *United States Aviation Underwriters Inc. v. Aerospike Iron, LLC*, No. 21-cv-758 JLS (BLM), 2024 WL 2948626, at *23 (S.D. Cal. June 11, 2024)). Rather than being "proffered as an expert on whether Apple RSUs should be excluded from the regular rate of pay," Apple submits Baksa's report as an "expert on equity award practices." *Id.*

Plaintiffs' arguments are not well taken. Baksa's work with the NASPP and on the CEP advisory board do not disqualify her from testifying in this case on the matter of equity awards. "Membership in the same professional organization [with a party] does not create an impression of possible bias." *Viriyapanthu v. California*, No. SACV 17-2266 JVS(DFMx), 2018 WL 6136150, at *9 (C.D. Cal. Sept. 24, 2018). As Apple aptly puts it, "[t]hat Ms. Baksa overlapped with one Apple executive in her 30 years with the Certified Equity Professionals Institute is insignificant," *see* Costa Exclude Oppo. at 9, and even so, "goes to the weight of her testimony, not its admissibility." *United States v. Bonilla-Guizar*, 729 F.3d 1179, 1185 (9th Cir. 2013) (quotation marks and citations omitted).

Additionally, that Baksa lacks robust experience with legal cases does not disqualify her from providing expert testimony in this matter. *See Rolls-Royce Corp. v. Heros, Inc.*, No. 3:07-cv-0739-D, 2010 WL 184313, at *5 (N.D. Tex. Jan. 14, 2010) (the "lack of experience as an expert witness is no bar to [their] testimony."). Nor does the fact that she is not a lawyer diminish her ability to testify. Instead, as the record shows, Baksa has significant experience dealing with equity-based awards, of which she is being introduced to testify. In addition to the experience described above, Baksa has over "thirty years of experience educating professionals on equity awards" and hods a "Certified Equity Professional designation." Baksa Rep. at 1. She also "sits on the Certified Equity Professionals Institute's Advisory Board, serves on the curriculum committee, and has authored several texts for the program, including the primary text on RSUs." Costa Exclude Oppo. at 5-6; *see* Baksa Rep. App'x at 2; Baksa Dep. at 14:25–15:21. These

United States District Court
Northern District of California

qualifications render her able to testify about the "economic characteristics of RSUs and equity award practices in order to inform the factfinders' determination on the merits of Apple's argument that RSUs are excluded from the regular rate of pay under the equity exception." Costa Exclude Oppo. at 8.[1]

## 2.    Reliability and Relevance

"To be admissible under Rule 702 expert testimony must be relevant and reliable." *Rodman v. Otsuka Am. Pharm., Inc.*, 564 F. Supp. 3d 879, 886 (N.D. Cal. 2020) (citing *Daubert,* 509 U.S. at 589). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted). "To ensure reliability, the court must 'assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance.'" *Rodman*, 564 F. Supp. 3d at 886 (quoting *Primiano*, 598 F.3d at 565). "These factors are 'helpful, not definitive,' and a court has discretion to decide how to test reliability 'based on the particular circumstances of the particular case.'" *Id.* (internal quotation marks and footnotes omitted). "When evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

Plaintiffs argue that I must "use [my] gatekeeping role to exclude [Baksa's] testimony because it is not relevant and reliable." Costa Exclude Mot. at 19. Plaintiffs raise three points. First, they claim that Baksa cannot provide an opinion on how to interpret the FLSA's exceptions and Congress's intent in creating the statute. *Id.* Second, they urge that Baksa cannot speculate on how "companies will react . . . if vested RSUs must be included in the overtime pay rate." *Id.*

---

[1] In their reply, plaintiffs rehash the arguments they raise both in opposition to Apple's MSJ and in their own MSJ—that the so-called "equity exception" to the FLSA does not include RSUs. *See* Costa Exclude Repl. at 12–13. I address these arguments extensively below.

at 22. Finally, they seek to exclude Baksa's discussion of how Apple's RSU practices "align[] with those of other public companies and public technology companies." *Id.*

### a.    FLSA and Congressional Intent

29 U.S.C. § 207(e)(8) excludes from the regular rate of pay "any value or income derived from employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program," subject to certain requirements. 29 U.S.C. § 207(e)(8). In her report, Baksa opines on the similarities between RSUs and stock options, as well as the historical backdrop for why Congress may not have originally contemplated RSUs in drafting the FLSA. *See* Baksa Rep. at 1–6, 13–15.

Plaintiffs assert that these opinions must be excluded. First, they argue that Baksa's "beliefs about what the FLSA *should* exclude are irrelevant because the FLSA's stock exception does not include RSUs as one of the three stock programs that may be excluded." Costa Exclude Mot. at 20. "Because RSUs unambiguously do not meet the express requirements of the statute," plaintiffs urge, "Baksa's opinions about similarities between RSUs and stock options are irrelevant to the Court's determination." *Id.* (citing *Babb v. Wilke*, 589 U.S. 399, 413 (2020)). Further, plaintiffs take issue with Baksa's speculations about "what Congress was thinking in 2000 when it amended the FLSA to create the stock exception and did not include RSUs," as "the Court is capable, without [her] speculation and improper legal analysis, of making its own determination about whether Apple's RSU program meets the statutory requirements for exclusion." *Id.* at 20–21. And because "Baksa concedes that she is only familiar with the FLSA's stock exception and has never reviewed other exclusions," plaintiffs assert that "Baksa's conclusion that RSUs are 'discretionary' ignores the law on what qualifies as 'discretionary' for exclusion from the regular rate." *Id.* at 21.

Whether the value of vested RSUs is excludable from the regular rate under the so-called "equity exclusion" under the FLSA is central to this case. Apple argues that to reach this answer, a "factfinder will need to determine whether Apple RSUs have the characteristics necessary to exclude them from the regular rate of pay, including under the equity exclusion," which Baksa's report "squarely addresses." Costa Exclude Oppo. at 10 (quoting *Chavez v. S.F. Bay Area Rapid*

*Transit District*, No. C 22-06119 WHA, 2024 WL 3092153, at *3 (N.D. Cal. June 21, 2024)). And plaintiffs' concern that "RSUs unambiguously do not meet the express requirements" of the FLSA is "based only on their view of the merits, which cannot dictate the relevance of Ms. Baksa's testimony to that ultimate determination." Costa Exclude Mot. at 20; Costa Exclude Oppo. at 11; *see Alivecor, Inc. v. Apple, Inc.*, No. 21-cv-03958-JSW, 2024 WL 591864, at *11 (N.D. Cal. Feb. 13, 2024) ("[E]xpert opinion is not excludable under Rule 702 merely because the expert does not adopt an opponent's view of the case.").

"[T]he relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (*Daubert II*)). I find that Baksa's expertise on how RSUs compare to stock options and other equity instruments, as well as the historical shift in compensation practices (and the economic and business reasons for that shift), is relevant for a factfinder to understand the structure and purpose of the FLSA's exceptions. *See* Costa Exclude Oppo. at 10–11. Accordingly, I decline to exclude such testimony as it applies to these factual questions.

Plaintiffs argue Baksa is going *further* than just providing factual background: instead, they claim that Baksa "speculat[es]" on Congress's intent in amending the FLSA, as well "advances the legal conclusion that RSUs are 'discretionary awards' and labels them 'discretionary equity vehicles.'" Costa Exclude Mot. at 20–21 (quoting Baksa Rep. pp. 2, 7). In their view, because the term "discretionary" is a term with a "distinct legal meaning" in the context of regular rate exclusions under the FLSA, Baksa's opinions on this matter must be excluded. *Id.*; Costa Exclude Repl. at 15 (citing *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017) ("[I]f the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion.")). Plaintiffs similarly take issue with Baksa's opinion that "any differences in how stock options and RSUs are treated under the FLSA are arbitrary and illogical." Baksa Rep. at 1.

Baksa acknowledges that she is not an expert on the FLSA and was not hired to determine

11

Congress's intent in enacting the Worker Economic Opportunity Act (amending the FLSA to include the Section 207(e)(8) exceptions). *See* Baksa Dep. [Dkt. No. 441-7] at 21:23–22:1 ("I'm not here as an expert on the FLSA. I'm here as an expert on restricted stock units and stock options and other forms of equity compensation."); *id.* at 23:8–20 ("I would say that I . . . offer some opinions related to the context of the – of the passage of the Worker Economic Opportunity Act. And I feel like, you know, I – I worked in the industry during the time that that happened. I remember it happening. I remember reading about it, and I – you know, I reviewed that congressional history for purposes of my opinion. So the extent that, you know, it provides context, I think that that is within the scope of my opinion. But I don't – but I'm not a – because I'm not an expert on the FLSA in general or Congress in general."). When questioned about her opinion that it would be "arbitrary and illogical" for the FLSA to exclude stock options and not RSUs, Baksa testified:

> I'm not – when I say that, I'm not really talking about any specific exemption. I am just saying that for me, when I look at how companies use stock options and RSUs and how they design these programs – and I see a lot of similarities and – and the fact that since – you know, over the past two decades RSUs have broadly supplanted stock options as the predominate form of equity that – of discretionary equity that companies offer to their hourly workers, to me, it feels arbitrary to exclude stock options and not also exclude RSUs. But I am not speaking to any specific exemption when I say that.

Baksa Dep. at 26:11–27:5; *see also id.* at 27:17–22 ("I'm not really providing a specific opinion on whether or not [the Section 207(e)(8)] exemption covers stock options and RSUs or whether it treats them differently. I'm just – you know, my opinion is just that it would – it feels arbitrary to treat them differently.").

As a professional in compensation, Baksa is entitled to present her analysis on the historical development of RSUs. Indeed, her opinions concerning the similarities between RSUs and stock options, as well as other equity-based programs, are important in resolving the dispute in question. But her analysis of the legislative history of the FLSA constitutes a legal opinion that she is not qualified to opine on (nor was she retained to provide). *See BP Prods. N. Am., Inc. v. Grand Petroleum, Inc.*, No. 4:20-cv-0901-YGR, 2021 WL 4482138, at *1 (N.D. Cal. Sept. 30, 2021) ("legal opinions have no place in a jury trial and usurp the role of the judge and jury")

(citations omitted).  Accordingly, I will EXCLUDE pages 14 and 15 of Baksa's report, entitled "Should RSUs be Treated Differently Than Stock Options for Purposes of Calculating Overtime Payments?" as an impermissible legal opinion.

### b.    Company Reactions to Vested RSUs Being Excluded

In her report, Baksa notes that should RSUs be included in overtime payment calculations, "public companies will [likely] cease offering equity awards to non-exempt employees," which would "introduce significant volatility into overtime wages, which must be paid in cash."  Baksa Rep. at 15.  She also asserts that "calculati[ng] . . . overtime payments could also be impractical for companies," since the DOL has not provided guidance on how to include RSUs in overtime payment determinations.  *Id.*  If companies do continue to grant RSUs, Baksa opines that "companies would need to constantly account for [ambiguities as to the company's required disclosures, tax filings, and audits] and shoulder the burden of overtime calculations as additional RSUs are vesting."  *Id.*  And ultimately, in her opinion, a "decrease in the grant of RSUs . . . would be to the detriment of non-exempt workers," who would be "deprive[d] . . . of wealth creation opportunities."  *Id.*

Plaintiffs claim that this testimony is "unsubstantiated speculation" that is "not reliable and has zero relevance to the issues the Court must decide in this case."  Costa Exclude Mot. at 22.  I agree.  Expert opinions must be excluded if rooted in "unsubstantiated speculation and subjective beliefs."  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, at *4 (N.D. Cal. Feb. 20, 2015.  Apple asserts that Baksa's testimony is rooted in her "concrete observations of company equity 'granting practices over the past two decades.'"  Costa Exclude Oppo. at 12 (quoting Baksa Dep. at 147:23–150:2).  But even if this were true, Baksa's testimony appears focused on the potential policy consequences of plaintiffs' interpretation of the FLSA, not what RSUs are or how they function.  As plaintiffs aptly note, "[w]hether bonuses must be included in the regular rate does not depend on whether employers might take them away if they must be included."  Costa Exclude Repl. at 15.  On these grounds, Baksa's opinions about how companies may react to vested RSUs being incorporated into employee overtime pay calculations must be EXCLUDED.

c.        **Apple's Practices as Compared to Other Companies**

Finally, plaintiffs move to exclude Section 4 of Baksa's report, entitled "How Apple's Practices Align with Other Public Companies." *See* Baksa Rep. at 12–13.  There, Baksa notes that Apple's equity practices "align with those of other technology companies," *id.* at 12, as well as "those of stock options granted by public companies," *id.* at 13.  Plaintiffs object to this section on grounds of relevance, as "Apple cannot demonstrate how other companies' pay practices are relevant to whether the law demands that Apple include vested RSUs in the regular rate."  Costa Exclude Mot. at 22.  This section is marginally relevant to the issue of wilfullness and good faith, discussed at the end of this Order.  I decline to exclude it.

## II.        Motions for Summary Judgment

### A.        Apple's Motion for Summary Judgment

#### 1.        Whether the RSUs are Excludable from the Regular Rate of Pay

Under the FLSA, employers must pay overtime at a rate "not less than one and one-half times the regular rate at which" the employee is paid.  29 U.S.C. § 207(a)(1).  The FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee." *Id.* § 207(e).  Importantly, however, the FLSA excludes eight categories of payments from this definition. *Id.*[2]  In interpreting whether certain payments fall within an exception to the FLSA, the Supreme Court has "rejected the idea that exemptions in the statute should be read narrowly to reflect that purpose and instead determined that courts should give such exemptions 'a fair reading.'" *Badger v. City of Cortland*, No. 5:23-cv-0844 (GTS/MJK), 2024 WL 2804430, at *3 (N.D.N.Y. May 31, 2024) (quoting *Encino Motors, LLC v. Navarro*, 584 U.S. 79, 89 (2018)).  But "[t]he burden of invoking these exemptions rests upon the employer." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2022).

Apple now claims that its RSU payments fall under four exceptions of the FLSA: (1) the

---

[2] Both California and New York follow the FLSA's approach to determining regular rate exclusions.  *See Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal.5th 858, 869 (2021) ("[T]he term 'regular rate of pay' as used in [California Labor Code] section 510(a) and in the IWC's earlier wage orders has the same meaning as 'regular rate' in the FLSA."); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2 ("An employer shall pay an employee for overtime . . . in the manner and methods provided in and subject to the exemptions of section[] 7" of the FLSA).

United States District Court
Northern District of California

gift exclusion, (2) the discretionary bonus exclusion, (3) the "other similar payments" exclusion, and (4) the equity exclusion.  Apple MSJ Mot. at 8.  Costa maintains that Apple cannot meet its burden in proving the RSUs squarely fit into these exceptions.  Costa MSJ Mot. at 4.  I find that two of those exceptions apply.

### a.     Equity Exception

29 U.S.C. § 207(e)(8) excludes from the regular rate calculation:

> (8) any value or income derived from employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program which is not otherwise excludable under any of paragraphs (1) through (7) if—
>
> (A) grants are made pursuant to a program, the terms and conditions of which are communicated to participating employees either at the beginning of the employee's participation in the program or at the time of the grant;
>
> (B) in the case of stock options and stock appreciation rights, the grant or right cannot be exercisable for a period of at least 6 months after the time of grant (except that grants or rights may become exercisable because of an employee's death, disability, retirement, or a change in corporate ownership, or other circumstances permitted by regulation), and the exercise price is at least 85 percent of the fair market value of the stock at the time of grant;
>
> (C) exercise of any grant or right is voluntary; and
>
> (D) any determinations regarding the award of, and the amount of, employer-provided grants or rights that are based on performance are— * * *

29 U.S.C. § 207(e)(8).  This exception was originally introduced to the FLSA via amendment in 2000, when Congress passed the Worker Economic Opportunity Act ("WEOA").  P.L. 106-202.  The legislative history of the FLSA and WEOA, combined with the similarities between RSUs and stock options, warrant reading RSUs into this exemption.

I first address the text of the statute, because "[i]f the statute is ambiguous—and only then—courts may look to its legislative history for evidence of congressional intent." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).  Both parties make statutory arguments concerning why their view of Section 207(e)(8) is correct.  Plaintiffs maintain that Section 207(e)(8) "unambiguously" covers only three programs: "any value or income derived from

employer-provided grants or rights provided *pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program*."  29 U.S.C. § 207(e)(8) (emphasis added); Apple MSJ Oppo. at 15.  Because the plain language of the statute does not specifically name RSUs, plaintiffs urge that I must "ascribe significance to [Congress's] decision" not to include it in the statute.  Apple MSJ Oppo. at 16 (quoting *Babb v. Wilkie*, 589 U.S. 399, 412 (2020)).  They also maintain that Section 207(e)(8) notes that for "remuneration to qualify for exclusion, the stock's exercise price must be at least 85% of fair market value at the time of grant."  Costa MSJ Mot. at 14 (citing 29 U.S.C. § 207(e)(8)(ii)).  Because "RSUs are Apple's promise to give employees stock for free," plaintiffs maintain that RSUs cannot be read into the text of Section 207(e)(8), which instead focuses on benefits the employees *purchase*.  *Id.* at 14–15.

Apple responds that plaintiffs ignore the first half of the statute, which covers "any value or income derived from *employer-provided grants OR* rights provided pursuant to a stock option . . ."  Apple MSJ Repl. at 9 (citing 29 U.S.C. § 207(e)(8)) (emphasis added).  In its view, if "Congress had intended to limit the exclusion to 'rights provided' through only three programs, it would not need to include the first clause covering 'any value or income derived from employer-provided grants.'"  *Id.*; *see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions . . .") (quotation marks omitted).  Apple encourages me to read "employer-provided grants" as siloed from the three specific exemptions and to find that RSUs are an "employer-provided grant."  *Id.*

No Ninth Circuit case, or any case, squarely addresses this issue.  Both parties' interpretations are at least plausible.  I therefore turn to the legislative history to ascertain Congress's intent in enacting Section 207(e)(8) under WEOA.  Apple suggests that when the WEOA was introduced in 2000, Congress intended to "encourage employers to provide opportunities for equity participation to employees," including hourly employees.  146 Cong. Rec. S2575-01, at S2578 (2000) (joint statement of legislative intent), 2000 WL 373359; 146 Cong. Rec. H2437-01, at H2439 (2000), 2000 WL 532243.  It also points to language in the legislative history suggesting that Congress intended for this exclusion to "be broad enough to capture the diverse range of broad-based stock ownership programs that [were] being offered to non-exempt

United States District Court
Northern District of California

employees across this nation," 146 Cong. Rec. S2575-01, at S2580, 2000 WL 373359, and to be applied in a "forward-looking" and "flexible" manner in light of "wide variations" in equity-vehicle programs, *id.* at S2577–78, S2580.  As RSUs were not a "common equity vehicle in 2000 when this exclusion was drafted," Apple concludes that the statute should be read "broad[ly]" and "flexibl[y]" to include RSUs.  Apple MSJ Mot. at 18.

Plaintiffs counter that while the sponsors of the WOEA *hoped* the Section 207(e) amendments would be broad, in reality, the legislation was anything but.  Apple MSJ Oppo. at 17.  They point to language in the same joint report cited by Apple that confirms this view:

> In drafting the Worker Economic Opportunity Act, the sponsors hoped to create an exemption that would be broad enough to capture the diverse range of broad-based stock ownership programs that are currently being offered to non-exempt employees across this nation. However, in order to reach a consensus, the new exemption had to be tailored to comport with the existing framework of the FLSA. The result is a series of requirements that stock option, SAR and ESPP programs must meet in order for the proceeds of those plans to fit within the newly created exemption.

146 Cong. Rec. S2575-01, at *S2580; *see* House Report, 146 Cong. Rec. H2437-01, at *H2441, 2000 WL 532243 (May 3, 2000) (same).  Plaintiffs also contend that the Department of Labor had the opportunity to amend its interpretation of Section 207(e)(8) in 2019 to include RSUs, but failed to do so.  Apple MSJ Oppo. at 14 n.16; 84 FR 68736-01, at *68776, 68740, 2019 WL 6828543 (Dec. 16, 2019); 29 C.F.R. § 778.224(b) (amending the regular rate regulations and adding examples of "other similar payments" without mentioning or including RSUs).

While the Ninth Circuit commands me to "interpret the FLSA's exemptions narrowly in favor of the employee," Apple has met its burden in establishing that RSUs fall into the Section 207(e)(8) exemption.  *Flores*, 824 F.3d at 901.  As Baksa says in her expert report, companies "generally use both RSUs and stock options for the same purposes, including to encourage equity ownership among employees and to recruit and show appreciation for employees."  Baksa Rep. at 2.  These similarities include:

- **Non-Cash Reward:** Both RSUs and stock options are non-cash rewards that enable companies to leverage their own stock to reward employees and allow them to share in the company's success.  As such, both vehicles can be an effective way to show employees appreciation, separate and distinct from their cash compensation for work performed.

- **Voluntary:** Both vehicles are voluntary rewards; employees can choose to decline either type of reward. Employees that choose to decline their grants are not penalized and typically do not receive any compensation in substitution for the award they have chosen to forgo; they simply forgo the reward that they would otherwise have realized.
- **Discretionary:** Both RSUs and stock options are forms of discretionary awards, meaning that the issuing company has discretion over which employees receive awards, how large their awards are, and the terms of those awards. Companies are not required to grant awards to all (or any) employees. Companies that choose to offer RSUs or stock options can grant awards of varying sizes; determine which employees will be issued a grant based on rank, merit, performance, or any other legal factor; and vary the terms and conditions of the awards from employee to employee.
- **No Cash Investment:** In public companies, both RSUs and stock options typically allow employees to acquire stock with no out-of-pocket cash investment. RSUs offer the future right to stock, generally at no cost to employees. Stock options allow employees to use the built-in appreciation in the option to finance the acquisition of the shares. For example, let's say that an employee is granted stock options allowing them to purchase 1,000 shares at a price of $10 per share. The employee will wait to purchase the stock until it has a value exceeding $10 per share, which will enable the employee to immediately sell the stock for more than the purchase price and use the sale proceeds to finance the purchase. Let's say that the employee purchases the stock when its value has appreciated to $25 per share. The employee could sell the stock for $25,000, authorizing $10,000 of the sale proceeds to be delivered to the company to pay the purchase price, and realize a gain of $15,000. Alternatively, the employee might sell only 400 shares (the $10,000 purchase price divided by the $25 sale price) and keep the remaining 600 shares. Neither transaction requires employees to use their personal savings or other financial assets to exercise the option and purchase the shares.
- **Purposes:** A company's underlying purpose in granting stock options or RSUs does not typically vary between the two vehicles. Both vehicles can be used by companies to recruit, show appreciation to, and reward employees. For companies like Apple, they are granted to provide employees with the opportunity to share in the company's success.
- **No Guaranteed Value; Reward Tied to Overall Company Performance:** Both vehicles tie the amount of reward employees can realize to the company's stock price and enable employees to realize a personal financial gain that is commensurate with the company's growth and success. Both vehicles offer a means by which employees can personally benefit from and participate in any financial success of the company. Alternatively, the vehicles could have low or no value to the employees if the company's performance is poor. Because the value of the stock is based on the market, it can fluctuate up or down.
- **Shareholder Alignment:** Both RSUs and stock options are

18

used by companies to align employee interests with shareholder interests.

- **Ownership Stake:** Both vehicles give employees an ownership stake in the granting corporation and can be used to help create a culture of ownership among employees.
- **Wealth Creation:** Both RSUs and stock options offer employees opportunities for potentially significant wealth creation depending on stock price performance in the market and are separate from and in addition to employees' regular wages and bonuses.
- **Vesting Conditions:** When granted to non-exempt employees, both RSUs and stock options are typically subject to time-based vesting requirements, meaning that employees must maintain continued service to the company over a specified period of time (usually three to four years). Both arrangements are typically subject to forfeiture in the event that employees voluntarily resign prior to fulfilling the vesting conditions. Because any value realized from stock options and RSUs is tied to the company's stock price, the value is indeterminable until the applicable award vests and the underlying shares are issued to employees.

Baksa Rep. at 2–3. It is hard to imagine that Congress would exclude stock options from FLSA overtime rate calculations but would choose not to exclude RSUs, which are almost identical in purpose, form, and function.

Reading Section 207(e)(8) as plaintiffs suggest would unfairly limit the breadth and application of the FLSA and WEOA. The WEOA was enacted in May 2000. Baksa Rep. at 7. "At that time, the types of equity vehicles granted by public companies differed significantly from today's practices," as the "accounting standard in effect in 2000 overwhelmingly favored the use of stock options and employee stock purchase plans over any other type of equity vehicle." *Id.* Similarly, in 2000, "almost no public companies granted RSUs." *Id.* But as of 2024, "the percentage of public companies that grant stock options has declined to approximately 40%," while "[v]irtually all public companies now grant full value awards, predominanly in the form of RSUs (92% of public companies grant RSUs settled in stock)[.]" *Id.* at 7–8. This rapid shift away from stock options and towards RSUs was never contemplated by the FLSA or the WEOA, as both predate RSUs' rise in popularity. *See id.* To read the statute in a strained, static manner would go beyond "interpret[ing] the FLSA's exemptions narrowly in favor of the employee." *Flores*, 824 F.3d at 901.

Accordingly, the equity exception applies, and I will grant summary judgment in Apple's

19

favor.

### b.    Gift Exception

I also conclude, alternatively, that the "gift exception," 29 U.S.C. § 207(e)(1), applies to the RSUs. That section excludes from the regular rate "[s]ums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency." 29 U.S.C. § 207(e)(1). "To qualify for exclusion under section 7(e)(1) the bonus must be actually a gift or in the nature of a gift." 29 C.F.R. § 778.212(b). "If it is measured by hours worked, production, or efficiency, the payment is geared to wages and hours during the bonus period and is no longer to be considered as in the nature of a gift." *Id.* Similarly, should the payment be "so substantial that it can be assumed that employees consider it a part of the wages for which they work," or if "the bonus is paid pursuant to contract (so that the employee has a legal right to the payment and could bring suit to enforce it), it is not in the nature of a gift." *Id.* But a payment may nonetheless be considered a gift if it is "paid with regularity [so] that the employees are led to expect it." *Id.* § 778.212(c).

"Gift" is an admittedly anomalous term to use to describe Apple's RSU awards, but it fits the definition of the exception. Apple asserts that "RSUs are not measured by or dependent on hours worked, production, or efficiency." Apple MSJ Mot. at 9. In its view, there is "no evidence that any RSU award was based on hours or performance," and that "numerous plaintiffs were granted RSUS while out on a leave of absence," including at least one named plaintiff. *Id.* at 10–11. Moreover, Apple is not obligated to provide RSUs to any employee, and for that reason the grants are "entirely discretionary, not 'pursuant to contract.'" *Id.* at 10. And RSUs have "no guaranteed monetary value, and it is not until an RSU vesting date that employees will learn the value, if any, of the shares that vest." *Id.* at 12.

Plaintiffs contend, on the other hand, that "when Apple grants a RSU award, it is making a promise to pay employees (in stock), subject to conditions in the [RSU] contract." Apple MSJ Oppo. at 4. Employees are then expected to "fulfill a contractual obligation of continuing active service until [the RSU] vests or they lose it." *Id.* Plaintiffs view the RSU awards as akin to a

20

United States District Court
Northern District of California

contractual obligation that is not excepted from the reach of the FLSA. *See* 29 C.F.R. § 778.212(b) ("Obviously, if the bonus is paid pursuant to a contract . . . it is not in the nature of a gift."). Additionally, while Apple maintains that individuals need not work to receive a RSU award, plaintiffs argue that the RSU contract "requires the employee to return to active service for RSUs to *vest* (absent approved leave or death)." Apple MSJ Oppo. at 4 (emphasis in original). In its view, "employers have discretion to *offer* a bonus, but if the employee must fulfill a *contractual obligation* to receive it (like here), that bonus was pursuant to a contract." *Id.* at 5 (citing *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1132 (C.D. Cal. 2011)).

Plaintiffs also focus on the language of the FLSA to conclude that the "gift exception" does not apply. *Id.* They point out that the FLSA suggests that "[b]onuses not reserved for holidays or special occasions are not in the nature of a gift." *Id.* at 6 (citing *Abbey v. United States*, 99 Fed. Cl. 430, 452–54 (Fed. Cl. 2011); *Sec'y U.S. D.O.L. v. Bristol Excavating, Inc.*, 935 F.3d 122, 141 n.23 (3d Cir. 2019)). Moreover, because the FLSA contemplates small-ticket items like "coffee and snacks" as examples of "gifts," plaintiffs assert that the value of the vested RSUs are significantly higher and should not be considered "gifts." *Id.*

No court has addressed whether RSUs should be exempted under the FLSA for purposes of calculating the "regular rate" of pay. The parties turn to cases that they believe are sufficiently analogous to Apple's RSU program. Apple relies on two cases. First, in *Moreau v. Klevenhagen*, 956 F.2d 516 (5th Cir. 1992), a Fifth Circuit panel considered whether a Texas county violated the FLSA by "failing to include longevity pay in the plaintiffs' 'regular rate of pay' for overtime payment calculations." *Id.* at 518. The district court had concluded that the longevity payments were "not geared to wages, efficiency or production" and were instead a "reward for service," thus qualifying under the FLSA's gift exception. *Id.* at 521. The Fifth Circuit agreed, emphasizing that the plaintiffs "receive[d] the longevity payments regardless of the number of hours worked or wages earned," and that the payments "serve[d] no purpose other than to reward the deputies for their tenure as County employees." *Id.* And because plaintiffs "cite[d] no authority in support of its argument," the court concluded that Section 207(e)(1) mandated exclusion of the longevity payments from "regular rate of pay" calculations. *Id.*

21

Later, in *Shiferaw v. Sunrise Senior Living Management, Inc.*, the Hon. John Kronstadt considered whether a senior living facility's "Long Term Service Award" ("LTSA") for employees fell within the gift exception of the FLSA. No. LA CV13-02171-JAK (PLAx), 2016 WL 6571270, at \*25–26 (C.D. Cal. Mar. 21, 2016). The LTSA was "intended to recognize and show appreciation for team member's [sic] service with the Company." *Id.* at \*26. Those with "five or more years of service [were] recognized at five year milestones by presentation of a monetary gift in the month following their anniversary date." *Id.* The amount awarded to employees "increase[d] at each five-year milestone." *Id.* The senior living facility argued that the LTSA was akin to the "longevity payments" in *Moreau*, thus warranting exclusion under the FLSA's gift exemption. *Id.* The court agreed. *Id.* at \*27.

Plaintiffs rely on *O'Brien v. Town of Agawan*, 350 F.3d 279 (1st Cir. 2003). There, a First Circuit panel found that "certain additional compensation" promised to plaintiff police officers in their collective bargaining agreement, including "shift-differential compensation, longevity pay, and career-incentive pay," was not exempted under the FLSA. *Id.* at 283. The court recognized a growing circuit split on whether longevity payments are exempted under the FLSA, highlighting *Moreau* as an example of a court applying the exception. *Id.* at 295; *cf. Featsent v. City of Youngstown*, 70 F.3d 900, 905 (6th Cir. 1995) (finding police officers' longevity payments must be included in the FLSA regular rate calculations because they are, by definition, compensation for length of service). The *O'Brien* court noted that *Moreau* "distinguished longevity payments that are promised to employees in a collective bargaining agreement," as opposed to payments that are a reward for an employee's tenure that are not required. *Id.* Because the officers' collective bargaining agreement required longevity pay, the court concluded that such payments must be included in calculating the regular rate of pay. *Id.* at 295–96.

In this case, Apple is not required by contract to offer RSUs to anyone. Unlike in *O'Brien*, where the parties' longevity payment agreement was memorialized in the parties' CBA, here, there is no CBA. *See id.* Once granted, Apple's RSU awards are not measured by or dependent upon hours worked, production, or efficiency—only on tenure. *See* Costa MSJ Oppo. at 4 ("At the time of grant, RSU awards are a future right and do not afford shares, voting, or dividend

22

rights, which are not realized until the RSUs vest and the shares are issued."); Thomas Decl., Ex. 12 (Sept. 25, 2022 RSU Award Agreement) (indicating that an RSU award "is an exceptional, discretionary, one-time grant, is voluntary, and occasional and does not create any contractual or other right to receive future awards of RSUs, or benefits in lieu of RSUs, even if RSUs have been awarded in the past."); *id.* ("[T]he Plan is established voluntarily by the Company, it is discretionary in nature, and may be modified, amended, suspended, or terminated by the Company at any time, to the extent permitted by the Plan."). As such, the RSUs are more akin to the payments in *Moreau* and *Shiferaw*.

This dispute raises another important question: at what point should the RSUs be analyzed for purposes of determining their eligibility for this exception under the FLSA: Is it at the time of grant or at the time of vesting? In plaintiffs' view, while Apple "makes much to do about *granting* RSUs to some employees even on leave, it neglects to mention the contract requires the employee to return to active service for RSUs to *vest* (absent approved leave or death)." Apple MSJ Oppo. at 4. Therefore, while "employers have discretion to *offer* a bonus . . . if the employee must fulfill a *contractual obligation* to receive it (like here), that bonus was pursuant to a contract." *Id.* at 5; *see also see Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1132 (C. D. Cal. 2011) ("The clear thrust of § 207 is that once a bonus is promised to an employee as an inducement to achieve some business goal, even if that promise is not a guarantee of payment but contingent on other factors such as the financial state of the company, it is to be included in the regular rate of pay if and when it is actually paid.").

Apple again points to *Shiferaw* as evidence that courts must frame the gift exclusion analysis at the time of grant, rather than vesting. 2016 WL 6571270, at *25. To "determine if the [longevity] awards were gifts," the *Shiferaw* court "analyzed the characteristics of the award itself, *not* the later payment following the requisite service." Apple MSJ Repl. at 3; *see* 2016 WL 6571270, at *25. "Under *Shiferaw* and basic common sense," Apple concludes, "if an employer decides to record the terms applicable to the gift after the gift is given—for example, for administrability or tax purposes—it does not *retroactively* become includable in the regular rate of pay." Apple MSJ Repl. at 3. "What matters [instead] is whether it was a gift when it was made."

United States District Court
Northern District of California

*Id.*

The spot bonus in *Shiferaw* was discretionary up until the moment it was awarded. Apple's decision to grant the RSU's is discretionary, but once granted, Apple loses its discretion and it is up to the grantee's tenure whether the RSUs will vest. That difference notwithstanding, the relevant inquiry under Section 207(e)(1) focuses on the character of the award itself, not when it vests. Because Apple retained complete discretion whether to grant any RSU award in the first place, and because the amount of the award was not tied to hours worked, production, or efficiency, the RSUs more closely resemble discretionary longevity awards than contractual compensation promised in advance for labor. Following the persuasive reasoning of *Moreau*, I find that the gift exception also applies to support summary judgment in Apple's favor.

### c.     Discretionary Bonus

The parties argue about two other exceptions, neither of which applies. 29 U.S.C. § 207(e)(3), also known as the "discretionary bonus" exception, excludes from the regular rate of pay:

> Sums paid in recognition of services performed during a given period if . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly.

29 U.S.C. § 207(e)(3). The Department of Labor has interpreted Section 207(e)(3) as requiring an employer to exclude "discretionary bonus[es]," but not a "promised bonus," from the regular rate of pay:

> In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a)[,] the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.

*Frausto v. Bank of Am., Nat'l Assoc.*, No. 18-cv-01983-LB, 2019 WL 5626640, at *6 (N.D. Cal. Oct. 31, 2019) (Beeler, M.J.); 29 C.F.R. § 778.211(b). Such bonuses "must not be paid pursuant to any prior contract, agreement, or promise." *Id.* § 778.211(c).

United States District Court
Northern District of California

Apple maintains that "all three requirements of the discretionary bonus exclusion are met," as "(1) Apple at all times maintains discretion as to whether to grant RSU awards, (2) Apple at all times maintains discretion as to the number of RSUs granted, and (3) employees have no contractual right to an RSU award, even if they received a grant in the past." Apple MSJ Mot. at 14. In response, plaintiffs argue that "[s]imply having discretion to *grant* RSU awards is not enough to qualify for the discretionary bonus exclusion," as employers "must retain discretion over the fact of payment and amount *until near the end of the period it covers*." Apple MSJ Oppo. at 9 (emphasis in original). Plaintiffs believe that Apple lacks control over the vesting amount because "once granted, discretion is gone." *Id.* And because the RSU is conditioned on continued employment, they conclude that the bonus "must be included in the regular rate." *Id.* at 10 (citing *Heard v. W. Va. United Health Sys., Inc.*, Civ. Act. No. 1:23-cv-64, 2025 WL 3772675, at *4–5 (N.D.W.V. Oct. 29, 2025) (contractual retention bonus must be included since "[b]y its very name and structure, it was designed to induce employee to remain within the hospital system.").

In support of its position, Apple relies on *Frausto v. Bank of America, National Association.*. In *Frausto*, the defendant operated a program that allowed employees to nominate fellow employees for "Recognition Points" that could be redeemed for gift cards. 2019 WL 5626640, at *2. Judge Laurel Beeler found this program to fall within the "discretionary bonuses" exception of the FLSA, as the employer had "discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." *Id.* at *6 (quoting 29 C.F.R. § 778.211). The court particularly noted that the employer's managers had a "veto power for any nomination, for example," and that supervisors retained "discretion to approve or reject nominations or to adjust the awarded points." *Id.*

Similarly, in *Morgan v. Rohr, Inc.*, a judge in the Southern District of California considered whether an employer defendant "incorrectly calculated employees' overtime rate[s] by excluding six pay codes from the regular rate calculation." No. 20-cv-574-GPC-AHG, 2023 WL 8811816, at *11 (S.D. Cal. Dec. 20, 2023). The court noted that the pay codes in question, including "AWARD," GIFT CARD," and "SPECIAL AWARD," were in connection with a "discretionary bonus program" that lacked any "contract, agreement, or promise to pay employees

25

under this pay code." *Id.* at \*12.  Because the codes were paid "at the sole discretion of the employer," and "without advance criteria or pursuant to any commitment," the court found that the pay codes were excluded under Section 207(e)(2) and granted summary judgment for the defendants.  *Id.* at \*12–13.

Apple's argument is not persuasive because the employer's determination was not made at or near the end of the period when the employee's work was performed.  A Department of Labor opinion concerning another employer's plan on January 5, 2026, explains in relevant part that:

> Section 7(e)(3) of the FLSA requires that three conditions be satisfied for a payment to qualify as an excludable discretionary bonus: (1) the fact and amount of the payment must be "determined at the sole discretion of the employer"; (2) the employer's determination must occur "at or near the end of the period" when the employee's work was performed; and (3) the payment must not be made "pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[.]"

Wage & Hour Op. Ltr. P. 3, FLSA 2026-2 (Jan. 5, 2026) (citation omitted).  Addressing the plan in question, it explained, "although the decision to offer the bonuses and on what terms was initially at the employer's discretion, the fact and amount of such payments are not made at the 'sole discretion of the employer at or near the end of the period' in which the work is performed." *Id.* (citing 29 U.S.C. § 207(e)(3) and 29 C.F.R. § 778.211(a)).  And where a bonus "triggers" upon meeting select criteria, "the employer has effectively 'abandoned' its discretion with respect to the fact an amount of the payment." *Id.*  Relying on this opinion, plaintiffs conclude that Apple has "not proven the requirements of this exclusion."  Apple MSJ Oppo. at 11.

I also have trouble conceptualizing Apple's argument in light of how its RSU program actually functions.  No one that disputes Apple "retains discretion to determine whether to grant RSUs in a given year."  Apple MSJ Mot. at 14.  Nor is it disputed that Apple determines the number of RSUs that are granted in a year.  Cooney Decl., Ex. 5 (Thomas 30(b)(6) Dep. Tr.) at 23:25–24:15.  But key to the "discretionary bonus" inquiry is whether the employer "retain[s] discretion both as to the fact of payment *and as to the amount until a time* quite close to the end of the period for which the bonus is paid."  29 U.S.C. § 207(e)(3) (emphasis added).  While Apple retains control over the *number* of RSUs, it does not retain control over their *value* at the time of

26

vesting.  Apple itself acknowledges that when "RSUs are granted, the future value of the underlying shares is unknown, indeterminable, and cannot be predicted," as the value depends "entirely on the closing price of Apple's stock on each vesting date and will continue to fluctuate based on the market unless or until the shares are sold."  Apple MSJ Mot. at 6; *see* Thomas Decl., Ex. 4 (2014 Stock Plan Prospectus); Cooney Decl., Ex. 3 (Jenkinson 30(b)(6) Dep. Tr) at 99:20–100:1; Baksa Rep. at 3.

As a result, I cannot conclude that the "discretionary bonus" exception applies to Apple's RSU awards.  I decline to grant summary judgment in Apple's favor on this ground.

### d.    "Other Similar Payments"

I also disagree with Apple that the RSUs qualify as "other similar payments."  Section 7(e)(2) of the FLSA lists a variety of payments that may be excluded from regular rate calculations, including:

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

28 U.S.C. § 207(e)(2).  The Department of Labor later provided a "few examples [that] may serve to illustrate some of the types of payments intended to be excluded as 'other similar payments'":

> (1) Sums paid to an employee for the rental of his truck or car.
> (2) Loans or advances made by the employer to the employee.
> (3) The cost to the employer of conveniences furnished to the employee such as:
>     (i)     Parking spaces and parking benefits;
>     (ii)    Restrooms and lockers;
>     (iii)   On-the-job medical care;
>     (iv)   Treatment provided on-site form specialists such as chiropractors, massage therapists, physical therapists, personal trainers, counselors, or Employee Assistance Programs; or
>     (v)    Gym access, gym membership, fitness classes, and recreational facilities.
> (4) The cost to the employer of providing wellness programs, such as health risk assessments, biometric screenings, vaccination clinics (including annual flu vaccinations), nutrition classes, weight loss programs, smoking cessation programs, stress reduction programs, exercise programs, coaching to help employees meet

United States District Court
Northern District of California

27

> health goals, financial wellness programs or financial counseling, and mental health wellness programs.
> (5) Discounts on employer-provided retail goods and services, and tuition benefits (whether paid to an employee, an education provider, or a student loan program).
> (6) Adoption assistance (including financial assistance, legal services, or information and referral services).

29 C.F.R. § 778.224(b). Apple claims that the "and other similar payments" language in Section 7(e)(2) must be understood as a "catch-all" that exempts Apple's RSU program. Apple MSJ Mot. at 15–16. Its argument is not persuasive.

Both parties recognize that the Ninth Circuit's decision in *Flores v. City of San Gabriel* is instructive. There, plaintiffs brought suit against the City of San Gabriel for FLSA violations, alleging that "the City failed to include payments of unused portions of [their] benefits allowances when calculating their regular rate of pay." 824 F.3d 890, 895 (9th Cir. 2016). The City objected, claiming its "cash-in-lieu of benefits payments were properly excluded . . . pursuant to two of the Act's statutory exclusions." *Id.* It pointed to the "other similar payments" exception under Section 207(e)(2), arguing that this phrase "permits exclusion of any payments that do not depend on when or how much work the employee performs." *Id.* at 898.

"While a close question," the Ninth Circuit panel ultimately concluded that the cash-in-lieu of benefits payments could not be excluded under § 207(e)(2). *Id.* The court specifically looked at the Department of Labor's interpretation of the "other similar payments" language, set forth at 29 C.F.R. § 778.224:

> Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be "similar" in character to the payments specifically described in section 7(e)(2). It is clear that the clause was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.

29 C.F.R. § 778.224(a). It also looked at the "three examples of payments" set forth in Section 778.224 that constitute "other similar payments": "amounts paid to an employee for the rental of her vehicle; loans or advances made to the employee; and '[t]he cost to the employer of conveniences furnished to the employee such as parking space, restrooms, lockers, on-the-job

28

medical care and recreational facilities.'"  824 F.3d at 898; 229 C.F.R. § 778.224(b).

The Ninth Circuit found that the Department of Labor's interpretation of § 207(e)(2) was "directly contrary" to the City's interpretation of the "other similar payments" clause, as payments "may not be excluded from the regular rate of pay . . . if it is generally understood as compensation for work, even though the payment is not directly tied to specific hours worked by an employee." 824 F.3d at 898.  It also noted that other cases have interpreted the same language to "focus on whether the character of the payment was compensation for work." *Id.* at 899; *see Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 295 (9th Cir. 1996). Applying this test, the court held that the payments at issue were "not similar to payments for non-working time or reimbursement for expenses," and therefore were not in Section 207(e)(2)'s ambit. *Id.*

Where the parties disagree is how to apply *Gabriel*.  Apple claims the "analysis is simple." Apple MSJ Mot. at 16.  The RSU award agreements state that they "are extraordinary items that do not constitute compensation of any kind for services of any kind rendered to the Company or the Employer, and are outside the scope of the Participant's employment or service agreement, if any." Thomas Decl., Ex. 12 (Sept. 25, 2022 RSU Award Agreement).  Because Apple "does not require *any* hours to be worked to receive RSUs and grants RSUs to employees on leave," it concludes that the RSUs cannot "reasonably be understood to be[] compensation for work." Apple MSJ Mot. at 16.

Apple points to *Hartstein v. Hyatt Corporation*.  82 F.4th 825 (9th Cir. 2023).  There, defendant Hyatt Regency Huntington Beach, had a hotel room policy for its employees as follows:

> Full-time associates are eligible for twelve complimentary room nights per calendar year (*) and part-time associates are eligible for six complimentary room nights per calendar year (*) for personal travel at domestic Hyatt Hotels and participating Hyatt Hotels internationally.  *There is a pro-rated entitlement when becoming eligible after one year.  Associates may stay a maximum of three nights per anniversary year at any single hotel using the complimentary rate.

*Id.* at 833.  A Ninth Circuit panel concluded that while the "hotel room policy has some characteristics of a nondiscretionary bonus," including making "promises in advance . . . that

employees are entitled to the free hotel rooms and does not give Hyatt discretion whether to give them," the policy "falls under the plain language of the regulation governing discounts on employer-provided retail goods and services." *Id.* at 834–35.[3]  Because "Apple RSU awards are untethered from hours worked, services rendered, and job performance," Apple urges me to analogize to *Harstein* and find the RSUs to fall under the "other similar payments" exemption. Apple MSJ Mot. at 17.

Plaintiffs respond that *Hartstein*'s "deferre[nce]" to 29 C.F.R. § 778.224 as evidence that the hotel policy fell under the "similar payments" exemption is now inapposite in light of *Loper Bright Enterprises v. Raimondo*, which requires courts to "address agency interpretations of the law independently" instead of merely deferring to them.  Apple MSJ Oppo. at 14 (citing 603 U.S. 369, 412–13).  They contend that "vested RSUs qualify as compensation for work, as Apple requires employees to continue active service to earn them." *Id.* at 12.  And while "employees on approved leave still meet Apple's active service requirement for vesting, this does not establish RSUs are payment 'due to' occasional periods of non-work as the exception requires." *Id.*[4]

RSUs are different from the "three examples of payments" considered by 29 C.F.R. § 778.224(b) in describing "other similar payments."  Those payments—including "amounts paid to an employee for the rental of her vehicle," "loans or advances made to the employee," and the "cost of the employer of conveniences furnished to the employee such as parking space, restrooms, lockers, on-the-job medical care and recreational facilities"—appear to encapsulate more occasional or peculiar circumstances than Apple's RSU program. 824 F.3d at 898; 29 C.F.R. § 778.224(b).  I also find Apple's analogy to *Hartstein* inapplicable to the facts of this case.  The

---

[3] 29 C.F.R. § 778.224 notes that the "other similar payments" exclusion may include "Discounts on employer-provided retail goods and services, and tuition benefits (whether paid to an employee, an education provider, or a student loan program)."

[4] Plaintiffs also cite several cases it believes shows that Section 207(e)(2) does not serve as a "catch-all" that allows employers to exclude anything that is not "compensation for work." Apple MSJ Oppo. at 11–12; *see Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006); *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F. Supp. 3d 822, 842 (N.D. Ill. 2017) ("the last clause of § 207(e)(2) does not provide an independent basis for excluding from the regular rate . . .); *O'Brien*, 350 F.3d at 295–96; *Reich v. Interstate Brands Corp.*, 57 F.3d 574, 577–78 (7th Cir. 1995).  I agree with Apple that these cases are not helpful because they address a "compensation for hours" theory that is not applicable to this case.  *See* Apple MSJ Repl. at 7.,

*Hartstein* court concluded that the hotel payments were excluded under Section 207(e)(2) because Section 778.224(b) specifically identified "[d]iscounts on employer-provided retail goods and services" as an excludable payment. *See* 82 F.4th at 834–35; 29 C.F.R. § 778.224(b)(5). By contrast, RSUs do not fall cleanly into any of the examples of excludable payments. And while Section 778.224(b) is not an exhaustive list, serving only to "illustrate some of the types of payments intended to be excluded," RSUs are sufficiently distinct from each listed example to warrant exclusion.

Accordingly, the "other similar payments" exception does not apply. But because the gift and equity exceptions do apply, Apple is entitled to summary judgment.

### 2.    Good Faith and Willfulness Defenses

For completeness, I also address two meritorious defenses Apple has asserted. If I am mistaken on my analysis of the equity and gift exceptions, Apple is still entitled to summary judgment on its good faith and lack of willfulness defenses. These defenses impact whether: (1) the FLSA statute of limitations should be two, not three, years; (2) liquidated damages are inappropriate; and (3) judgment should be entered for Apple on plaintiffs' claims under California Labor Code sections 226 and 203. I address each in turn.

#### a.    Statute of Limitations

While FLSA violations are typically subject to a two-year statute of limitations period, a three-year statute of limitations applies if the plaintiff can establish the "cause of action ar[ose] out of a willful violation" of the FLSA. 29 U.S.C. § 255(a). Conduct is "willful" if the party "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Apple asserts that because the "issues involved in the violations . . . are not completely clear areas of law," a court cannot conclude that its "conduct was willful." Apple MSJ Mot. at 22 (quoting *Reich v. Japan Enterp. Corp.*, Nos. 94-17151, 95-15074, 1996 WL 387667, at *3 (9th Cir. July 10, 1996). Applying this standard, Apple concludes that there is "no evidence that could establish that Apple willfully violated the FLSA by not including RSUs in the regular rate of pay." Apple MSJ Mot. at 23. It points out that there is no case law on this issue, nor is there "any

31

conflicting case law that could have alerted Apple to a risk that its conduct is contrary to the law." *Id.*; *cf. Carlino v. CHG Medical Staffing, Inc.*, 460 F. Supp. 3d 959, 971 (E.D. Cal. 2020). Apple maintains that the evidence shows that it took "affirmative action to ensure compliance, including conducting regular reviews of the various payments it provides employees" under the FLSA—the most recent review being in 2020. *Id.*; Cooney Decl., Ex. 3 (Jenkinson 30(b)(6) Dep. at 123:3–7. And plaintiffs never "complained about the exclusion of RSUs from their overtime rate—and neither did any other Apple employee." Apple MSJ Mot. at 23; Cooney Decl., Ex. 6 (Hoffman Dep.) at 37:3–13; *id.*, Ex. 12 (McIlravy-Ackert Dep.) at 76:16–21. Because Apple had no notice, express or implied, of the potential violations, it concludes that its purported misconduct was not willful, and therefore a two-year statute of limitations applies.

Plaintiffs say that Apple's decision to "pay people in stock through RSU awards and not ensure this renumeration met the requirements for exclusion from the regular rate is 'reckless disregard' of the possibility that Apple was violating the law." Costa MSJ Mot. at 25. They specifically complain that the decision not to incorporate RSUs into the regular rate was led by Christopher Jenkinson, Apple's Senior Direct of Compensation Services—Payroll. *Id.* at 25. Jenkinson testified that he was "aware of [Apple's] legal obligation to calculate the overtime rate correctly." *Id.* at 24. Plaintiffs point out that Jenkinson "has no legal background and does not understand the regular rate law," thus making him an inappropriate candidate to consider this question. *Id.* at 25. They assert that the Department of Labor's 2019 decision declining to address RSUs in its regular rate rulemaking "should have alerted Apple to a potential problem." Costa MSJ Mot. at 22. In plaintiffs' view, any "absence of binding authority directly on point is not dispositive here" as Apple's decision not to include RSUs into the regular rate was willful misconduct. *Id.* at 24–25 (quoting *Flores*, 824 F.3d at 906 ("It is likely to be the exception, rather than the rule, that controlling case law addresses the precise question faced by an employer trying to determine its obligations under the FLSA, and thus only a small subset of FLSA violations would be considered willful if the existence of binding authority on the subject were our only consideration.")).

Plaintiffs' arguments are not well taken. First, Jenkinson is part of a larger payroll team

United States District Court
Northern District of California

that conducts regular audits and considers "every new payment type when it is first offered." Costa MSJ Oppo. at 16; Cooney Decl., Ex. 7 (Jenkinson Decl.) ¶ 4; *id.* Ex. 5 (Jenkinson 30(b)(6) Dep.) at 14:3–15:13, 20:2–14, 123:3–7, 123:14–24.  He testified that the Payroll team "keep[s] abreast of relevant developments that may affect regular rate determinations," including through "regular online learning," engaging with industry peers, and "review[ing] guidance from various industry leaders."  Jenkinson Decl. ¶ 5.  That Apple regularly attempted to keep itself informed of the current law surrounding RSUs—even if performed by a non-attorney—suggests that its purported misconduct was not willful.  Additionally, any "research" that Apple purportedly "failed" to do would not have yielded any outcomes.  As both parties have acknowledged, this is a novel question: mine is the first court in this country to address it.  Apple's failure to consider the absence of any RSU language in the Department of Labor's 2019 decision is hardly "willful misconduct."

Because Apple has sufficiently established that it did not engage in "willful misconduct" in this case, the statute of limitations in this case is properly set at two years, not three.

### b.    Liquidated Damages

Apple also moves for summary judgment against any liquidated damages.  Typically, liquidated damages are "mandatory" for violations of both the FLSA and New York's overtime law, unless the employer proves "both subjective 'good faith' and objectively 'reasonable grounds' for believing that it was not violating the FLSA."  *Callahan*, 2015 WL 2455419, at *14 (quoting *Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)); 29 U.S.C. § 216(b); NYLL § 198(1-a); *see Hardgers-Powell v. Angels In Your Home LLC*, No. 16-cv-6612-FPG, 2019 WL 4929830, at *4 (W.D.N.Y. Oct. 7, 2019) (analyzing both the FLSA and New York law together).  Should both elements be met, the district court retains discretion to award liquidated damages.  *Flores*, 824 F.3d at 905 (citing 29 U.S.C. § 260).

Plaintiffs assert that Apple cannot demonstrate that it had both subjective good faith and objectively reasonable grounds for believing RSUs met the requirements of statutorily permitted regular rate exclusions. Their primary assertion is that Apple presents "no evidence that it investigated whether RSU renumeration (something it gives every employee) met the

33

requirements for exclusion"; instead, Apple only shows that when its payroll team "reviewed pay codes, it assumed RSUs did not have to be included because they are not related to production work (a decision it gave a non-attorney to make)." Costa MSJ Mot. at 21.

As explained above, these arguments are unconvincing. The "DOL's failure to consider RSUs in rulemaking, two internet articles, and settlements that their counsel entered into that mostly became public after this lawsuit was filed" does not appear enough to suggest that Apple was not operating on "objectively reasonable grounds for believing that it was not violating the FLSA." Costa MSJ Oppo. at 19; *Callahan*, 2015 WL 2455419, at *14. Further, that Apple's payroll team led the RSU analysis does not mean that Apple was acting in "bad faith," as good faith "doesn't mean the employer has to consult with a lawyer." *Rood v. R&R Express, Inc.*, No. 2:17-cv-1223-NR, 2022 WL 1082481, at *9 (W.D. Pa. Apr. 11, 2022) (internal quotations omitted). As the evidence above suggests, the payroll team made numerous efforts to keep abreast of the relevant law and its applicability to its RSUs. Apple's routine and "proactive approach" to determine the proper classification of payments shows a good faith effort to avoid potential violations of the FLSA.

Accordingly, because Apple has shown both "good faith" and an "objectively reasonable ground[]" for believing it was complying with the FLSA, I decline to grant liquidated damages in plaintiffs' favor. *See Callahan*, 2015 WL 2455419, at *14.

### c.    California Labor Code Sections 203 and 226

In addition to their overtime claims, plaintiffs assert various derivative claims under California law. Apple claims that it is entitled to summary judgment on two of them—California Labor Code sections 203 and 226. I agree.

Sections 201 to 202 of the California Labor Code establish that employees who cease employment within the time specified by law are entitled to payment of wages. Cal. Lab. Code §§ 201–03. Section 203, in turn, provides penalties for employers who fail to adhere to these provisions. Cal. Lab. Code § 203. Because Apple failed to include the value of any vested RSUs in its overtime rate calculations, plaintiffs assert that they are entitled to waiting time penalties under Section 203. Costa MSJ Mot. at 26.

Section 226 similarly provides a right of action when an employer fails to issue wage statements identifying gross and net wages, as well as "all applicable hourly rates in effect during the pay period." Cal. Lab. Code §§ 226(a)(1), (5), (9). To prevail on a Section 226 claim, a party must show: "(1) [a] violation of Section 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1025 (E.D. Cal. 2015) (quoting *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1225 (S.D. Cal. 2015). Plaintiffs assert that because Apple "did not provide regular rate adjustments when RSUs vested, the wage statements did not reflect those gross and net wages earned," entitling them to penalties under Section 226. Costa MSJ Mot. at 27.

As explained above, plaintiffs must establish that Apple's conduct was "knowing and intentional" to prevail on this claim. *Novoa*, 100 F. Supp. 3d at 1025. They have not met that burden. I will also grant summary judgment in Apple's favor on the California Labor Code claims.

## B. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on four grounds: (1) for plaintiffs' FLSA, New York, and California overtime methodology calculations; (2) for plaintiffs' damages methodology, claim for liquidated damages, pre- and post-damage interest, and establishing a three-year FLSA statute of limitations; (3) for plaintiffs' California claims for waiting time, wage statement, and Private Attorneys General Act ("PAGA") penalties; and (4) against Apple's defenses. I find that Apple has not violated the FLSA. I decline to address plaintiffs' other arguments regarding damages.

## CONCLUSION

For the reasons described above, Apple's motion for summary judgment is GRANTED, and plaintiffs' motion for summary judgment is DENIED. The Clerk shall enter judgment in favor of the defendant.

An order addressing the parties' sealing motions will follow. None of the information that is included in this Order that they sought to seal meets the compelling reasons standard. *See*

United States District Court
Northern District of California

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

**IT IS SO ORDERED.**

Dated: June 11, 2026

William H. Orrick
United States District Judge